## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CAROLYN RAFAELIAN, an individual, ALEX AND ANI PLEDGE CO., a Rhode Island Corporation and VENICE BEACH WALK, LLC, a California Limited Liability Company, | **Case No.: 1:20-CV-00247-MSM-PAS** |
| Plaintiffs, | **AMENDED COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| LC A&A HOLDINGS, INC., a Delaware Corporation, LC A&A INTERMEDIATE INVESTORS, LLC, a Delaware limited liability Company, LYNDON LEA, an individual, A and A SHAREHOLDING CO., LLC, a Delaware limited liability company and ROBERT TRABUCCO, an individual, | |
| Defendants. | |

Plaintiffs, Carolyn Rafaelian, Alex and Ani Pledge Co. ("Pledge Co.") and Venice Beach Walk, LLC ("Venice Beach"), by and through their undersigned counsel, for their complaint against Defendants, LC A&A Holding, Inc., LC A&A Intermediate Investors, LLC d/b/a Lion Capital (collectively "Lion Capital"), Lyndon Lea, A and A Shareholding Co., LLC and Robert Trabucco allege as follows.

### I.  NATURE OF THE ACTION

This is a federal securities fraud action arising out of the restructuring of one of Rhode Island's leading jewelry companies, Alex and Ani, LLC (the "Company") in the Summer of 2019.  The principal owners of the Company are Lion Capital and Carolyn Rafaelian and/or entities under their control.  Lion Capital is a London-based private equity firm and investment adviser formerly

registered with the United States Securities and Exchange Commission.  Carolyn Rafaelian is the founder and former Chief Executive Officer of the Company.

In connection with the restructuring in 2019, Ms. Rafaelian was fraudulently induced into making a $7 million investment in the form of a loan to the Company.  As a material inducement and consideration for her to enter into the loan transaction, she received Lion Capital and the Company's clear and unconditional representation and promise that the Company could fund her new product lines of business in the amount of $1 million per year for two (2) years.  This funding was intended to provide her with a viable platform to launch a new business should Lion Capital remove Ms. Rafaelian from her continued employment with the Company after the restructuring. Upon completion of the restructuring in September of 2019, the Company immediately and continuously refused to fund the new product lines claiming it lacked sufficient funds.

As set forth below, at the time Lion Capital and the Company made the representation and agreement to provide the funding, they knew it was false and that the Company lacked the resources to fund such a venture.  However, they made the misrepresentation and agreement with the intent to induce Ms. Rafaelian into making a $7 million investment for their own pecuniary gain in violation of the federal securities laws.  The new product line funding was critical for Ms. Rafaelian which, but for, she would never have agreed to a $7 million investment in the Company and relinquishment of her control of operations.

In this action, Plaintiffs seek, among other things, an award of damages resulting from Defendants' fraudulent inducement of Ms. Rafaelian into the $7 million loan transaction with the Company.  Plaintiffs also seek a declaration from the Court that Ms. Rafaelian is not in breach of a related $5 million promissory note held by Lion Capital and hold the note and its related guaranties unenforceable, in addition to enjoining Defendants from foreclosing on the secured collateral.

## II. PARTIES

1.      Plaintiff, Carolyn Rafaelian, is an individual and resident of Palm Beach County, Florida.

2.      Plaintiff, Alex & Ani Pledge Co., is a Rhode Island corporation with its principal place of business in Providence, Rhode Island.

3.      Plaintiff, Venice Beach Walk, LLC, is a California limited liability company, with its principal place of business in Providence, Rhode Island.

4.      Defendant, LC A&A Holdings, Inc., is a corporation organized under the laws of the State of Delaware and, upon information and belief, has its principal place of business located in London, England.

5.      Defendant, LC A&A Intermediate Investors, LLC d/b/a Lion Capital, is a Delaware limited liability company and, upon information and belief, has its principal place of business located in London, England.

6.       Defendant, Lyndon Lea, in an individual who, upon information and belief, resides in London, England.

7.      Defendant, A and A Shareholding Co., LLC, is a Delaware limited liability company with a principal place of business located in East Greenwich, Rhode Island.

8.      Defendant, Robert Trabucco, is an individual who, upon information and belief, resides in Norfolk County, Massachusetts.

## III.   JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and § 78t(a)) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (17 C.F.R. § 240.10b-5).

3

10.     This Court has personal jurisdiction over the Defendants because a substantial part of the events giving rise to this action occurred within this state and the subject agreements were executed in Rhode Island.

11.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, § 27 of the Exchange Act.

12.     Venue is proper in this judicial district pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391 as a significant portion of Defendants' actions took place within this judicial district.

## IV.     STATEMENT OF FACTS

**Background**

13.     Founded in 2003, Alex and Ani, LLC (together with A and A Shareholding Co., LLC and its affiliated entities the ("Company") is a Rhode Island-based jewelry brand headquartered in East Greenwich, Rhode Island.

14.     Carolyn Rafaelian, formerly a resident of Cranston, Rhode Island, is the founder of the Company and, prior to September 2019, was its Chief Executive Officer as well as its majority and controlling equity holder through an investment entity she controls, Alex and Ani Pledge Co. ("Pledge Co.").

15.     Lion Capital, is an affiliate of Lion Capital LLP, a London, England based private equity firm and investment adviser formerly registered with the United States Securities and Exchange Commission (the "SEC") (collectively with their affiliated entities hereinafter ("Lion Capital").

16.     In 2014 and 2015, Lion Capital purchased private equity firm JH Partners' entire 40% interest in the Company for approximately $360 million.

17.     At all times relevant hereto, Lion Capital and its principal and managing partner, Lyndon Lea, were active stakeholders and owners of the Company, engaged in the weekly management of the Company.

18.     In addition, at all times relevant hereto, the Company's Chief Restructuring Officer, Robert Trabucco, was an agent acting on behalf and at the direction of Lion Capital and Lyndon Lea.

## 2019 Restructuring of the Company

19.     During the summer of 2019, the Company was disputing an alleged default under a $100 million credit facility with Bank of America (the "BOA Loan").  Lion Capital, at the time a minority and noncontrolling stakeholder, undertook direct communication and negotiation with Bank of America in a purported attempt to resolve the dispute.

20.     The product of Lion Capital's direct negotiation with Bank of America was a purported urgent need for a restructuring on the terms outlined in the Equity Restructuring – Binding Term Sheet dated August 14, 2019 between Lion Capital and Ms. Rafaelian (the "Binding Term Sheet").  Ms. Rafaelian signed the Binding Term Sheet under duress on August 14, 2019 to avoid the purported liquidation of her Company and the loss of hundreds of jobs in Rhode Island.

21.     Pursuant to the Binding Term Sheet, Ms. Rafaelian was to, among other things, divest Pledge Co.'s controlling equity interest and her management of the Company to Lion Capital and loan the Company $7 million, with $5 million of that amount being paid by Lion Capital in the form of a loan from Lion Capital to Ms. Rafaelian.

22.     As consideration and a material inducement to enter into the Binding Term Sheet and cede control of the Company to Lion Capital, Mr. Lea represented to Ms. Rafaelian, through his agent Sherif Guirgis on August 14, 2019 as set forth in the Binding Term Sheet, that the

Company could fund her new Current State and Tri-Alchemy lines of business in the amount of $1 million per year for two (2) years.

23.     This funding was intended by Lion Capital and Mr. Rafaelian to provide Ms. Rafaelian with a viable platform to launch a new business should Lion Capital remove Ms. Rafaelian from her continued employment with the Company after the restructuring.  This term was also critical for Ms. Rafaelian to continue with her next generation of designs and commitment to Rhode Island manufacturing and job creation.

24.     On September 13, 2019, the parties consummated the restructuring mandated under the Binding Term Sheet with the execution of numerous agreements including, without limitation, the Second Lien Credit Agreement, Secured Promissory Note and Investor Matters Agreement.

**Second Lien Credit Agreement**

25.     Specifically, on September 13, 2019, under duress with Lion Capital and the Company threatening the possibility of an imminent liquidation of the Company, Ms. Rafaelian executed, on behalf of Pledge Co., the Second Lien Credit Agreement (the "Credit Agreement"), pursuant to which Pledge Co. immediately loaned $7 million to the Company, payable with interest on or before January 31, 2022.

26.     In purported consideration for making the $7 million loan under the Credit Agreement, Pledge Co. received 8,751,750 Class A Units (the "Class A Units") of the Company.

27.      The Credit Agreement and Class A Units constitute securities pursuant to Section 2 of the Securities Act of 1933, 15 U.S.C. § 77b(1) (the "Securities Act").

**Secured Promissory Note**

28.     Contemporaneously with the execution of the Credit Agreement, Ms. Rafaelian executed the Secured Promissory Note (the "Note") in favor of Lion Capital.

29.     The Note provides that Ms. Rafaelian promises to pay Lion Capital $5 million within nine (9) months from the date of the Note, with interest accruing and payable in monthly installments at a rate of 3.5% per annum and, in the event of a default, interest shall increase to 15% per annum.

30.     Pursuant to Paragraph 4 of the Note, the $5 million proceeds of the Note were to be used by Ms. Rafaelian immediately upon receipt solely to make a capital contribution to Pledge Co., with Pledge Co. immediately using the proceeds to fund its $7 million loan to the Company under the Credit Agreement.

31.     Accordingly, the Note was part and parcel of the $7 million loan under the Credit Agreement.  In fact, neither Ms. Rafaelian nor Pledge Co. ever received the $5 million proceeds under the Note, as those funds were wired directly to the Company from Lion Capital via the escrow agent for the closing.

32.     As security for the Note, Ms. Rafaelian was required to execute the Pledge Agreement (the "Pledge Agreement") on behalf of Pledge Co., pledging all of her equity in the Company as collateral for the Note.  Ms. Rafaelian was also required to execute a Guaranty (the "Guaranty") on behalf of Venice Beach Walk, LLC ("Venice Beach") and Pledge Co., as well as the Deed of Trust with Assignment of Rents (the "Mortgage") for certain real property in California held by Venice Beach (the Note, Pledge Agreement, Guaranty and Mortgage collectively the "Lion Loan Agreements").

**Investor Matters Agreement**

33.     As consideration for Lion Loan Agreements and the Credit Agreement, Lion Capital and the Company represented to Ms. Rafaelian that the Company could, and would, fund

her new Current State and Tri-Alchemy product lines of business in the amount of $1 million per year for two (2) years (the "New Product Funding").

34.     Specifically, pursuant Paragraph 3(b) of the Investor Matters Agreement also dated September 13, 2019 (the "IMA Agreement"), executed by Robert Trabucco as Chief Restructuring Officer for the Company, Mr. Trabucco represented to Ms. Rafaelian that the Company would provide the New Product Funding as follows:

> For a period of two (2) years following the Closing, the Company shall fund the operations of the Current State and Tri-Alchemy lines of business of Alex and Ani up to a total amount of $1 million per year, such amount to include all research and development costs and operating losses of such lines of business; provided, that the Company's obligations pursuant to this Section 3(b) shall terminate and be of no further force and effect upon the termination of employment of the Founder with the Company for any reason, whether the Founder is removed or resigns voluntarily.

35.     Mr. Trabucco made this representation at the direction and with the instruction of Lion Capital's managing partner, Lyndon Lea, with the intent to induce Ms. Rafaelian into the Credit Agreement and Lion Loan Documents.

**Ms. Rafaelian is Immediately Denied Funding after Closing**

36.     At the time Mr. Trabucco made this representation, he knew it was false and misleading because the Company lacked the resources to provide the New Product Funding. Indeed, within days of the September 13, 2019 closing, Ms. Rafaelian met with Mr. Trabucco, the new Chief Executive Officer of the Company, in his office in East Greenwich, Rhode Island and was advised by Mr. Trabucco the Company could not afford to provide her any New Product Funding.

37.     Also at this meeting, Ms. Rafaelian requested an explanation as to how the Company and Lion Capital could have just days earlier represented and agreed to have the Company provide the New Product Funding, if they knew the Company lacked the financial

resources.  In response, Mr. Trabucco advised Ms. Rafaelian he was specifically instructed by Mr. Lea to execute the IMA Agreement without delay, which he did at Mr. Lea's direction.

38.     Ms. Rafaelian would never have agreed to her $7 million investment in the Company, which included her agreement to the Note in favor of Lion Capital, if she knew the Company did not have the resources to provide her New Product Funding.  Indeed, the $7 million investment she made in the Company was, in part, for the very purpose of funding her new business lines.

39.     Not only does Defendants' conduct constitute fraudulent inducement into both the Credit Agreement, Lion Loan Agreements and IMA Agreement, but the misrepresentation also constitutes an event of default under Paragraph 8.01(d) of the Credit Agreement, which provides:

> Any representation, warranty, certification or statements of fact made or deemed made by or on behalf of the Borrower or any other Loan Party herein, in any other Loan Documents, or in any documents delivered in connection herewith shall be incorrect or misleading when made or deemed made

40.     As a result of the Company's breach of the Credit Agreement, all principal in the amount of $7 million and interest under the Credit Agreement is immediately due and owing to Pledge Co.

41.     In addition, the Lion Loan Agreements are unenforceable for lack of consideration because the IMA Agreement, which Lion Capital, the Company and Ms. Rafaelian are each parties to, specifically provides the performance of the New Product Funding under Paragraph 3(b) of the IMA Agreement is consideration for, among other things, the obligations under the Lion Loan Agreements.  Specifically, Page 1 of the IMA Agreement provides: "in exchange and consideration for the Parties entering into the Transaction Agreements and Lion making the loan to the Founder pursuant to the Lion-Founder Note, the Parties have agreed to enter into this Agreement."

**Lion Capital Wrongfully Holds Ms. Rafaelian in Default & Terminates her Employment**

42.    Shortly thereafter, in early October of 2019, Ms. Rafaelian, or those acting on her behalf, inquired with Lion Capital regarding the timing of payment of interest under the Note.  In response, Mr. Lea confirmed in writing that all interest on the Note would be due at maturity.

43.    In reliance upon this representation and understanding with Lion Capital, Ms. Rafaelian did not make any monthly interest payments on the Note.

44.    Approximately seven (7) months later, by letter dated April 15, 2020, Lion Capital held Ms. Rafaelian in default of the Note for allegedly failing to make monthly interest installment payments and charging her interest at a default rate of 15% per annum since the inception of the Note totaling more than $400,000.

45.    Prior to April 15, 2020, and consistent with Ms. Rafaelian's understanding with Lion Capital, no allegation of default was ever made by Lion Capital.

46.    Shortly thereafter, on May 8, 2020, Ms. Rafaelian's employment with the Company was terminated.

47.    In connection with her termination, the Company has demanded she execute a general release of any claims as a condition to receiving the intellectual property rights to the Current State and Tri-Alchemy tradenames, despite having never provided any New Product Funding for the business lines, which remain worthless and non-operational.

48.    In addition, by letter dated June 4, 2020, Lion Capital has demanded payment in full of the $5 million Note with interest at 15% per annum.

49.    Furthermore, the Company has refused to return to Ms. Rafaelian certain personal property located at the Company's offices in East Greenwich, Rhode Island, including, without limitation, furniture of significant value.

50.     Plaintiffs have been forced to commence this action to protect and enforce their rights, retain the undersigned law firm, and agreed to pay a reasonable fee for its services.

51.     In this action, Plaintiffs seek an award of damages resulting from Defendants' fraudulent inducement of Pledge Co. and Ms. Rafaelian into the $7 million loan transaction with the Company or, alternatively, recission of the Credit Agreement.  Plaintiffs also seek a declaration from the Court that Ms. Rafaelian is not in breach of the related Note held by Lion Capital and declare the Lion Loan Agreements void and unenforceable.

52.     Plaintiffs stand to suffer immediate and irreparable harm if Defendants take any action to foreclose, collect or levy on any of the collateral secured under the Lion Loan Agreements including, without limitation, equity interests in the Company held by Pledge Co. and real estate owned by Venice Beach.

53.     All conditions precedent to this action's maintenance have been complied with, waived, or excused.

## COUNT I
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

54.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 53 of the Complaint as if fully set forth herein.

55.     This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

56.     Defendants, individually and in concert, directly or indirectly, made the false statements and omissions specified above, which they knew, or deliberately disregarded, were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made not misleading.

57.     Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their sale or issuance of securities.

58.     Defendants acted with scienter in that they knew that the statements made and omitted were materially false and misleading; knew that such statements, omissions or documents would be relied upon by the Plaintiffs; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements, omissions or documents as primary violations of the securities laws.

59.     In ignorance of the falsity of the statements, Plaintiffs relied on the statements and omissions described above.

60.     Plaintiffs justifiably relied on the accuracy of the facts disclosed and the materiality of facts not disclosed by them.

61.     Had Plaintiffs been aware the statements regarding the New Product Funding had been false and misleading, they would not have entered into the Credit Agreement or the Lion Loan Agreements.

62.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiffs for substantial damages which they suffered.

63.     Mr. Lea and Mr. Trabucco are personally liable for securities fraud for all damages alleged herein because (a) they intentionally made or caused to be made the false statements and

omissions and (b) as a director and/or officer of their respective companies participated in and had knowledge of its fraud.

**COUNT II**
**Violation of Section 20(a) of The Exchange Act**
**Against Lea and Trabucco**

64.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.     Mr. Lea and Mr. Trabucco participated in the operation and management and of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.

66.     Because of their senior positions, they knew the financial condition of the Company's business operations.

67.     As the Chief Restructuring Officer of the Company, Mr. Trabucco had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and its business operations, and to correct promptly any statements issued by him or the Company which had become materially false or misleading.

68.     Because of their position of control and authority, Mr. Trabucco and Mr. Lea were able to, and did, control the contents of the information which the Company disseminated, or concealed, in connection with the sale, issuance or cancellation of the securities.

69.     Mr. Trabucco and Mr. Lea exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.

70.     Mr. Trabucco and Mr. Lea therefore, were each a "controlling person" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged.

71.     By reason of the above conduct, Mr. Trabucco and Mr. Lea are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## COUNT III
### (Fraud)
### Against All Defendants

72.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73.     Mr. Lea and Mr. Trabucco, individually and on behalf of Lion Capital and the Company, deliberately and with knowledge of the falsity or reckless disregard for its truth represented to Ms. Rafaelian that the Company could provide New Product Funding and failed to disclose the Company lacked the financial resources to provide any such funding.

74.     Mr. Lea and Mr. Trabucco acted with knowledge that their representations and non-disclosures of material facts were false, and with the intention of inducing Ms. Rafaelian.

75.     Ms. Rafaelian reasonably relied on Mr. Lea and Mr. Trabucco's intentional misrepresentations to her detriment in entering into the Lion Loan Agreements, Credit Agreement and IMA Agreement and as proximate result, has been damaged.

## COUNT IV
### (Breach of Contract)
### Against the Company

76.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 75 of the Complaint as if fully set forth herein.

77.     The parties entered into the IMA Agreement on September 13, 2019, which states that the Company shall provide the New Product Funding in an amount of $1 million per year as set forth in Paragraph 3(b) of the IMA Agreement.

78.     Ms. Rafaelian was the intended beneficiary of the New Product Funding in the IMA Agreement and has performed all of her obligations with respect to the IMA Agreement.

79.     The Company has materially and substantially breached the IMA Agreement by failing and refusing to provide the New Product Funding as required under the agreement.

80.     As a direct and proximate result, Ms. Rafaelian has been damaged in an amount of $1 million.

**COUNT V**
**(Conversion)**
**Rafaelian Against the Company**

81.     Plaintiff, Carolyn Rafaelian, repeats and realleges the allegations contained in Paragraphs 1 through 80 of the Complaint as if fully set forth herein.

82.     Ms. Rafaelian is the lawful owner with rights to possession of furniture as well as other personal property located at the Company office premises in East Greenwich, Rhode Island.

83.     Despite demand for their return, the Company unlawfully has possession of the personal property without permission or authorization and has refused to return certain items including, without limitation, certain furniture belonging to Ms. Rafaelian of significant value.

84.     Ms. Rafaelian has suffered damages due to the Company's conversion of her property.

**COUNT VI**
**(Replevin)**
**(Fed. R. Civ. P., Rule 64 & R.I. Gen. Laws. §§ 34-21-1)**
**Rafaelian Against the Company**

85.     Plaintiff, Carolyn Rafaelian, repeats and realleges the allegations contained in Paragraphs 1 through 84 of the Complaint as if fully set forth herein.

86.     Ms. Rafaelian is the lawful owner with rights to possession of furniture as well as other personal property located at the Company office premises in East Greenwich, Rhode Island.

87.     Despite demand to their return, the Company unlawfully has possession of the personal property without permission or authorization and has refused to return certain items including, without limitation, certain furniture belonging to Ms. Rafaelian of significant value.

88.     Accordingly, the Company is in wrongful possession of Mr. Rafaelian's personal property.

## COUNT VII
### (Declaratory Relief)

89.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 88 of the Complaint as if fully set forth herein.

90.     An actual and justiciable controversy exists between the parties as to their respective rights and obligations under the Lion Loan Agreements.

91.     Plaintiffs seek the following declarations regarding their obligations under the Lion Loan Agreements:

   a) Declare Ms. Rafaelian was not obligated to make monthly interest installment payments under the Note;

   b) Declare Ms. Rafaelian not in default of the Note for purportedly failing to make interest payments under the Note prior to maturity of the Note; and

   c) Declare the Lion Loan Agreements void and unenforceable.

## COUNT VIII
### (Injunctive Relief)

92.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 91 of the Complaint as if fully set forth herein.

93.     Plaintiffs seek injunctive relief barring Defendants from taking any action from foreclosing, collecting or levying on any assets or collateral under the Lion Loan Agreements.

94.     Plaintiffs will suffer irreparable harm from Defendants if their conduct is not so restrained and the status quo preserved, requiring injunctive relief.

95.     There is no adequate remedy at law to redress the injuries to be suffered by Plaintiffs without the imposition of the requested injunctive relief.

96.     Plaintiffs have a likelihood of success on the merits of their claims sufficient to warrant the imposition of injunctive relief.

97.     Plaintiffs submits that the balance of the equities favors the imposition of injunctive relief, issuance of injunctive relief will not disserve public policy and issuance of injunctive relief will preserve the parties' status quo.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs hereby demand a trial by jury on all claims so triable.

## V.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a)  Awarding damages to Plaintiffs and/or alternatively recission of the Credit Agreement;

b)  Awarding damages in the amount of $1 million for the breach of the IMA Agreement;

c)  Declaring Ms. Rafaelian not in default of the Note for purportedly failing to make interest payments under the Note prior to maturity of the Note;

d)  Declaring the Lion Loan Agreements void and unenforceable;

e)  Enjoining Defendants from foreclosing, collecting or levying on any assets under the Lion Loan Agreements;

f)  Ordering the return of all property belonging to Ms. Rafaelian in the possession of the Defendants;

g) Award their costs of litigation, including reasonable attorneys' fees, as authorized by the Note and IMA Agreement; and

h) Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**KALBERER LLP**


By: /s/ *Kurt T. Kalberer II*
Kurt T. Kalberer II, Esq. (#8007)
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, NY 10004
Tel: (212) 266-0044
E-Mail: kkalberer@kalbererlaw.com
*Counsel for Plaintiffs Carolyn Rafealian,*
*Alex & Ani Pledge Co. and Venice Beach*
*Walk, LLC*

Dated: June 12, 2020


## CERTIFICATE OF SERVICE

I, Kurt T. Kalberer II, hereby certify that on June 12, 2020, I caused a true and correct copy of the foregoing Plaintiffs' Amended Complaint to be served upon counsel for Defendant LC A&A Holding, Inc. via US Mail to Matthew T. Oliverio, Esquire, Oliverio & Marcaccio, LLP, 55 Dorrance Street, Suite 400, Providence, RI  02903

/s/ *Kurt T. Kalberer II*