**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| CAROLYN RAFAELIAN, an individual, ALEX AND ANI PLEDGE CO., a Rhode Island Corporation, and VENICE BEACH WALK, LLC, a California Limited Liability Company, <br><br>                 Plaintiffs, <br><br>        - v - <br><br> LC A&A HOLDINGS, INC., a Delaware Corporation, LC A&A INTERMEDIATE INVESTORS, LLC, a Delaware Limited Liability Company, LYNDON LEA, an individual, A AND A SHAREHOLDING CO., LLC, a Delaware Limited Liability Company, and ROBERT TRABUCCO, an individual, <br><br>                 Defendants. | 1:20-CV-00247-MSM-PAS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 3

      A.      The Restructuring............................................................................................... 4

      B.      The Restructuring Agreements ........................................................................... 4

            1.      The Credit Agreement............................................................................ 5

            2.      The Lion Loan Agreements .................................................................... 5

      C.      The Investor Matters Agreement and the New Product Funding ........................ 7

      D.      Rafaelian Is Terminated and Defaults Under the Lion Loan Agreements............. 8

      E.      The Complaint ................................................................................................... 8

ARGUMENT .............................................................................................................................. 9

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR SECURITIES FRAUD............ 9

      A.      Plaintiffs Allege No Material Misrepresentation or Omission. ............................ 10

      B.      Plaintiffs Allege No Fraud in Connection With the Purchase or Sale of a Security. ........................................................................................................... 11

      C.      Plaintiffs Fail to Allege the Requisite Scienter.................................................... 12

      D.      Plaintiffs Fail to Allege Justifiable Reliance. ...................................................... 13

      E.      Plaintiffs Fail to Allege Economic Loss or Loss Causation. ................................ 14

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR CONTROL PERSON LIABILITY................................................................................................................... 16

III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR COMMON-LAW FRAUD. ...................................................................................................................... 16

      A.      Plaintiffs' Fraud Claim Fails Because It Alleges a Mere Breach of Promise. ........................................................................................................... 17

      B.      Plaintiffs Fail to Allege That Defendants Had Knowledge of Falsity and Intent to Deceive. ............................................................................................. 19

      C.      Plaintiffs Fail to Allege Reasonable Reliance. .................................................... 19

IV.    EVEN IF THE COMPLAINT STATED A SECURITIES OR COMMON-LAW FRAUD CLAIM, PLAINTIFFS RELEASED THOSE CLAIMS IN THE IMA............. 20

V.     THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT................................................................................................................. 21

VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR CONVERSION. .................... 24

VII.   THE COMPLAINT FAILS TO STATE A CLAIM FOR REPLEVIN........................... 25

i

**TABLE OF CONTENTS**
(Continued)

Page

VIII.  THE DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF CLAIMS
ARE NOT PROPERLY BEFORE THIS COURT. ........................................................... 26

IX.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE LION
DEFENDANTS. ............................................................................................................. 27

CONCLUSION.............................................................................................................................. 30

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACA Fin. Guar. Corp.* v. *Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008) .................................................................................16

*Anderson* v. *Wachovia Mortg. Corp.*,
    497 F. Supp. 2d 572 (D. Del. 2007) ....................................................................23

*Ark Grp., Inc.* v. *Shield Restraint Sys., Inc.*,
    No. 1:18-cv-00755-RGA, 2018 WL 4926449 (D. Del. Oct. 10, 2018) .................23

*Asahi Metal Ind.* v. *Superior Court*,
    480 U.S. 102 (1987) .............................................................................................29

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................9, 25

*Atrion Networking Corp.* v. *Marble Play, LLC*,
    18 F. Supp. 3d 136 (D.R.I. 2014) ...................................................................18, 19

*Bacon* v. *Smith Barney Shearson, Inc.*,
    938 F. Supp. 98 (D.N.H. 1996) ...........................................................................11

*Brillhart* v. *Excess Ins. Co.*,
    316 U.S. 491 (1942) .............................................................................................27

*Camilo* v. *Nieves*,
    No. CV 10-2150 (DRD), 2012 WL 12995632 (D.P.R. Mar. 31, 2012) .....................13, 14, 15

*Chopmist Hill Fire Dep't* v. *Town of Scituate*,
    780 F. Supp. 2d 179 (D.R.I. 2011) .......................................................................25

*Claudio-De Leon* v. *Sistema Universitario Ana G. Mendez*,
    775 F.3d 41 (1st Cir. 2014) ..................................................................................26

*In re Combustion Eng'g, Inc.*,
    366 F. Supp. 2d 224 (D. Del. 2005) .....................................................................23

*Cornell Glasgow, LLC* v. *La Grange Props., LLC*,
    No. CIV.A. N11C-05013JRS, 2012 WL 2106945 (Del. Super. Ct. June 6,
    2012) ....................................................................................................................18

*Cote* v. *Aiello*,
    148 A.3d 537 (R.I. 2016) ......................................................................................18

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Coyne* v. *Metabolix, Inc.*,
  943 F. Supp. 2d 259 (D. Mass. 2013) ...................................................................14

*DeChristofaro* v. *Machala*,
  685 A.2d 258 (R.I. 1996) ............................................................................24, 25

*Dura Pharm., Inc.* v. *Broudo*,
  544 U.S. 336 (2005)...................................................................................14

*Fraioli* v. *Lemcke*,
  328 F. Supp. 2d 250 (D.R.I. 2004).....................................................................16

*Fuscellaro* v. *Indus. Nat'l Corp.*,
  368 A.2d 1227 (R.I. 1977)..............................................................................24

*Goldberg* v. *Lancellotti*,
  503 A.2d 1129 (R.I. 1986).............................................................................26

*GRE Prop. Investments, LLC* v. *Isanthes, LLC*,
  No. 20-054-JJM-PAS, 2020 WL 2616176 (D.R.I. May 22, 2020)..........................................28

*Guilbeault* v. *R.J. Reynolds Tobacco Co.*,
  84 F. Supp. 2d 263 (D.R.I. 2000) .....................................................................17

*Hiller & Arban, LLC* v. *Reserves Mgmt., LLC*,
  No. CV N15C-02-161 WCC, 2016 WL 3678544 (Del. Super. Ct. July 1, 2016) .................18

*Knox* v. *MetalForming, Inc.*,
  914 F.3d 685 (1st Cir. 2019)...........................................................................29

*Kowalski* v. *Gagne*,
  914 F.2d 299 (1st Cir. 1990)............................................................................8

*State* v. *Letts*,
  986 A.2d 1006 (R.I. 2010)..............................................................................19

*Lucia* v. *Prospect St. High Income Portfolio, Inc.*,
  769 F. Supp. 410 (D. Mass. 1991), *aff'd*, 36 F.3d 170 (1st Cir. 1994)...................................14

*Massachusetts Sch. of Law at Andover, Inc.* v. *Am. Bar Ass'n*,
  142 F.3d 26 (1st Cir. 1998).............................................................................28

*Metzler Asset Mgmt. GmbH* v. *Kingsley*,
  928 F.3d 151 (1st Cir. 2019)...........................................................................10

iv

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*MicroStrategy Inc.* v. *Acacia Research Corp.*,
  No. CIV.A. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010) .............................18, 19

*Montecalvo* v. *Mandarelli*,
  682 A.2d 918 (R.I. 1996) ...................................................................................................24, 25

*Moseman Constr. Co.* v. *State Dep't of Transp.*,
  608 A.2d 34 (R.I. 1992) ...........................................................................................................26

*Narragansett Elec. Co.* v. *Constellation Energy Commodities Grp., Inc.*,
  526 F. Supp. 2d 260 (D.R.I. 2007) ............................................................................................3

*Negron-Torres* v. *Verizon Commc'ns, Inc.*,
  478 F.3d 19 (1st Cir. 2007) .....................................................................................................28

*Outdoor Techs., Inc.* v. *Allfirst Fin., Inc.*,
  No. CIV.A.99C-09-151-JRS, 2001 WL 541472 (Del. Super. Ct. Apr. 12, 2001) .................18

*Palmacci* v. *Umpierrez*,
  121 F.3d 781 (1st Cir. 1997) ...................................................................................................12

*Paraflon Invs., Ltd.* v. *Fullbridge, Inc.*,
  No. 16-12436-RGS, 2019 WL 3759522 (D. Mass. Aug. 9, 2019), *aff'd*, 960
  F.3d 17 (1st Cir. 2020) .............................................................................................................14

*Prairie Capital III, L.P.* v. *Double E Holding Corp.*,
  132 A.3d 35 (Del. Ch. 2015) ...................................................................................................17

*Pritzker* v. *Yari*,
  42 F.3d 53 (1st Cir. 1994) .......................................................................................................28

*Rivera* v. *Clark Melvin Secs. Corp.*,
  59 F. Supp. 2d 280 (D.P.R. 1999) ...........................................................................................12

*Riverbend Cmty., LLC* v. *Green Stone Eng'g, LLC*,
  55 A.3d 330 (Del. 2012) ..........................................................................................................20

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
  404 F. Supp. 2d 605 (D.N.J. 2005) ..........................................................................................15

*Sanchez-Cardona* v. *Corp. Planners, Inc.*,
  895 F. Supp. 26 (D.P.R. 1995) ................................................................................................11

v

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Terrace Grp.* v. *Vt. Castings, Inc.*,
753 A.2d 350 (R.I. 2000) ............................................................................................17

*Trenwick Am. Litig. Trust* v. *Ernst & Young, L.L.P.*,
906 A.2d 168 (Del. Ch. 2006), *aff'd en banc*, *Trenwick Am. Litig. Tr.* v.
*Billett*, 931 A.2d 438 (Del. 2007) ..............................................................................13

*Universal Enter. Grp., L.P.* v. *Duncan Petrol. Corp.*,
No. CV 4948-VCL, 2013 WL 3353743 (Del. Ch. July 1, 2013)..............................19

*Universal Truck & Equip. Co., Inc.* v. *Caterpillar, Inc.*,
No. 10-466 S, 2012 WL 5398929 (D.R.I. Nov. 5, 2012) .........................................25

*VLIW Tech., LLC* v. *Hewlett-Packard Co.*,
840 A.2d 606 (Del. 2003) ...........................................................................................22

*Ward* v. *Hildebrand*,
No. CIV. A. 13582, 1996 WL 422336 (Del. Ch. July 8, 1996)................................19

*Wilton* v. *Seven Falls Co.*,
515 U.S. 277 (1995).....................................................................................................27

*Wortley* v. *Camplin*,
333 F.3d 284 (1st Cir. 2003) .............................................................................11, 12, 14

STATUTES AND REGULATIONS

15 U.S.C. § 78j(b) ...........................................................................................................9, 11, 15

15 U.S.C. § 78t................................................................................................................16

15 U.S.C. § 78u-4(b)(2) .................................................................................................12

17 C.F.R. § 240.10b–5 .......................................................................................... passim

R.I. Gen. Laws § 9-5-33..................................................................................................28

vi

## PRELIMINARY STATEMENT

Plaintiff Carolyn Rafaelian and two entities she controls bring this action in a transparent effort to avoid repaying a $5 million secured promissory note (the "Note") in favor of Defendant LC A&A Holdings, Inc. (the "Lender") that Rafaelian signed and the two entities guaranteed.  There is no dispute that the Note has matured and not a penny of principal or interest has been paid—indeed, the Lender is already proceeding against Rafaelian in a separate collection action in New York, the exclusive forum for claims related to the Note.  Apparently hoping to complicate and delay the Lender's collection on the Note, Plaintiffs seek to have this Court declare the Note void and enjoin the Lender from exercising its collection remedies on the ground that Defendants allegedly reneged on a separate promise in a separate agreement.

Rafaelian, the founder and former CEO of a large jewelry company, Alex and Ani, LLC (the "Company"), claims that Defendants induced her to agree to a restructuring of the Company—which was then in default on a $100 million bank loan—based on a promise to fund the operations of her two new business lines (Current State and Tri-Alchemy) up to $1 million a year for two years.  She alleges that the Company could not afford to fulfill that promise and that, had she known the Company's financial condition, she "would never have agreed" to the restructuring, to which she contributed $7 million, financed in substantial part by the $5 million loan from the Lender (the "Loan") that she agreed in the Note to repay.  (Am. Compl. ¶ 38.)  Based on these allegations, Rafaelian asserts claims for fraud (under both Rule 10b–5 and common law) and breach of contract.  She also asserts unrelated claims for conversion and replevin to recover some furniture she claims is hers, and seeks a declaration and an injunction relieving her of her obligations under the Note.  Each of Rafaelian's claims should be dismissed.

*First*, it is black-letter law that breach of a promise, even if intentional, is not actionable as fraud, under either the securities laws or the common law, without evidence that the

promise was made with the contemporaneous intent to breach it. Rafaelian alleges no such intent. The relevant promise was to fund the operations of two business lines for up to $1 million per year for two years (unless Rafaelian left the Company earlier). The Complaint alleges no facts showing that the Company *never* intended to keep its promise; it alleges merely that "within days" of a restructuring, Defendant Robert Trabucco ("Trabucco"), the Company's Chief Restructuring Officer, told Rafaelian that the Company could not at that moment afford to fund the new product lines. (Am. Compl. ¶ 36.) *Second*, the securities fraud claims also fail because the Complaint alleges no misrepresentation or omission in connection with the purchase or sale of a ***security***. Rafaelian does not, and cannot, allege that the alleged "misrepresentation" of the Company's intent to fund the new product lines relates to the equity Rafaelian received in the restructuring or any other security. *Third*, Rafaelian's fraud-based claims fail for lack of reliance. At the time of the restructuring, she was the CEO of the Company. In her role as a fiduciary, she knew or should have known the Company's financial condition and could not justifiably have relied on alleged misrepresentations or omissions by Defendants about the Company's financial resources. *Finally*, Plaintiffs released all claims against these Defendants arising from pre-restructuring conduct in the very agreement in which the promise to fund Rafaelian's new business lines is contained, and the Complaint makes no claim, nor could it, that the release was procured by fraud.

Further, Plaintiffs' contract claim fails because it rests on an interpretation of A&A Shareholding Co., LLC's ("A&A Shareholding") obligations that is belied by the relevant agreement's unambiguous language. A&A Shareholding had no obligation, as Rafaelian asserts, to pay her $1 million per year on demand in the guise of funding two business lines. Instead, its obligations were to fund "the operations" of the two business lines "up to a total" of $1 million per year, including research & development costs and operating losses. Rafaelian alleges no facts

showing *that* obligation was breached.  Rafaelian's conversion and replevin claims likewise fail because she fails to identify with the requisite specificity any of the property A&A Shareholding is purportedly withholding.  And she alleges no facts at all supporting her requests for declaratory and injunctive relief barring the Lender's enforcement of the Note.

Moreover, even if the Complaint stated a claim, many of the claims and parties are not properly before this Court.  Because the parties to the Note irrevocably submitted to exclusive jurisdiction in New York, claims related to Plaintiffs' obligations under the Note should be dismissed in favor of the proceedings now pending in New York state court.  And the Lender, its affiliate Defendant LC A&A Intermediate Investors, LLC ("Lion"), and Lion's principal, Defendant Lyndon Lea ("Lea"), are not subject to personal jurisdiction here.

For all these reasons, as set forth in greater detail below, the Complaint should be dismissed under Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

For purposes of this motion, the Court may consider not only the well-pleaded factual allegations in the Complaint, but also the agreements that were executed in connection with the Company's restructuring, because the Complaint is "replete with references to them," "their authenticity has not been questioned," "allegations in the Complaint are expressly linked to and dependent upon them," and they are "'integral to or explicitly relied upon'" in the Complaint. *Narragansett Elec. Co.* v. *Constellation Energy Commodities Grp., Inc.*, 526 F. Supp. 2d 260, 268 (D.R.I. 2007) (quoting *Jorge* v. *Rumsfeld*, 404 F.3d 556, 559 (1st Cir. 2005)).[1]  Those allegations and the pertinent facts established by the agreements are summarized below.

---

[1]    The agreements executed in connection with the Company's restructuring and referred to in the Amended Complaint are appended as exhibits to this memorandum of law.

3

## A.   The Restructuring

Rafaelian, a resident of Florida, founded the Company in 2003.  (Am. Compl. ¶¶ 1, 13.)  Rafaelian was the CEO and majority and controlling equity holder until September 13, 2019, the date of the restructuring.  (*Id*. ¶ 14.)  Rafaelian controls various investment entities, including Alex and Ani Pledge Co. ("Pledge Co.") and Venice Beach Walk, LLC ("Venice Beach Walk"), the two other Plaintiffs here.  (*Id*. ¶ 14.)  The Company is not party to this action.[2]

In 2015, Lion, a Delaware limited liability company with its principal place of business in London, England, became a 40% owner of the Company when it bought out another private equity firm's interest for approximately $360 million.  (*Id*. ¶¶ 5, 16.)  Lion's principal and managing partner is Lea, an individual who resides in London, England.  (*Id*. ¶¶ 6, 17.)  Lion and Rafaelian both held their equity in the Company through a holding company, Defendant A&A Shareholding.  (*See id*. ¶ 7.)

By the summer of 2019, the Company was in financial distress and had been declared in default of a $100 million credit facility with Bank of America.  (*Id*. ¶ 19.)  To avoid liquidation, the Company—under the control of then-CEO and majority shareholder Rafaelian—agreed to undergo a restructuring, through which Rafaelian would divest her controlling equity interest in and management of the Company and would lend the Company $7 million, of which $5 million was to be funded by Lion through the Loan.  (*Id*. ¶¶ 19–21.)

## B.   The Restructuring Agreements

Rafaelian and Lion agreed on the basic terms of the proposed restructuring in an Equity Restructuring Binding Term Sheet (the "Term Sheet") executed on August 14, 2019.  (*Id*.

---

[2]   The Complaint initially defines the "Company" as Alex and Ani, LLC (Am. Compl. at 1), but later defines it to include its affiliated entities (*id*. ¶ 13).

¶ 20; Ex. 1 at 1.)   Under the Term Sheet, Lion agreed to lend A&A Shareholding $13 million through a second lien term loan, and to lend Rafaelian $5 million that she would use solely to fund a $7 million second lien term loan to A&A Shareholding.  (Ex. 1 at 1.)  Lion's loan to Rafaelian was to mature in nine months, to be full recourse to her, and to be secured by her equity interests in A&A Shareholding and real property in Venice Beach, California.  (*Id.*)  The Term Sheet contemplated that A&A Shareholding would fund the operating costs of the Current State and Tri-Alchemy business lines up to a total of $1 million per year for two years.  (*Id.*)  Upon the closing of the restructuring, the parties were to exchange releases.  (*Id.* at 5–6.)  The Term Sheet was agreed to be binding until superseded by definitive documentation.  (*Id.* at 7.)

On September 13, 2019, the parties entered into the definitive documentation of the restructuring transactions contemplated by the Term Sheet, including the agreements described below.  (Am. Compl. ¶ 24.)

1.     The Credit Agreement

Lion's and Rafaelian's respective loans to the Company, as outlined in the Term Sheet, were memorialized in a Second Lien Credit Agreement (the "Credit Agreement").  (*Id.* ¶ 25; Ex. 2.)  The Credit Agreement, to which the Company as Borrower, A&A Shareholding as the Holding Company, and Lion and Pledge Co. as Lenders are parties, is governed by New York law, and each of the parties irrevocably consented to exclusive jurisdiction of all disputes thereunder in New York courts.  (Ex. 2 § 11.14(a), (b).)

2.     The Lion Loan Agreements

*The Note.*  Rafaelian's $7 million loan, through Pledge Co., to the Company under the Credit Agreement was financed by the Lender's $5 million Loan to her.  (Am. Compl. ¶ 30.) Her obligation to repay the Lender for the Loan was memorialized in the Note.  (*Id.* ¶ 32.)  Under the Note, Rafaelian unconditionally promised to repay to the Lender the entire outstanding

5

principal amount of $5 million, plus all accrued and unpaid interest, on the Maturity Date of June 15, 2020.  (*Id.* ¶ 29; Ex. 3 §§ 1, 2.)

The Note provides that it is governed by New York law (Ex. 3 § 16), and that each of the parties "irrevocably and unconditionally submits, for itself and its property, to the ***exclusive jurisdiction*** of the Supreme Court of the State of New York sitting in New York County and the United States District Court for the Southern District of New York, and any relevant appellate court, ***in any action or proceeding arising out of or relating to this Note***," and waives any objection to venue in those courts (*id.* § 17(a)-(b) (emphasis added)).

Under the Note, a condition precedent to the Lender's obligation to fund the Loan was the execution of several other instruments, including a Guaranty, a Pledge, and a Mortgage (*id.* § 7), which collectively guarantee and secure Rafaelian's repayment obligation under the Note, and each of which is an exhibit to and incorporated by reference in the Note (collectively, with the Note, the "Lion Loan Agreements").

*The Guaranty.*   Under the Guaranty, Pledge Co. and Venice Beach Walk (collectively, the "Guarantors") irrevocably and unconditionally guaranteed as primary obligors the full and punctual performance of Rafaelian's obligations under the Note.  (Am. Compl. ¶ 32; Ex. C to Ex. 3 § 1.)  Like the Note, the Guaranty is governed by New York law.  (Ex. C to Ex. 3 § 8.)

*The Pledge.*   As security for the Note, Rafaelian executed on behalf of Pledge Co. a Pledge Agreement (the "Pledge"), pledging all of her equity in A&A Shareholding as collateral for the Note.  (Am. Compl. ¶ 32; Ex. B to Ex. 3.)  The Pledge incorporated the New York choice of law and exclusive New York jurisdiction clauses in the Note:  "Sections 16, 17 and 18 of the

Note are set forth and incorporated herein *mutatis mutandis*."  (Ex. B to Ex. 3 § 24 (capitalization altered).)

*The Mortgage.*  As further security for the Note, Rafaelian executed on behalf of Venice Beach Walk a Deed of Trust with Assignment of Rents (the "Mortgage") in favor of Lion on real property in Venice Beach, California.  (Am. Compl. ¶ 32; Ex. A to Ex. 3.)  Upon a default under the Note, the Mortgage permits Lion, among other things, to direct the Trustee to sell the property and apply the proceeds to repayment of all principal and interest owed under the Note. (Ex. A to Ex. 3.)

### C.    The Investor Matters Agreement and the New Product Funding

Contemporaneously with the Credit Agreement and the Lion Loan Agreements, Rafaelian, Pledge Co., Lion, A&A Shareholding, and the Company also entered into an Investor Matters Agreement (the "IMA").  Under section 3(b) of the IMA, A&A Shareholding agreed to "fund the operations" of Current State and Tri-Alchemy, "includ[ing] all research and development costs and operating losses" of those lines of business, up to a maximum amount of $1 million per year for two years or until the termination for any reason of Rafaelian's employment, whichever came first.  (Am. Compl. ¶ 34; Ex. 4 § 3(b).)

As anticipated in the Term Sheet, the IMA also contained a broad mutual release, whereby each of Lion, on the one hand, and Rafaelian and her affiliated investment vehicles, including Pledge Co., on the other, on behalf of themselves and their respective predecessors, successors, successors-in-interest, assigns, heirs, and representatives, "forever waive[d], release[d] and discharge[d]" the other and their respective affiliates, officers, managers, and directors, including the Company, from "any and all [c]laims," "whether known or unknown," "that relate to, arise out of or otherwise are in connection with" their relationship.  (*Id.* § 1(a)–(b).)  The release

did not, however, release any obligations under the restructuring agreements, including the Lion Loan Agreements.  (*Id.* § 1(a).)  The IMA is governed by Delaware law.  (Ex. 4 § 5(d).)

### D.   Rafaelian Is Terminated and Defaults Under the Lion Loan Agreements.

On May 8, 2020, Rafaelian's employment with the Company was terminated.  (Am. Compl. ¶ 46.)  Under section 3(b) of the IMA, any obligation to fund the operations of Current State and Tri-Alchemy terminated on that date.  (Ex. 4 § 3(b).)

The Note matured on June 15, 2020.  (Ex. 3 § 1 (definition of Maturity Date).)  Although the Note expressly provides for the monthly payment of interest in cash (*id.* § 3), Rafaelian admits that she has not made any interest payments on the Note (Am. Compl. ¶ 43) and makes no claim that she has repaid the principal.  On June 17, 2020, the Lender sued Rafaelian and the Guarantors for payment on the Note in the Supreme Court of the State of New York, New York County, through a motion for summary judgment in lieu of complaint (the "New York Action") (Parikh Decl. Ex. 1).[3]  The New York Action is currently pending.

### E.   The Complaint

The Complaint asserts eight counts: securities fraud against all Defendants (Count I); control person liability against Lea and Trabucco (Count II); common-law fraud against all Defendants (Count III); breach of contract (Count IV), conversion (Count V), and replevin (Count VI) against A&A Shareholding; and declaratory and injunctive relief (Counts VII–VIII) respecting the Note.

---

[3]   "Parikh Decl." refers to the Declaration of Michelle Parikh in Support of Defendants' Motion to Dismiss dated August 14, 2020.  This Court may take judicial notice of the New York Action on this motion.  "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."  *Kowalski* v. *Gagne*, 914 F.2d 299, 305 (1st Cir. 1990).

The central allegation underlying the fraud and breach of contract claims is that, "within days" of executing the IMA and the other restructuring agreements on September 13, 2019, Trabucco allegedly "advised" Rafaelian that "the Company could not afford" to fund Current State and Tri-Alchemy.  (Am. Compl. ¶ 36.)  Rafaelian alleges that until this meeting, she did not know that "the Company did not have the resources" to fund the operations of Current State and Tri-Alchemy, and if she had known, she "would never have agreed" to lend $7 million to the Company under the Credit Agreement or to repay the $5 million Loan under the Note.  (*Id.* ¶ 38.)

In support of the conversion and replevin claims, Rafaelian alleges that "the Company has refused to return . . . certain personal property located at the Company's offices . . . including, without limitation, furniture of significant value."  (Am. Compl. ¶ 49; *see id.* ¶¶ 82, 86.)

## ARGUMENT

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, which "'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  Here, the Complaint alleges no facts which state a plausible claim for relief.

## I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR SECURITIES FRAUD.

Count I of the Complaint alleges that Defendants violated section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5 of the Securities and Exchange Commission promulgated thereunder, 17 C.F.R. § 240.10b–5.  To state such a claim, a plaintiff "must adequately plead (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation."

*Metzler Asset Mgmt. GmbH* v. *Kingsley*, 928 F.3d 151, 158 (1st Cir. 2019) (internal quotations and citations omitted).

Here, the only misrepresentation or omission alleged is the promise to fund the operations of Current State and Tri-Alchemy, as provided in the IMA.  Plaintiffs allege that they "justifiably relied on the accuracy" of the facts as disclosed, and had they "been aware the statements regarding the New Product Funding had been false and misleading, they would not have entered into the Credit Agreement or the Lion Loan Agreements."  (Am. Compl. ¶¶ 60, 61.)  In other words, Plaintiffs claim that, if they had known that the Company allegedly could not perform its contractual obligation to fund the operations of two new business lines up to a maximum amount of $1 million per year for two years, they would not have agreed to a restructuring that saved the Company from imminent liquidation or to repay the Loan under the Note.

These allegations do not satisfy any of the elements of a Rule 10b–5 claim.

### A.    Plaintiffs Allege No Material Misrepresentation or Omission.

The Complaint alleges no misrepresentation of a material fact.  Indeed, it does not allege that Defendants made ***any*** representations about the financial condition of the Company as of September 13, 2019, let alone that such representations were false when made.  Nor does the Complaint allege any omission to state a material fact "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b–5(b).  To the contrary, the Complaint itself makes clear that the Company's financial troubles were no secret:  it alleges that the Company had been declared in default of a $100 million bank facility and, without a restructuring, faced liquidation.  (Am. Compl. ¶¶ 19–20.)  Rather than a material misrepresentation or omission, the Complaint alleges only that A&A Shareholding

agreed in the IMA to provide limited funding for the operations of two new business lines but told Rafaelian a few days later that the Company then "lacked the resources" to do so.  (*Id.* ¶ 36.)

"[M]ere breach of a promise" is not actionable under section 10(b), ***unless*** the defendant "makes a specific promise, as part of the consideration for the transfer of securities, to perform an act, while intending not to perform the act."  *Wortley* v. *Camplin*, 333 F.3d 284, 294–95 (1st Cir. 2003) (citing *United Int'l Holdings, Inc.* v. *Wharf (Holdings) Ltd.,* 210 F.3d 1207, 1221 (10th Cir.2000); *Luce* v. *Edelstein,* 802 F.2d 49, 55 (2d Cir.1986)).  As shown in Part I.C below, Plaintiffs have not alleged any fraudulently concealed intent to breach the contractual funding obligation when the promise was made.[4]

## B.   Plaintiffs Allege No Fraud in Connection With the Purchase or Sale of a Security.

Plaintiffs also do not plausibly allege any misrepresentation or omission in connection with the purchase or sale of a ***security***, as section 10(b) and Rule 10b–5 require.

"'[M]isrepresentations or omissions involved in securities transactions, but not pertaining to the securities themselves, cannot form the basis of a Section 10b or Rule 10b–5 claim.'"  *Bacon* v. *Smith Barney Shearson, Inc.*, 938 F. Supp. 98, 101–02 (D.N.H. 1996) (quoting *Ernst & Co.* v. *Marine Midland Bank, N.A.,* 920 F. Supp. 58, 61 (S.D.N.Y.1996)).  "The 'in connection with' requirement mandates that the alleged fraud concern the fundamental nature of the [security]:  namely, the characteristics and attributes that would induce an investor to buy or sell the particular [security]."  *Sanchez-Cardona* v. *Corp. Planners, Inc.*, 895 F. Supp. 26, 30

---

[4]   As explained below, Plaintiffs have not alleged an actionable breach of contract either. Plaintiffs' interpretation of IMA § 3(b)—that A&A Shareholding owed Rafaelian $1 million on demand immediately upon signing the IMA—is unsupported by the plain language of the agreement.  *See infra* Part V.

(D.P.R. 1995) (quoting *Kearney* v. *Prudential–Bache Securities, Inc.,* 701 F. Supp. 416, 424 (S.D.N.Y. 1988)); *see Rivera* v. *Clark Melvin Secs. Corp.*, 59 F. Supp. 2d 280, 293 (D.P.R. 1999).

Here, the Complaint does not plausibly allege a nexus between the alleged inability to perform under the IMA and Plaintiffs' decision to purchase or sell a security.  The only misrepresentation or omission alleged relates to A&A Shareholding's performance under the IMA. But the IMA is not a security, and the Complaint does not allege otherwise.  The Complaint is devoid of any allegation that Defendants lied about the "characteristics and attributes" of the Credit Agreement or the Class A Units Rafaelian received in the restructuring, the only alleged "securities" identified in the Complaint.  (Am. Compl. ¶ 27.)

C.     **Plaintiffs Fail to Allege the Requisite Scienter.**

To plead scienter under the Private Securities Litigation Reform Act, plaintiffs must state "with particularity facts giving rise to a strong inference" that the defendant acted recklessly or with the intent to deceive, manipulate, or defraud.  15 U.S.C. § 78u-4(b)(2)(A)).  Where, as here, the alleged "misrepresentation" is merely a promise to perform an executory obligation, breach of that promise is not actionable as securities fraud unless the promisor made it with a fraudulent intent not to keep the promise. *Wortley*, 333 F.3d at 294–95.  "[I]f, at the time he makes a promise, the maker honestly intends to keep it but later changes his mind or fails or refuses to carry his expressed intention into effect, there has been no misrepresentation." *Palmacci* v. *Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997).

The Complaint alleges no facts, with particularity or otherwise, "giving rise to a strong inference" that, at the time the IMA was entered into, A&A Shareholding intended not to perform that promise.  It alleges merely that Trabucco "advised" Rafaelian "within days" of the restructuring that the Company could not then "afford to provide her any New Product Funding." (Am. Compl. ¶ 36.)  But the funding obligation was to last up to two years—and, as explained

below, there was no immediate funding obligation to satisfy. *See infra* Part V. The Complaint does not allege any facts from which it could be inferred that A&A Shareholding, let alone the other Defendants, intended as of September 13, 2019 **never** to perform that promise. Nor does the Complaint allege any actual operational costs that Current State and Tri-Alchemy incurred but that A&A Shareholding refused to pay. That Trabucco allegedly told Rafaelian, within days of a restructuring that averted an imminent liquidation, that the distressed Company was not immediately in a position to fund her new business lines is insufficient as a matter of law to support any inference of an antecedent fraudulent intent never to perform.

### D. Plaintiffs Fail to Allege Justifiable Reliance.

The Complaint also fails to allege that Plaintiffs' reliance was justifiable. Nor could it, because Rafaelian, a sophisticated businesswoman who had built a billion-dollar business of which she was then the CEO, had both the means and the duty to understand the precarious financial condition of the Company, which then was in default of an $100 million credit facility and facing "the possibility of an imminent liquidation." (Am. Compl. ¶¶ 19, 25.)

"[T]he First Circuit goes beyond 'mere' reliance, requiring the plaintiff to plead and prove that her reliance on the defendant's material misrepresentation be 'justifiable' or 'reasonable.'" *Camilo* v. *Nieves*, No. CV 10-2150 (DRD), 2012 WL 12995632, at *13 (D.P.R. Mar. 31, 2012) (citing *Kennedy* v. *Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir. 1987)). The Complaint itself defeats any claim of justifiable reliance here. As the founder, CEO, and majority shareholder of the Company, Rafaelian knew or should have known the Company's financial condition. Indeed, as an officer and director, she owed fiduciary duties, including a duty of care, to A&A Shareholding and its residual claimants to acquire that knowledge and act prudently in light of it. *See Trenwick Am. Litig. Trust* v. *Ernst & Young, L.L.P.*, 906 A.2d 168, 175 (Del. Ch.

2006), *aff'd en banc*, *Trenwick Am. Litig. Tr.* v. *Billett*, 931 A.2d 438 (Del. 2007)).  Defendants, on the other hand, owed her no fiduciary duties and dealt with her at arm's length.

In short, Rafaelian was not entitled to rely on Defendants for financial information that she had an independent legal obligation to understand and evaluate herself.  Nor is it plausible that she could not have learned the truth about the Company's financial condition if she had inquired—she was, after all, its CEO.  "[I]f, through minimal diligence, [she] should have discovered the truth," she could not justifiably have relied on anything Defendants said or omitted to say.  *Paraflon Invs., Ltd.* v. *Fullbridge, Inc.*, No. 16-12436-RGS, 2019 WL 3759522, at *9 (D. Mass. Aug. 9, 2019) (quoting *Brown* v. *E.F. Hutton Grp., Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993)), *aff'd*, 960 F.3d 17 (1st Cir. 2020).

E.    **Plaintiffs Fail to Allege Economic Loss or Loss Causation.**

"A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss."  *Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 338 (2005) (citing 15 U.S.C. § 78u–4(b)(4)).  "It is a statutory requirement that plaintiff demonstrate that the acts complained of 'caused the loss for which the plaintiff seeks to recover damages.'"  *Wortley*, 333 F.3d at 295 (quoting 15 U.S.C. § 78u–4(b)(4)).  This requires a "showing of both transaction causation and loss causation":  "a plaintiff must show that the defendant's misrepresentations not only caused the plaintiff to engage in the transaction in question (transaction causation), but also that they caused the harm suffered (loss causation)."  *Camilo*, 2012 WL 12995632, at *14 (citing *Dura*).  Where Plaintiffs' alleged loss has no causal connection to the alleged misrepresentation, dismissal on a Rule 12 motion is appropriate.  *See Coyne* v. *Metabolix, Inc.*, 943 F. Supp. 2d 259, 273 (D. Mass. 2013); *Lucia* v. *Prospect St. High Income Portfolio, Inc.*, 769 F. Supp. 410, 414 (D. Mass. 1991), *aff'd*, 36 F.3d 170 (1st Cir. 1994).

14

As a threshold matter, the Complaint does not plausibly allege any economic loss resulting from the alleged fraud.  It does not allege any operational costs of Current State or Tri-Alchemy that A&A Shareholding allegedly failed to pay under the IMA or that Plaintiffs are out of pocket for those costs.  But even if it had, those putative damages are unrelated to the Credit Agreement and the Class A Units, and the Complaint does not allege any decline in their value resulting from the alleged fraud.  Accordingly, Plaintiffs cannot establish that "the alleged misrepresentations proximately caused [any] decline in the security's value."  *In re Royal Dutch/Shell Transp. Sec. Litig.*, 404 F. Supp. 2d 605, 613 (D.N.J. 2005) (citing *Semerenko* v. *Cendant Corp*., 223 F.3d 165, 185 (3d Cir. 2000)).  "Where the value of the security does not actually decline as a result of an alleged misrepresentation, it cannot be said that there is in fact an economic loss attributable to that misrepresentation."  *Id.*

*Camilo* v. *Nieves* is instructive.  No. CV 10-2150 (DRD), 2012 WL 12995632 (D.P.R. Mar. 31, 2012).  In that case, while the plaintiffs alleged they would not have purchased the company's stock but for the misrepresentation, they did not allege "an actual economic loss," such as "that their investment . . . ha[d] declined in value in any manner," proximately caused by the misrepresentation.  *Id.* at *14.  So too here:  Plaintiffs allege that they would not have entered into the Credit Agreement or the Lion Loan Agreements if they had known the Company's alleged inability to fund the operations of the two business lines, but they do not allege any resulting impact on the value of the Credit Agreement or the Class A Units, the only purported securities in issue.

For all these reasons, the Complaint fails to state a claim against any Defendant for violation of section 10(b) of the Exchange Act or Rule 10b–5, and Count I should be dismissed.

## II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR CONTROL PERSON LIABILITY.

Count II of the Complaint alleges that Lea and Trabucco are liable under section 20(a) of the Exchange Act as control persons for "wrongful acts" of the Company.  (Am. Compl. ¶ 69.)  This claim fails because, as shown above, the Complaint does not plausibly allege that any entity allegedly controlled by Lea or Trabucco committed securities fraud.  Without a primary violation of the securities laws, there can be no secondary liability.

To establish liability under section 20(a), Plaintiffs must show:  (1) an underlying violation of the same chapter of the securities laws by a controlled person; and (2) control of the primary violator by the defendant.  *Fraioli* v. *Lemcke*, 328 F. Supp. 2d 250, 271 (D.R.I. 2004).  As an initial matter, for the reasons described above, Plaintiffs have not stated a claim for securities fraud.  Because "[t]he plain terms of section 20(a) indicate that it only creates liability derivative of an underlying securities violation," and the Complaint alleges none, Plaintiffs' section 20(a) claims fail.  *ACA Fin. Guar. Corp.* v. *Advest, Inc.*, 512 F.3d 46, 67 (1st Cir. 2008).

Even if Plaintiffs had alleged a primary violation, their claims against Trabucco and Lea would fail because the Complaint does not plausibly allege that either was a "controlling person" of the Company and A&A Shareholding at the relevant time.  At the time of the alleged fraud, Rafaelian (not Trabucco) was the CEO of the Company and she (not Lion or Lea) was the majority and controlling shareholder of A&A Shareholding.  (Am. Compl. ¶ 20).

## III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR COMMON-LAW FRAUD.

Like the securities fraud claims, the common-law fraud claim alleged in Count III rests on the provision in the IMA related to the funding of two new business lines:  it alleges that Defendants falsely or recklessly "represented to Ms. Rafaelian that the Company could provide New Product Funding and failed to disclose the Company lacked the financial resources to provide

any such funding."  (Am. Compl. ¶ 73.)  This claim fails for many of the same reasons as the securities fraud claims.

The parties agreed that "all claims or causes of action (whether in contract or in tort)" based upon or arising out of the IMA, such as this fraud claim, are governed by Delaware law.  (*See* Ex. 4 § 5(d).)  The parties' choice of law is enforceable.  *See  Terrace Grp.* v. *Vt. Castings, Inc.*, 753 A.2d 350, 353 (R.I. 2000).  As shown below, however, the elements of a fraud claim are substantially the same under Delaware and Rhode Island law, and the claim fails under either state's substantive law, so nothing turns on the choice of law.

Under Delaware law, the elements of a fraud claim are:  (1) "a false representation"; (2) "the defendant's knowledge of or belief in its falsity or the defendant's reckless indifference to its truth";  (3) "the defendant's intention to induce action based on the representation"; (4) "reasonable reliance by the plaintiff on the representation"; and (5) "causally related damages."  *Prairie Capital III, L.P.* v. *Double E Holding Corp.*, 132 A.3d 35, 49 (Del. Ch. 2015) (citing *Stephenson* v. *Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983)).[5]  Plaintiffs' fraud claim falls short of these requirements.

### A.    Plaintiffs' Fraud Claim Fails Because It Alleges a Mere Breach of Promise.

Plaintiffs base their fraud claim on the alleged representation that the Company could fund the new business lines.  (Am. Compl. ¶ 73; Ex. 4 § 3(b).)  But merely alleging that a defendant lied about its ability or intention to perform its contractual obligations does not state a claim for fraud.  Under Delaware law, a plaintiff cannot "bootstrap a breach of contract claim into

---

[5]    Similarly, "[t]o establish fraud in Rhode Island, a plaintiff must show:  (1) a false or misleading statement of material fact that was (2) known by the defendant to be false and (3) made to deceive, (4) upon which the plaintiff relied to his detriment."  *Guilbeault* v. *R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000).

a tort claim merely by intoning the *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract." *Cornell Glasgow, LLC* v. *La Grange Props., LLC*, No. CIV.A. N11C-05013JRS, 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012) (internal quotation marks omitted).  "To be viable, the tort claim must involve violation of a duty which arises by operation of law and not by the mere agreement of the parties."  *Id.* (internal quotation marks omitted).  Plaintiffs' allegation that Defendants "did not intend to uphold [their] contractual obligation" is insufficient to state a claim for fraud.  *Hiller & Arban, LLC* v. *Reserves Mgmt., LLC*, No. CV N15C-02-161 WCC, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016).[6]

"[S]tatements which are merely promissory in nature" will only support a claim "when such statements are made with the present intention not to perform."  *Outdoor Techs., Inc.* v. *Allfirst Fin., Inc.*, No. CIV.A.99C-09-151-JRS, 2001 WL 541472, at *4 (Del. Super. Ct. Apr. 12, 2001).  *See also Cote* v. *Aiello*, 148 A.3d 537, 549 (R.I. 2016) (present expression of intent to perform a future act is actionable as fraud only if "made without any intention of performing [it] at the time of making [it]").  A fraud claim based on the promise of a future act may proceed "only where the Complaint alleges ***particularized*** facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it."  *MicroStrategy Inc.* v. *Acacia Research Corp.*, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010) (emphasis added).  As discussed in Parts I.C above and III.B below, the Complaint alleges no particularized facts permitting such an inference here.

---

[6]   Under Rhode Island law, the rule is the same:  a plaintiff may not "veil[] its breach of contract allegations as more nefarious but unsubstantiated fraud."  *Atrion Networking Corp.* v. *Marble Play, LLC*, 18 F. Supp. 3d 136, 142 (D.R.I. 2014).

**B.     Plaintiffs Fail to Allege That Defendants Had Knowledge of Falsity and Intent to Deceive.**

Plaintiffs fail to "plead with specificity [Defendants'] state of mind when [they] allegedly made [their] assurances." *MicroStrategy Inc.*, 2010 WL 5550455, at *16; *see also State v. Letts*, 986 A.2d 1006, 1012 (R.I. 2010) ("In order to establish that a false statement was made knowingly, with the intent to defraud, a plaintiff must produce sufficient evidence for a reasonable inference of such intent to be drawn."). Plaintiffs' general allegations that the Defendants "knew [their] assurances . . . were false" when made are insufficient to support a fraud claim. *MicroStrategy Inc.*, 2010 WL 5550455, at *16; *see also Atrion Networking Corp.*, 18 F. Supp. 3d at 142 ("[I]t is insufficient to merely attempt to convert a claim for breach of contract to one for fraud by founding it upon nothing more than information and belief that the defendant never intended to perform."). The Complaint pleads no facts sufficient to support the inference that Defendants acted knowingly with the deliberate purpose of deceiving Rafaelian about the financial condition of the Company or its ability to fulfill its funding obligations under the IMA. Nor does the Complaint sufficiently allege that when A&A Shareholding promised in the IMA to fund the operations of the two new business lines, it never ***intended*** to fulfill that promise—let alone that the other Defendants had any such intent.

**C.     Plaintiffs Fail to Allege Reasonable Reliance.**

Plaintiffs' fraud claim also founders because they do not allege reasonable reliance. "[A] party dealing on equal terms with another is not justified in relying on representations where the means of knowledge are readily within his or her reach." *Universal Enter. Grp., L.P.* v. *Duncan Petrol. Corp.*, No. CV 4948-VCL, 2013 WL 3353743, at *14 (Del. Ch. July 1, 2013). Plaintiffs are thus "chargeable with the knowledge of what may be reasonably found if they make an investigation." *Ward* v. *Hildebrand*, No. CIV. A. 13582, 1996 WL 422336, at *4

19

(Del. Ch. July 8, 1996).   As discussed in Part I.D *supra*, Rafaelian, as CEO and majority shareholder of A&A Shareholding, had a duty of care to understand the financial condition of the distressed Company.  She was obligated to make her own assessment of the Company's financial position, and she does not allege that anything prevented her from doing so.  She therefore could not justifiably have relied on anything Defendants allegedly told her or failed to tell her about the Company's financial resources.

For all these reasons, the Complaint fails to state a claim for fraud.

## IV.   EVEN IF THE COMPLAINT STATED A SECURITIES OR COMMON-LAW FRAUD CLAIM, PLAINTIFFS RELEASED THOSE CLAIMS IN THE IMA.

Even if the Complaint stated a claim for securities fraud or common-law fraud— and it does not—these claims should be dismissed because Plaintiffs contractually released their right to bring them.  Under Delaware law, which governs the IMA (Ex. 4 § 5(d)), "general releases are common and their validity is unchallenged."  *Riverbend Cmty., LLC* v. *Green Stone Eng'g, LLC*, 55 A.3d 330, 336 (Del. 2012).

In the IMA, Rafaelian and Pledge Co. granted a broad, general release in favor of Lion, its current and former affiliates and subsidiaries (including the Company and A&A Shareholding), and, among others, each of their current and former officers, managers, directors, equity holders, principals, members, employees, and agents, including the Lender, Lea, and Trabucco, from any and all claims arising on or before September 13, 2019, the closing date of the restructuring:

> . . . that such releasing party now has or may have in the future ***against any or all of the released parties based in whole or in part on facts existing or arising, whether known or unknown, on or before the Closing***, that relate to, arise out of or otherwise are in connection with: (i) ***any act or omission, agreement, circumstance, event or other occurrence related to the Company or Alex and Ani***, the management thereof, including by the board of managers of the

Company (the "Board"), and/or the LLC Agreement or the Operating Agreement of Alex and Ani and (ii) *any aspect of the dealings or relationships between or among any or all of the released parties relating the foregoing and/or anything relating to or arising out of their business relationship*; provided, however, that the foregoing shall not release the Parties from their respective obligations under the Transaction Agreements.[7]

(Ex. 4 § 1(a) (emphases added).)

Plaintiffs' securities and common-law fraud claims are based on the alleged "representation" that A&A Shareholding could afford to fund the operations of Current State and Tri-Alchemy, as agreed in section 3(b) of the IMA. (Am. Compl. ¶¶ 61, 73.) That representation necessarily had to have occurred *before* the September 13, 2019 closing, and must have related to "facts existing or arising, whether known or unknown," before that date, because otherwise Plaintiffs could not contend that they entered into the Lion Loan Agreements or the Credit Agreement in reliance on that representation. And that alleged representation plainly related to "the Company or Alex and Ani." (Ex. 4 § 1(a).) Because Plaintiffs' fraud claims arise out of alleged facts pre-dating the restructuring date and are within the scope of the release, Plaintiffs released them in the IMA and cannot assert them here.

## V. THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

Count IV of the Complaint alleges that "[t]he Company has materially and substantially breached the IMA Agreement by failing and refusing to provide the New Product Funding as required under the agreement," causing Rafaelian to suffer $1 million in damages. (Am. Compl. ¶¶ 79–80.) That allegation rests on a fundamentally incorrect reading of the IMA.

---

[7] The "Transaction Agreements" is defined as the various agreements entered into in connection with the restructuring, including the Credit Agreement, the Lion Loan Agreements, and the IMA. (Ex. 4 at 1.)

Under Delaware law, "to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC* v. *Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  Plaintiffs cannot satisfy these requirements because they have not plausibly alleged either a breach of the IMA or resulting damages.

Section 3(b) of the IMA provides:

> Current State and Tri-Alchemy. For *a period of two (2) years* following the Closing, [A&A Shareholding] shall *fund the operations* of the Current State and Tri-Alchemy lines of business of Alex and Ani *up to a total amount of $1 million per year*, such amount to include all research and development costs and operating losses of such lines of business; provided, that the Company's obligations pursuant to this Section 3(b) shall terminate and be of no further force and effect upon the termination of employment of the Founder with the Company for any reason, whether the Founder is removed or resigns voluntarily.

(Ex. 4 § 3(b) (emphases added).)  The Complaint alleges that, "within days" of the September 13, 2019 restructuring and execution of the IMA, Rafaelian met with Trabucco, who advised her that "the Company could not afford to provide her any New Product Funding."  (Am. Compl. ¶ 36.) That is the sole act alleged to constitute the breach causing Rafaelian $1 million in damages.  Under Plaintiffs' theory, the IMA obligated A&A Shareholding to write Rafaelian a million-dollar check for the new business lines on demand, "within days" of a comprehensive restructuring, without regard for the actual operational expenses (if any) of those businesses.

But the IMA unambiguously provides something quite different.  Section 3(b) is clear that A&A Shareholding had no obligation to advance $1 million to Rafaelian (for new business purposes or otherwise) immediately upon execution of the IMA, and thus could not have breached its obligations under that provision by not writing her a $1 million check when she

demanded it.  Instead, section 3(b) ties the ***maximum*** funding obligation of $1 million per year to the cost of funding ***the operations*** of the Current State and Tri-Alchemy business lines.  (Ex. 4 § 3(b).)  It makes specific reference to "all research and development costs and operating losses" as examples of the included operating costs.  (*Id.*)  Under Delaware law, the Court must give effect to this express limitation of the funding obligation:  "When a court is interpreting a contract, it must give effect to all terms of the instrument."  *Ark Grp., Inc.* v. *Shield Restraint Sys., Inc.*, No. 1:18-cv-00755-RGA, 2018 WL 4926449, at *2 (D. Del. Oct. 10, 2018) (quoting *Eagle Indus., Inc.* v. *DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

Crediting Rafaelian's interpretation of section 3(b) would violate the principle that "[c]lear and unambiguous language found in a contract is to be given its ordinary and usual meaning."  *Anderson* v. *Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (citation omitted).  It would also run afoul of "the principle that [the court] should avoid interpreting contractual language in such a way as to render any term of the contract meaningless or superfluous."  *In re Combustion Eng'g, Inc.*, 366 F. Supp. 2d 224, 231 (D. Del. 2005).  Trabucco's alleged "advice" to Rafaelian "within days" of the restructuring does not establish that A&A Shareholding failed to fund the actual operations of Current State or Tri-Alchemy at any time between September 13, 2019 and Rafaelian's termination on May 8, 2020, when the funding obligation ended.  The Complaint does not allege what the operating expenses of the two businesses actually were in that eight-month period; it does not allege that Plaintiffs ever sought reimbursement of those expenses; and it does not allege that A&A Shareholding failed or refused to fund those actual operating expenses.

The absurdity of Rafaelian's theory can be illustrated through the following hypothetical.  Section 3(b) provides that A&A Shareholding's funding obligations "shall terminate

23

and be of no further force and effect upon the termination of employment of the Founder with the Company for any reason." (Ex. 4 § 3(b).) Suppose that Rafaelian had resigned two days after the parties executed the IMA. If Rafaelian's reading of the IMA were correct, she would be entitled to $1 million even if the new product lines incurred *no operating costs at all* in that two-day period. Such a reading would impermissibly nullify section 3(b)'s clear language requiring A&A Shareholding to fund only "*the operations* . . . *up to a total amount* of $1 million per year." (*Id.* (emphasis added).)

Just as Plaintiffs have not alleged a breach of the IMA, they have not alleged any damages. Rafaelian alleges that she "has been damaged in an amount of $1 million" (Am. Compl. ¶ 80), but that could be true only if the new businesses incurred operational costs in that amount, and no such costs are alleged. The Complaint alleges, to the contrary, that the businesses "remain . . . non-operational." (*Id.* ¶ 47.)

For all these reasons, the breach of contract claim should be dismissed.

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR CONVERSION.

Rafaelian also fails to plead a plausible conversion claim. "[T]he gravamen of an action for conversion lies in the defendant's taking the plaintiff's personalty without consent and exercising dominion over it inconsistent with the plaintiff's right to possession." *Fuscellaro* v. *Indus. Nat'l Corp.,* 368 A.2d 1227, 1230 (R.I. 1977) (citation omitted). "To maintain an action for conversion, [a] plaintiff must establish that she was in possession of the personalty, or entitled to possession of the personalty, at the time of conversion." *Montecalvo* v. *Mandarelli*, 682 A.2d 918, 928 (R.I. 1996). "A plaintiff must also identify the allegedly converted property *with reasonable certainty*, in order to render it capable of identification, for the purpose of determining whether the property in fact belonged to the plaintiff at the time of its conversion." *DeChristofaro* v. *Machala*, 685 A.2d 258, 263 (R.I. 1996) (citation omitted, emphasis added).

24

Rafaelian's conversion allegations are woefully insufficient.  She alleges only that "the Company has refused to return to Ms. Rafaelian certain personal property located at the Company's offices in East Greenwich, Rhode Island, including, without limitation, furniture of significant value."  (Am. Compl. ¶ 49.)  But Rafaelian's vague references to "certain personal property" and "furniture" do not "identify the allegedly converted property with reasonable certainty, in order to render it capable of identification."  *DeChristofaro*, 685 A.2d at 263. Rafaelian's attempt to leave the door open for an even broader conversion claim by alleging that the Company has refused to return, "***without limitation***, furniture," only highlights the insufficiency of her pleading.  (*See* Am. Compl. ¶ 49 (emphasis added).)

Further compounding these deficiencies, Rafaelian does not plead any facts showing that she "was in possession of the personalty"—whether "furniture" or otherwise—"or entitled to possession of the personalty at the time of conversion."  *Montecalvo*, 682 A.2d at 928. Rafaelian simply asserts, without any supporting facts, that it is her "personal property."  (Am. Compl. ¶ 49.)  Such a "[t]hreadbare recital[] of the elements of a cause of action," "supported by mere conclusory statements, do[es] not suffice" to state a claim.  *Iqbal*, 556 U.S. at 678.

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM FOR REPLEVIN.

Rafaelian's replevin claim (Count VI) fails for much the same reasons as her conversion claim.  "Replevin is available in federal court under Rule 64 of the Federal Rules of Civil Procedure under the law of the state where the court is located."  *Universal Truck & Equip. Co., Inc.* v. *Caterpillar, Inc.*, No. 10-466 S, 2012 WL 5398929, at *6 (D.R.I. Nov. 5, 2012) (citing Fed. R. Civ. P. 64(a)).  It "is an action for the repossession of personal property wrongfully taken or detained by the defendant."  *Chopmist Hill Fire Dep't* v. *Town of Scituate*, 780 F. Supp. 2d 179, 192 n.4 (D.R.I. 2011) (quoting *Gem Plumbing & Heating Co., Inc.* v. *Rossi*, 867 A.2d 796, 806 n.13 (R.I. 2005)).  "Replevin," however, "is merely a provisional remedy that applies prior to a

trial on the merits," *Goldberg* v. *Lancellotti*, 503 A.2d 1129, 1130 (R.I. 1986), "when the plaintiff seeks pretrial seizure of personal property pending a trial to determine ownership," *Moseman Constr. Co.* v. *State Dep't of Transp.*, 608 A.2d 34, 36 (R.I. 1992).

As with her conversion claim, Rafaelian has not identified with any specificity the property she seeks to replevy (*see* Am. Compl. ¶ 86), nor does she plead any facts showing that the Company wrongfully dispossessed her of that property or how it is wrongfully detained. Simply declaring that "the Company has refused to return to Ms. Rafaelian certain personal property" (*id.* ¶ 49) does not plead ***facts*** sufficient to state a claim for replevin.

## VIII.   THE DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF CLAIMS ARE NOT PROPERLY BEFORE THIS COURT.

Count VII seeks "declarations regarding [the parties'] obligations under the Lion Loan Agreements," including that:  (1) Rafaelian was not obligated to make monthly interest payments under the Note; (2) Rafaelian is not in default of the Note for failing to make interest payments under the Note prior to the Maturity Date; and (3) the Lion Loan Agreements are void and unenforceable.  (Am. Compl. ¶ 91.)  Count VIII seeks an injunction "barring Defendants from taking any action from foreclosing, collecting or levying on any assets or collateral under the Lion Loan Agreements."  (Am. Compl. ¶ 93.)  These claims should be dismissed for a host of reasons.

*First*, the declarations and injunctive relief Rafaelian seeks relate to the parties' obligations under the Note.  No such claim is properly before this Court, because the Note and the Pledge provide for mandatory, exclusive jurisdiction in the New York courts.  (Ex. 3 § 17(a); Ex. B § 24.)  For that reason alone, these claims should be dismissed.  *See Claudio-De Leon* v. *Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 49 (1st Cir. 2014) (affirming dismissal based on forum selection clause).

*Second*, even if the Court had jurisdiction of these claims, the Court should decline to entertain them because there is a prior pending action in state court—the New York Action—addressing Plaintiffs' obligations under the Note.  *See generally Wilton* v. *Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart* v. *Excess Ins. Co.*, 316 U.S. 491 (1942).  If Plaintiffs think they have some defense to repayment of the $5 million they borrowed, the place to assert it is in the New York Action.

*Finally*, declaratory judgments and injunctive relief are remedies, not causes of action, and Plaintiffs allege no cause of action entitling them to declaratory or injunctive relief arising from the Note or the other Lion Loan Agreements.  To the contrary, it is undisputed that Lion funded the Loan; Rafaelian did not make the monthly interest payments required under the Note; the Maturity Date has passed; and neither she nor the Guarantors have repaid a penny of the principal or interest owed.

The Court should dismiss the declaratory judgment and injunctive relief claims and allow the Lender to exercise its remedies—and Plaintiffs to assert any defenses they believe they have—in the New York Action, where all parties agreed those claims would be adjudicated.

## IX.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE LION DEFENDANTS.

Plaintiffs' claims should be dismissed as to Lea, a London resident (Am. Compl. ¶ 6); the Lender, a Delaware corporation with a principal place of business in London (Am. Compl. ¶ 4); and Lion, a Delaware limited liability company with a principal place of business in London (Am. Compl. ¶ 5) (collectively, the "Lion Defendants") for the additional reason that they are not subject to personal jurisdiction in this Court.

Plaintiffs make no claim that the Lion Defendants are subject to general jurisdiction in Rhode Island, but allege that the Court "has personal jurisdiction over the Defendants because

a substantial part of the events giving rise to this action occurred within this state and the subject agreements were executed in Rhode Island." (Am. Compl. ¶ 10.) Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, permits the exercise of long-arm jurisdiction to the full extent permitted by the U.S. Constitution, s*ee GRE Prop. Investments, LLC* v. *Isanthes, LLC*, No. 20-054-JJM-PAS, 2020 WL 2616176, at *3 (D.R.I. May 22, 2020), but it is Plaintiffs' burden to show that the Lion Defendants have sufficient minimum contacts with Rhode Island that "the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution," *Massachusetts Sch. of Law at Andover, Inc.* v. *Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998).

The First Circuit uses a three-part test to determine whether the assertion of jurisdiction is within constitutional bounds: (1) "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities"; (2) "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state"; and (3) the exercise of personal jurisdiction must be "reasonable." *Pritzker* v. *Yari*, 42 F.3d 53, 60–61 (1st Cir. 1994).

Plaintiffs cannot carry their burden on any of the three prongs. *First*, Plaintiffs' conclusory allegation that a "substantial part of the events giving rise to this action occurred within this state" (Am. Compl. ¶ 10) falls short of showing that the Lion Defendants' in-state conduct "form[s] an important, or [at least] material, element of proof in the plaintiff[s]'s case." *Negron-Torres* v. *Verizon Commc'ns, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007) (quotations omitted). Plaintiffs have not identified a single act of the Lion Defendants in Rhode Island that "form[s] an important, or [at least] material, element of proof" in their case.

*Second*, the Lion Defendants did nothing to purposefully avail themselves of the privilege of conducting activities in Rhode Island. They are investors in a Delaware limited

liability holding company, A&A Shareholding.  Their agreements with Plaintiffs in connection with the restructuring are governed by New York law (the Credit Agreement, the Note, the Guaranty, and the Pledge) (Ex. 2 § 11.14(a); Ex. 3 § 17(a); Ex. B to Ex. 3 § 24; Ex. C to Ex. 3 § 8), or Delaware law (the IMA) (Ex. 4 § 5(d)), or confer a mortgage on California real property (the Mortgage) (Ex. A to Ex. 3).  Many of those agreements provide for exclusive jurisdiction of disputes in New York (the Credit Agreement, the Note, the Pledge).  None provides for choice of law or jurisdiction in Rhode Island.

*Finally*, Plaintiffs cannot show that exercise of personal jurisdiction would be reasonable.  In assessing this prong, courts consider:  "(1) the defendant's burden of appearing [in the forum], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  *Knox* v. *MetalForming, Inc.*, 914 F.3d 685, 694 (1st Cir. 2019) (quoting *Ticketmaster-N.Y., Inc.* v. *Alioto*, 26 F.3d 201, 209 (1st Cir. 1994)).

Rhode Island has no compelling interest in adjudicating this dispute.  Rafaelian alleges that she is a Florida resident, and the other Plaintiffs are simply investment vehicles through which she holds stock and real estate.  None of the Defendants is present in Rhode Island except A&A Shareholding.  The relevant agreements are governed by the law of other states.

Rhode Island's minimal interest in adjudicating this dispute must be weighed against "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system."  *Asahi Metal Ind.* v. *Superior Court*, 480 U.S. 102, 114 (1987).  Lea lives in the United Kingdom. (Am. Compl. ¶ 6.)  Lion and the Lender are organized under the laws of Delaware and have their principal of business in London.  While the Lion Defendants have submitted to the exclusive

29

jurisdiction of New York in relation to claims arising under or related to the Credit Agreement, the Note, and the Pledge, they have made no such submission to Rhode Island courts.  If Plaintiffs were genuinely interested in obtaining "convenient and effective relief," they would bring suit in New York, where all parties have irrevocably consented to jurisdiction.  Exercise of personal jurisdiction over the Lion Defendants in this Court, however, would not be reasonable.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice for failure to state a claim upon which relief can be granted.  In the alternative, the claims against the Lion Defendants should be dismissed for lack of personal jurisdiction.

Dated:  August 14, 2020                Respectfully submitted,


  _/s/ Matthew T. Oliverio_____
Matthew T. Oliverio (#3372)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
Tel.:  (401) 861-2900
Fax:  (401) 861-2922 Fax
mto@om-rilaw.com

Elizabeth M. Sacksteder (*Admitted pro hac vice*)
Michelle K. Parikh (*Admitted pro hac vice*)
Alyson A. Cohen (*Admitted pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel.:  (212) 373-3000
Fax:  (212) 492-0020

*Counsel for Defendants LC A&A Holdings, Inc.,*
*LC A&A Intermediate Investors, LLC, and Lyndon Lea*


David I. Horowitz (*Admitted pro hac vice*)
KIRKLAND & ELLIS, LLP
555 South Flower Street, 37th Floor
Los Angeles, CA 90071
Tel.:  (213) 680-8374
Fax:  (213) 808-8074

Andre S. Digou (#8711)
CHACE, RUTTENBERG & FREEDMAN, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.:  (401) 453-6400
Fax:  (401) 453-6411
adigou@crfllp.com

*Counsel for Defendants A & A Shareholding Co., LLC*
*and Robert Trabucco*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on August 14, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                        */s/ Matthew T. Oliverio*