# Exhibit 3

**EXECUTION VERSION**

**SECURED PROMISSORY NOTE**

September 13, 2019

USD$5,000,000

FOR VALUE RECEIVED, Carolyn Rafaelian (the "Borrower"), promises to pay to the order of LC A&A Holdings, Inc. (the "Lender") on the dates set forth in Section 2 below, in lawful money of the United States of America in same day funds, USD$5,000,000 (five million dollars) (the "Loan"; and this note, as amended from time to time, this "Note"). The Borrower shall pay interest on the unpaid principal amount of the Loan and any overdue amounts thereon until paid in full on the dates and at a rate per annum as hereinafter set forth. Interest hereunder shall be computed on the basis of a year of 365/366 days and paid for the actual number of days elapsed (including the first but excluding the last day).

1.      *Certain Definitions*.  As used herein, the following terms have the following meanings:

"Borrower" has the meaning assigned in the preamble.

"Business Day" means any day that is not a Saturday, Sunday or other day on which commercial banks are closed in New York City, New York are authorized or required by law to remain closed.

"Default" means a condition that, after written notice or lapse of time or both, would constitute an Event of Default.

"Event of Default" has the meaning assigned in Section 10.

"Governmental Authority" means any national, supranational, municipal, local or other government, governmental department, commission, board, bureau, court, agency or instrumentality or political subdivision thereof or any entity, officer or examiner exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to any government or any court, in each case whether associated with the United States (or any state thereof) or any other foreign entity or government.

"Guaranty" means that certain guaranty by the Guarantors in favor of the Lender, dated as of the date hereof and annexed hereto as Exhibit C.

"Guarantors" means Venice Beach Walk, LLC and PledgeCo.

"Lender" has the meaning assigned in the preamble.

"Loan"  has the meaning assigned in the preamble.

**EXECUTION VERSION**

"Loan Documents" means (i) this Note, (ii) the Pledge, (iii) the Guaranty and (iv) the Mortgage, together, in each case, with any schedule, exhibit or certificate delivered in connection therewith.

"Maturity Date" means the nine month anniversary hereof, or if such day is not a Business Day, the next succeeding Business Day.

"Mortgage" means that certain mortgage of the Real Property granted by the Guarantor in favor of the Lender to secure the Obligations, dated as of the date hereof and annexed hereto as Exhibit A.

"Note" has the meaning assigned in the preamble.

"Person" means any individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"Pledge" means the pledge agreement, dated as of the date hereof and annexed hereto as Exhibit B, pursuant to which PledgeCo has pledged in favor of the Lender the equity interests described therein to secure the Obligations.

"PledgeCo" means Alex and Ani Pledge Co., a Rhode Island corporation.

"Obligations" means all obligations of the Borrower hereunder (including, without limitation, in respect of principal, interest, fees and expenses) owing to the Lender.

"Real Property" means that certain real property located at 2705 Ocean Front Walk, Venice Beach, California 90291.

"Second Lien Term Loan" has the meaning assigned in Section 4.

"Term Sheet" means that certain binding term sheet entered into between the Borrower and the Lender in connection with the restructuring of A and A Shareholding Co., LLC and the other transactions contemplated thereby.

"Transactions" has the meaning assigned in Section 4.

"UCC-1 Financing Statement" has the meaning assigned in Section 7(c).

2.      *Payments*.  The Borrower hereby unconditionally promises to pay the Lender the entire outstanding principal amount of the Loan, and all accrued and unpaid interest and other unpaid amounts thereon, on the Maturity Date.

3.      *Interest Rate*.  The Loan shall bear interest at a rate per annum equal to 3.50% payable in cash on the last Business Day of each calendar month (commencing with the month ending September 30, 2019) and on the Maturity Date; *provided* that, after the occurrence of an Event of Default, the interest rate shall be increased to 15.00%

**EXECUTION VERSION**

per annum.  After the occurrence of an Event of Default, interest shall be payable in cash on demand by the Lender.

4.      *Use of Proceeds*.  The proceeds of the Loan shall be used by the Borrower immediately upon receipt solely to make a capital contribution to PledgeCo, with PledgeCo immediately using such capital contribution to fund a portion of a second lien term loan to Alex and Ani, LLC (the "Second Lien Term Loan").  The capital contribution to PledgeCo, the making of the Second Lien Term Loan by PledgeCo, the consummation of the other transactions contemplated by the Term Sheet, the execution and delivery and performance of the Loan Documents and the borrowing hereunder are collectively referred to herein as the "Transactions".

5.      *Optional Prepayments*.  The Borrower shall have the right at any time to prepay the Loan, in whole or in part, without premium or penalty.

6.      *General Provisions Regarding Payments*.  The Borrower will pay all amounts due under any Loan Document free and clear of and without deduction for any taxes, levies, imposts, deductions, withholdings or charges and without set-off or counterclaim, in United States dollars available the same day in New York, New York. Payments received that are insufficient to pay amounts then due shall be applied first to payment of fees, expenses and indemnification obligations to the Lender, second to interest then due and payable and third to principal repayment amounts then due.

7.      *Conditions Precedent*.  The obligation of the Lender to make the Loan on the date hereof is subject to the conditions precedent that the Lender shall have received the following documents, each of which shall be in form and substance satisfactory to Lender:

        (a)      Note.  This Note duly executed by the Borrower.

        (b)      Pledge.  The Pledge duly executed by PledgeCo.

        (c)      UCC-1 Financing Statements.  A UCC-1 financing statement in proper form for filing with the Rhode Island Secretary of State, naming PledgeCo as debtor, the Lender as secured party and the collateral as the equity interests subject to the Pledge (the "UCC-1 Financing Statement").

        (d)      Stock Certificates and Stock Powers.  If any of the equity interests subject to the Pledge are certificated, stock certificates with undated, executed stock powers in respect of such equity interests.

        (e)      Consummation of the Transactions.  Confirmation from the Borrower that the Transactions have been consummated (or will be substantially contemporaneously consummated).

        (f)      Mortgage.  The Mortgage duly executed by the Guarantor in recordable form.

(h)     <u>Guaranty</u>.  The Guaranty duly executed by the Guarantors.

(i)     <u>Other Documents</u>.  Such other certificates, documents, opinions and instruments relating to the Transactions as the Lender may request in its sole discretion.

8.     *Representations and Warranties*.  In order to induce the Lender to make the Loan, the Borrower represents and warrants to the Lender:

(a)     The Borrower is a natural person who is a citizen and resident of Florida with an address of 110 Hammon Avenue, Palm Beach, FL 33480.  The Borrower has delivered to the Lender an actual copy of the Borrower's driver's license issued by the State of Florida.

(b)     The Borrower has all necessary authority and power to execute this Note.  The Guarantors have all necessary authority and power to execute the Guaranty, Pledge and Mortgage, to the extent party thereto.

(c)     The execution, delivery and performance by the Borrower or Guarantors, as applicable, of the Loan Documents that the Borrower or Guarantors are parties to and the consummation of the Transactions do not and will not (i) violate (x) any material law or governmental rule or regulation applicable to the Borrower or Guarantors or (y) any order, judgment or decree of any court or other Governmental Authority binding on the Borrower or Guarantors, (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligation of the Borrower or Guarantors, (iii) result in the creation or imposition of any lien (other than any lien created by the Pledge or the Mortgage) upon any of the properties or assets of the Borrower or Guarantors, or (iv) require the approval or consent of any Person under any contractual obligation of the Borrower or Guarantors, or any registration with, consent or approval of, or notice to, or other action to, with or by, any Governmental Authority, except for such approvals or consents which have been obtained on or before the date hereof.

(d)     The equity interests subject to the Pledge have been duly authorized and validly issued and are fully paid and nonassessable.

(e)     The Loan Documents have been duly executed and delivered by the Borrower and Guarantors, as applicable, and constitute the legal, valid and binding obligations of the Borrower and Guarantors, as applicable, enforceable in accordance with such Loan Documents' terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and other laws affecting creditors' rights generally and subject to general principles of equity, regardless of whether considered in a proceeding in equity or at law.

(f)     No information, report, financial statement, exhibit, schedule or disclosure furnished in writing by or on behalf of the Borrower or Guarantors to the Lender in connection with the negotiation, preparation or delivery of this Note and the other Loan Documents or the Transactions or included therein or delivered pursuant

thereto contains any untrue statement of material fact or omits to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading; provided that, with respect to any projected financial information, the Borrower represents only that such information was prepared in good faith based upon assumptions believed to be reasonable at the time made.

(g)     Each of the Mortgage and the Pledge (but, subject in the case of the Pledge, to the filing of the UCC-1 Financing Statement) shall create in favor of the Lender a legal, valid, enforceable and perfected security interest in all right, title and interest of the Borrower or Guarantors, as applicable, in the Real Property and equity interests subject to the Pledge, subject to no other lien.

9.     *Affirmative Covenants*.  So long as any amount is outstanding under this Note, the Borrower shall, or shall cause the Guarantors to:

(a)     Keep and maintain the Real Property in good condition, repair and working order (normal wear and tear excepted).

(b)     Obtain and at all times maintain property and liability insurance covering the Real Property with a reputable insurer, in such amounts and against such risks as are usually carried by Persons owning like Real Property.

(c)     At any time or from time to time upon the request of the Lender, execute, acknowledge and deliver such further documents and do such other acts and things as the Lender may reasonably request in order to fully effectuate the purposes of this Note and the other Loan Documents.

(d)     Not permit any lien to exist on the Real Property or the equity interests subject to the Pledge (in each case, other than the liens created by the Loan Documents).

10.     *Events of Default*.  If any of the following events ("Events of Default") shall occur and be continuing:

(a)     the Borrower shall fail to make payment when due, whether at stated maturity, by acceleration or otherwise, of any principal on the Loan, or the Borrower shall fail to make payment of any interest or any other amount due hereunder on the Loan within five (5) Business Days after the same becomes due;

(b)     the Borrower shall fail to observe or perform any covenant contained in this Note and such failure shall not have been cured within ten (10) Business Days;

(c)     any representation, warranty, certification or other statement made by the Borrower herein or in any other Loan Document shall be false in any material respect as of the date made;

**EXECUTION VERSION**

(d)     the occurrence of an Event of Default under any other Loan Document;

(e)     the Borrower or any Guarantor shall default in the payment when due (after giving effect to applicable grace periods) of any principal of or interest on any indebtedness in excess of USD$500,000; or any event specified in any note, agreement, indenture or other document evidencing or relating to any indebtedness shall occur if the effect of such event is to cause, or (after giving effect to any applicable grace periods) to permit the holder or holders of such indebtedness (or a trustee or agent on behalf of such holder or holders) to cause, such indebtedness to become due, or to be prepaid in full (whether by redemption, purchase, offer to purchase or otherwise), prior to its stated maturity;

(f)     any money judgment, writ or warrant of attachment or similar process in any jurisdiction involving in the aggregate at any time an amount in excess of USD$500,000 shall be entered or filed against the Borrower or any Guarantor and shall remain undischarged, unvacated, unbonded, unappealed or unstayed for a period of 60 days;

(g)     the Borrower or any Guarantor shall become the subject of any bankruptcy or insolvency proceeding;

(h)     at any time after the execution and delivery thereof, (i) any Loan Document ceases to be in full force and effect or shall be declared null and void, or the Lender shall not have a valid and perfected security interest in (x) the Real Property with the priority required by the Mortgage (pursuant to the terms of this Note) or (y) a first priority pledge of 100% of the equity interests subject to the Pledge, in each case for any reason other than the failure of the Lender to take any action within its control or (ii) the Borrower or any Guarantor shall contest the validity or enforceability of any Loan Document in writing or deny in writing that it has any further liability under any Loan Document or shall contest the validity or perfection of any security interest in the Real Property or equity interests subject to the Pledge;

THEN, in the case of any Event of Default specified above, the Lender may, by written notice to the Borrower, declare the Obligations to be forthwith due and payable, whereupon the same shall become forthwith due and payable, without demand, protest, presentment, notice of dishonor or any other notice or demand whatsoever, all of which are hereby waived by the Borrower; <u>provided</u> that in the case of the Events of Default specified in clause (g) above, without any notice to the Borrower or any other act of the Lender, the Obligations shall become forthwith due and payable, without demand, protest, presentment, notice of dishonor or any other notice or demand whatsoever, all of which are hereby waived by the Borrower.

11.     *Notices*.  Any notice to be given under this Note or any other Loan Document shall be in writing and shall be deemed to have been duly given when received by the recipient.

**EXECUTION VERSION**

12. *No Waiver*.  No delay on the part of the Lender in exercising any of its powers or rights, and no partial or single exercise, shall constitute a waiver thereof.

13. *Amendments and Waivers*.  Any provision of this Note may be amended or waived, but only if such amendment or waiver is in writing and signed by the Lender and the Borrower.

14. *Successors and Assigns*.  This Note shall be binding upon the Borrower and its successors and assigns, for the benefit of the Lender and its successors and assigns, except that the Borrower may not assign or otherwise transfer its rights or obligations under this Note without the prior written consent of the Lender.  The Lender may at any time assign to one or more Persons all or any portion of its rights under this Note.

15. *Expenses, Indemnification, Exculpation, Prevailing Party*.  The Borrower agrees to pay or reimburse the Lender for (a) all reasonable out-of-pocket costs and expenses of the Lender (including, without limitation, the reasonable fees and expenses of legal counsel) in connection with (i) any Default or Event of Default and any enforcement or collection proceedings resulting therefrom, including, without limitation, all manner of participation in or other involvement with (x) bankruptcy, insolvency, sequestration, receivership, foreclosure, winding up or other liquidation proceedings, (y) judicial or regulatory proceedings and (z) workout, restructuring or other negotiations or proceedings (whether or not the workout, restructuring or transaction contemplated thereby is consummated) and (ii) the enforcement of this Section 15 and (b) all transfer, stamp, documentary or similar taxes, assessments or charges levied by any Governmental Authority in respect of this Note or any of the other Loan Documents or any other document referred to herein or therein and all costs, expenses, taxes, assessments and other charges incurred in connection with any filing, registration, recording or perfection of any security interest contemplated by any Loan Document or any other document referred to therein.

The Borrower hereby agrees to indemnify the Lender and its affiliates and their respective directors, trustees, officers, employees, attorneys and agents from, and hold each of them harmless against, any and all losses, liabilities, claims, damages or expenses incurred by any of them (including, without limitation, any and all losses, liabilities, claims, damages or expenses incurred by the Lender, whether or not the Lender is a party thereto) arising out of or by reason of any investigation or litigation or other proceedings (including any threatened investigation or litigation or other proceedings) relating to the Loan or any actual or proposed use by the Borrower of the proceeds of the Loan, including, without limitation, the reasonable fees and disbursements of counsel incurred in connection with any such investigation or litigation or other proceedings (but excluding any losses, liabilities, claims, damages or expenses incurred by reason of the gross negligence or willful misconduct of the Person to be indemnified).

Additionally, and notwithstanding anything herein to the contrary or otherwise, the provisions of the Term Sheet relating to the exculpation of the Lender and the

**EXECUTION VERSION**

payment of the "prevailing parties'" reasonable attorney's fees and court costs shall be set forth and incorporated herein *mutatis mutandis*.

16.     *GOVERNING LAW*.  THIS NOTE AND THE OTHER LOAN DOCUMENTS (OTHER THAN THE MORTGAGE) SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES THEREOF.

17.     *Submission to Jurisdiction*.    The Borrower and, by its acceptance of this Note, the Lender, each agree as follows:

        (a)     each such party hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County and the United States District Court for the Southern District of New York, and any relevant appellate court, in any action or proceeding arising out of or relating to this Note, or for recognition or enforcement of any judgment, and each such party hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in New York State court or, to the extent permitted by law, in such Federal court; and

        (b)     each such party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of this Note in any court referred to in subsection (a) of this Section, and each such party also irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding in any such court.

18.     *WAIVER OF JURY TRIAL*.  THE BORROWER HEREBY WAIVES AND, BY ITS ACCEPTANCE OF THIS NOTE, THE LENDER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OTHER LOAN DOCUMENT.

19.     *Severability*.  If any provision of this Note or any other Loan Document is held to be invalid, illegal or unenforceable, the other provisions of this Note or the applicable Loan Document, as the case may be, shall remain in full force and effect.

20.     *Usury Savings*.  Notwithstanding anything herein to the contrary or otherwise, the Lender shall never be entitled to receive as interest on the obligation evidenced hereby any amount in excess of the maximum rate of interest permitted to be charged by applicable law.  In the event that the Lender ever receives any such excess, such amount which would be excessive interest shall be applied to the reduction of the principal sum hereof, and if the principal sum is paid in full, any remaining excess amount shall forthwith be paid to the Borrower.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

CAROLYN RAFAELIAN

_____

Address for notices:

Carolyn Rafaelian

Please use:
159 Weybosset St.
Providence, RI
02903

*[Signature Page to Promissory Note]*

**EXECUTION VERSION**

**EXHIBIT A**
**MORTGAGE**

(See attached).

**When recorded mail to:**
Paul, Weiss, Rikfind, Wharton & Garrison
1285 Avenue of the Americas
New York, New York 10019
Attention: Salvatore Gogliormella, Esq.

---

## DEED OF TRUST WITH ASSIGNMENT OF RENTS

This DEED OF TRUST is made this 13th day of September, 2019 by and among **VENICE BEACH WALK, LLC**, a California limited liability company herein called TRUSTOR whose address is c/o 159 Weybosset St, Ste 3, Providence, RI 02903, **CHICAGO TITLE COMPANY**, a California corporation, herein called TRUSTEE, whose address is 560 E. Hospitality Lane, San Bernardino, CA 92408, Attn: Teresa Drake, and **LC A&A INTERMEDIATE INVESTORS LLC** herein called BENEFICIARY.

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale that property in the County of Los Angeles, State of California, described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 2 IN BLOCK 21 OF SHORT LINE BEACH VENICE CANAL IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 4, PAGE(S) 42 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

A.P.N.: 4226-020-002

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

FOR THE PURPOSE OF SECURING (1) payment of the sum of Five Million Dollars ($5,000,000) with interest thereon according to the terms of that certain Secured Promissory Note, of even date herewith (the "Note"), made by TRUSTOR payable to order of BENEFICIARY, and any extensions or renewals thereof; (2) the performance of TRUSTOR under that certain Note and Pledge Agreement, of even date herewith, made by and between TRUSTOR and BENEFICIARY, and any other agreement of TRUSTOR incorporated by reference or contained herein or reciting it is so secured; (3) payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his or her successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

    A.      To protect the security of this Deed of Trust, and with respect to the property above described, Trustor agrees:

(1)    To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of the law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2)    To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

(4)    To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust. Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge, or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

(5)    To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B.      It is mutually agreed:
   (1)     That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him or her in the same manner and with the same effect as above provided for disposition or proceeds of fire or other insurance.

   (2)     That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his or her right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

   (3)     That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability or any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

   (4)     That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

   (5)     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his or her own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

   (6)     That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery

to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7)     Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8)     That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns, provided, however, that Trustor shall not assign this Deed without Beneficiary's consent. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

(9)     The Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not

obliged to notify any party hereto of pending sale under  any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a  party unless brought by Trustee.

Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge  thereof does not exceed the maximum allowed by laws.

*[Signature page follows]*

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be  mailed to him or her at his or her address hereinbefore set forth.

**VENICE BEACH WALK, LLC,**
a California limited liability company

By: The Carolyn A. Rafaelian Trust – 2004,
as amended, its sole member

Name: Carolyn Rafaelian
Title: Trustee

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of  Rhode Island

County of  Providence

On  September 9, 2019  before me,  Carolyn Rafaelian
(here   insert   name   and   title   of   the   officer),   personally   appeared

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____(Seal)

LILIT CAPALDI
Notary Public - Rhode Island
Notary ID 759327
My Commission Expires Jun 27, 2020

*[Signature Page to Rafaelian Deed of Trust]*

**EXECUTION VERSION**

**EXHIBIT B**
**PLEDGE**

(See attached).

EXECUTION VERSION

# PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT (this "Agreement"), dated as of September 13, 2019, is made by and between ALEX AND ANI PLEDGE CO. (the "Pledgor") and LC A&A HOLDINGS INC. (the "Lender").

WITNESSETH:

WHEREAS, the Pledgor is a guarantor of the Secured Promissory Note, dated as of the date hereof (as amended, restated, supplemented or otherwise modified from time to time, the "Note") and issued in favor of the Lender, pursuant to which the Borrower shall borrow the Loan from the Lender;

WHEREAS, it is a condition to the Lender's advance of the Loan to the Borrower that the Pledgor execute this Agreement and grant a security interest in favor of the Lender in the Pledged Equity Interests (as defined below);

WHEREAS, the Pledgor owns free and clear of any liens the percentage of the outstanding equity interests of the Persons listed on Schedule I hereto (such Persons, the "Issuers"; and, such equity interests, collectively, the "Pledged Equity Interests"); and

NOW THEREFORE, in consideration of the premises and mutual covenants herein contained and for other good and valuable consideration, receipt of which is hereby acknowledged, it is hereby agreed, with the intent to be legally bound, that the parties agree as follows:

1.      Defined Terms.   Except as otherwise expressly defined herein, all capitalized terms shall have the meanings ascribed to them in the Note.

2.      Security Interest; Certificates; Stock Powers.  The Pledgor hereby grants to the Lender a security interest in the Pledged Equity Interests as security for the due and punctual payment of the Obligations.  Additionally, if the Pledged Equity Interests are certificated, the Pledgor shall deliver to the Lender certificates in respect of the Pledged Equity Interests, together with appropriate stock powers duly endorsed in blank.

3.      [Reserved].

4.      Special Warranties and Covenants of the Pledgor.  The Pledgor hereby warrants and covenants to the Lender with respect to the Pledged Equity Interests, that:

(a)      The Pledgor warrants and will defend the Lender's right, title and security interest in and to the Pledged Equity Interests against the claims and demands of all Persons whomsoever.

(b)      The Pledgor has good title to the Pledged Equity Interests purported to be owned by it, free and clear of all liens (other than liens created by the Loan Documents).

(c)      All of the Pledged Equity Interests have been duly and validly issued and are fully paid and nonassessable.

(d)      As of the date hereof, the Pledged Equity Interests constitute the amount and percentage of equity interests of the presently issued and outstanding equity interests of the Issuers set forth on <u>Schedule I</u>.

(e)      If any additional equity interests of any class of the Issuers are acquired by the Pledgor after the date hereof, the same shall automatically constitute Pledged Equity Interests (with a security interest granted therein) and shall be deposited with (if certificated) and automatically pledged to the Lender as provided in Section 2 hereof upon such acquisition.

(f)      The Pledgor will not sell, convey or otherwise dispose of any of the Pledged Equity Interests.  Additionally, the Pledgor will not create, incur or permit to exist any lien with respect to any of the Pledged Equity Interests or the proceeds thereof, other than liens with respect to the Pledged Equity Interests created hereby or by the other Loan Documents.

(g)      The Pledgor will not consent to or approve the issuance of any additional shares of equity interests of any class of the Issuers, except for the issuance of additional equity interests to the Pledgor, provided that any such additional equity interests shall be pledged to the Lender automatically upon such issuance as provided in Section 2 hereof.

5.      <u>Distributions</u>.  In case, upon the dissolution, winding up, liquidation or reorganization of any of the Issuers whether in bankruptcy, insolvency or receivership proceedings or upon an assignment for the benefit of creditors or any other marshaling of the assets and liabilities of any of the Issuers or otherwise, (a) any sum shall be paid or any property shall be distributed upon, or with respect to, any of the Pledged Equity Interests, such sum shall be paid over to the Lender as collateral security for the Obligations or (b) any stock dividend shall be declared on any of the Pledged Equity Interests, or any share of stock or fraction thereof shall be issued pursuant to any stock split involving any of the Pledged Equity Interests, or any distribution of capital or profits shall be made on any of the Pledged Equity Interests, or any property shall be distributed upon, or with respect to, the shares, cash or other property so distributed shall be delivered to the Lender as collateral security for the Obligations.

6.      <u>Events of Default</u>.  There shall exist a default under this Agreement (an "<u>Event of Default</u>") upon the happening of any "Event of Default" under and as defined in the Note.

7.      <u>Rights and Remedies of Lender</u>.  Upon the occurrence and during the continuance of any Event of Default, such Event of Default not having previously been waived, remedied or cured, the Lender shall have the following rights and remedies:

(a)      All rights and remedies provided by law, including, without limitation, those provided by the uniform commercial code as in effect at such time in any applicable jurisdiction;

(b)      All rights and remedies provided in this Agreement; and

(c)      All rights and remedies in any Loan Document.

2

8.      <u>Right to Transfer into Name of Lender</u>.  In case there shall exist and be continuing an Event of Default, but subject to the provisions of the applicable uniform commercial code or other applicable law, the Lender may cause all or any of the Pledged Equity Interests to be transferred into its name or into the name of its nominee or nominees.  So long as no Event of Default shall exist and be continuing and the Lender has not taken action as contemplated by the preceding sentence, the Pledgor shall be entitled to exercise as the Pledgor shall deem fit, but in a manner not inconsistent with the terms hereof or of the other Loan Documents, the voting power with respect to the Pledged Equity Interests.

9.      <u>Right of Lender to Exercise Voting Power, etc</u>.  In case there shall exist and be continuing an Event of Default, the Lender shall be entitled to exercise the voting power with respect to the Pledged Equity Interests (with this Agreement constituting in favor of the Lender a voting proxy in such respect), to receive and retain, as collateral security for the Obligations, any and all dividends or other distributions at any time and from time to time declared or made upon any of the Pledged Equity Interests, and to exercise any and all rights of payment, conversion, exchange, subscription or any other rights, privileges or options pertaining to the Pledged Equity Interests as if it were the absolute owner thereof, including, without limitation, the right to exchange, at its discretion, any and all of the Pledged Equity Interests upon the merger, consolidation, reorganization, recapitalization or other readjustment of the Issuers or, upon the exercise of any such right, privilege or option pertaining to the Pledged Equity Interests, and in connection therewith, to deposit and deliver any and all of the Pledged Equity Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as the Lender may reasonably determine, all without liability except to account for property actually received, but the Lender shall have no duty to exercise any of the aforesaid rights, privileges or options and shall not be responsible for any failure to do so or delay in so doing.

10.      <u>Right of Lender to Dispose of Collateral, etc</u>.  Upon the occurrence and during the continuance of an Event of Default, such Event of Default not having previously been waived, remedied or cured, the Lender shall have the right at any time or times to sell, resell, assign and deliver all or any of the Pledged Equity Interests in one or more parcels at any exchange or broker's board or at public or private sale.  The Lender will give the Pledgor at least ten (10) days' prior written notice in accordance with Section 22 hereof of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition of any of the Pledged Equity Interests is to be made.  Any such notice shall be deemed to meet any requirement hereunder or under any applicable law (including the uniform commercial code) that reasonable notification be given of the time and place of such sale or other disposition.  Such notice may be given without any demand of performance or other demand, all such demands being hereby expressly waived by the Pledgor.  All such sales shall be at such commercially reasonable price or prices as the Lender shall deem best and either for cash or on credit or for future delivery (without assuming any responsibility for credit risk).  At any such sale or sales, the Lender may purchase any or all of the Pledged Equity Interests to be sold thereat upon such terms as the Lender may deem best.  Upon any such sale or sales the Pledged Equity Interests so purchased shall be held by the purchaser absolutely free from any claims or rights of whatsoever kind or nature, including any equity of redemption and any similar rights, all such equity of redemption and any similar rights being hereby expressly waived and released by the Pledgor.  In the event any consent, approval or authorization of any governmental agency will be necessary to effectuate any such

sale or sales, the Pledgor shall execute, and hereby agrees to cause the Issuers to execute, all such applications or other instruments as may be required.

The Pledgor recognizes that the Lender may be unable to effect a public sale of all or a part of the Pledged Equity Interests by reason of certain prohibitions contained in the Securities Act of 1933, as amended (the "Securities Act") or otherwise but may be compelled to resort to one or more private sales to a restricted group of purchasers, each of whom will be obligated to agree, among other things, to acquire such Pledged Equity Interests for its own account, for investment and not with a view to the distribution or resale thereof. The Pledgor acknowledges that private sales so made may be at prices and upon other terms less favorable to the seller than if such Pledged Equity Interests were sold at public sales without such restrictions, and that the Lender has no obligation to delay sale of any such Pledged Equity Interests for the period of time necessary to permit such Pledged Equity Interests to be registered for public sale under the Securities Act. The Pledgor agrees that any such private sales shall not be deemed to have been made in a commercially unreasonable manner solely because they shall have been made under the foregoing circumstances.

11.     [Reserved].

12.     Collection of Amounts Payable on Account of Pledged Equity Interests, etc. Upon the occurrence and during the continuance of any Event of Default, the Lender may, but without obligation to do so, demand, sue for and/or collect any money or property at any time due, payable or receivable, to which it may be entitled hereunder, on account of, or in exchange for, any of the Pledged Equity Interests and shall have the right, for and in the name, place and stead of the Pledgor, to execute endorsements, assignments or other instruments of conveyance or transfer with respect to all or any of the Pledged Equity Interests.

13.     Care of Pledged Equity Interests in Lender's Possession.  Beyond the exercise of reasonable care to assure the safe custody of the Pledged Equity Interests while held hereunder, the Lender shall have no duty or liability to collect any sums due in respect thereof or to protect or preserve rights pertaining thereto, and shall be relieved of all responsibility for the Pledged Equity Interests upon surrendering the same to the Pledgor; provided that nothing contained in this Section 13 shall be deemed to relieve the Lender from any liability arising from its own gross negligence or willful misconduct.

14.     Proceeds of Pledged Equity Interests.  After deducting all costs and expenses of collection, storage, custody, sale or other disposition and delivery (including legal costs and reasonable attorneys' fees) and all other charges against the Pledged Equity Interests, the residue of the proceeds of any such sale or disposition shall be applied to the payment of the Obligations by the Lender in accordance with the terms of the Note.  By way of enlargement and not by way of limitation of the rights of the Lender under applicable law or the Note or the other Loan Documents, the Lender shall allocate the proceeds of the Pledged Equity Interests to the Obligations in accordance with the terms of the Note.  In the event the proceeds of any sale, lease or other disposition of the Pledged Equity Interests hereunder are insufficient to pay all of the Obligations in full, the Pledgor will be liable for the deficiency, together with interest thereon at the maximum rate provided in the Loan Documents, and the cost and expenses of collection of

4

such deficiency, including (to the extent permitted by law), without limitation, reasonable attorneys' fees, expenses and disbursements.

15.   Waivers, etc.  The Pledgor hereby waives presentment, demand, notice, protest and, except as is otherwise provided herein or in the other Loan Documents, all other demands and notices in connection with this Agreement or the enforcement of the Lender's rights hereunder or in connection with any Obligations or any Pledged Equity Interests; consents to and waives notice of the granting of renewals, extensions of time for payment or other indulgences to the Issuers or the Pledgor or to any third party, or substitution, release or surrender of any collateral security for any Obligation, the addition or release of Persons primarily or secondarily liable on any Obligation or on any collateral security for any Obligation, the acceptance of partial payments on any Obligation or on any collateral security for any Obligation and/or the settlement or compromise thereof.  No delay or omission on the part of the Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right hereunder.  Any waiver of any such right on any one occasion shall not be construed as a bar to or waiver of any such right on any future occasion.  The Pledgor further waives any right it may have under the laws of the State of New York, under the laws of any state in which any of the Pledged Equity Interests may be located or which may govern the Pledged Equity Interests, or under the laws of the United States of America, to notice (other than any requirement of notice provided herein) or to a judicial hearing prior to the exercise of any right or remedy provided by this Agreement to the Lender and waives its rights, if any, to set aside or invalidate any sale duly consummated in accordance with the foregoing provisions hereof on the grounds (if such be the case) that the sale was consummated without a prior judicial hearing.  The Pledgor's waivers under this Section have been made voluntarily, intelligently and knowingly and after the Pledgor has been apprised and counseled by its attorneys as to the nature thereof and its possible alternative rights.

16.   Termination.  Upon the repayment in full of the Obligations, the Pledged Equity Interests shall be released from the lien created hereby and this Agreement and all obligations (other than those expressly stated to survive such termination) of the Lender and the Pledgor hereunder shall terminate, all without delivery of any instrument or performance of any act by any party, and all rights to the Pledged Equity Interests shall revert to the Pledgor.  At the request of the Pledgor following any such termination, the Lender shall deliver to such Pledgor any Pledged Equity Interests of such Pledgor held by the Lender hereunder and execute and deliver to the Pledgor such documents (and make such filings, including UCC-3 filings) as the Pledgor shall reasonably request to evidence such termination.

17.   Waivers.  No waiver by the Lender of any default shall be effective unless in writing nor operate as a waiver of any other default, or of the same default, on a future occasion.

18.   [Reserved].

19.   Reinstatement.  Notwithstanding the provisions of Section 16, this Agreement shall continue to be effective or be reinstated, as the case may be, if at any time any amount received by the Lender in respect of the Obligations is rescinded or must otherwise be restored or returned by the Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of any of the Issuers or the Pledgor, or upon the appointment of any intervener or

conservator of, or trustee or similar official for, any of the Issuers or the Pledgor, or any substantial part of their respective properties, or otherwise, all as though such payments had not been made.

20.     [Reserved].

21.     Restrictions on Transfer, etc.  To the extent that any restrictions imposed by the charter or by-laws of any of the Issuers or any other document or instrument would in any way affect or impair the pledge of the Pledged Equity Interests hereunder or the exercise by the Lender of any right granted hereunder, including, without limitation, the right of the Lender to dispose of the Pledged Equity Interests upon the occurrence of any Event of Default, the Pledgor hereby waives such restrictions, and represents and warrants that it has caused each Issuer to take all necessary action to waive such restrictions, and the Pledgor hereby agrees that it will take any further action which the Lender may reasonably request in order that the Lender may obtain and enjoy the full rights and benefits granted to the Lender by this Agreement free of any such restrictions.

22.     Notices.  All notices, consents, approvals, elections and other communications hereunder shall be in writing (whether or not the other provisions of this Agreement expressly so provide) and shall be deemed to have been duly given if delivered in accordance with the terms of Section 11 of the Note.

23.     Miscellaneous.  This Agreement shall inure to the benefit of and be binding upon the Lender and each Pledgor and their respective successors and assigns.  In case any provision in this Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

24.     GOVERNING LAW; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL.  SECTIONS 16, 17 AND 18 OF THE NOTE ARE SET FORTH AND INCORPORATED HEREIN *MUTATIS MUTANDIS*.

25.     Expenses; Indemnification; Exculpation; Prevailing Party.  Section 15 of the Note is set forth and incorporated herein *mutatis mutandis*.

26.     Amendments.  No amendment, modification, termination or waiver of any provision of this Agreement, and no consent to any departure by the Pledgor therefrom, shall in any event be effective unless the same shall be effected in accordance with Section 13 of the Note. Any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it was given.

(Signatures begin on the next page.)

IN WITNESS WHEREOF, the parties have executed this Pledge Agreement as of the date first above written.

<u>PLEDGOR</u>:

ALEX AND ANI PLEDGE CO.

By: _____
      Name:  Carolyn Rafaelian
      Title:   President

LENDER:

LC A&A HOLDINGS, INC.

By: _____
    Name:  Sherif Guirgis
    Title:    President

*[Signature Page to Pledge Agreement]*

## SCHEDULE I

(to the Pledge Agreement)

PLEDGED EQUITY INTERESTS

| Issuer | Equity Interest Pledged | % of Total Equity Interests | Certificate No.(s) |
|---|---|---|---|
| A and A Shareholding Co., LLC | 8,751,750 Class A Units | 26.25% | |
| A and A Shareholding Co., LLC | 5,001,000 Class B Units | 15.00% | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**EXECUTION VERSION**

**EXHIBIT C**
**GUARANTY**

(See attached).

**EXECUTION VERSION**

# GUARANTY

This GUARANTY (this "**Guaranty**"), dated as of September 13, 2019, is made by VENICE BEACH WALK, LLC, a California limited liability company, and Alex and Ani Pledge Co., a Rhode Island corporation (each a "**Guarantor**" and together, the "**Guarantors**"), in favor and for the benefit of LC A&A HOLDINGS, INC. ("**Beneficiary**").

Reference is made to the Secured Promissory Note dated as of the date hereof (the "**Underlying Agreement**"), by and between Carolyn Rafaelian ("**Obligor**"), and Beneficiary. In consideration of the substantial direct and indirect benefits derived by Guarantors from the transactions under the Underlying Agreement, and in order to induce Beneficiary to make the Loan (as defined in the Underlying Agreement), Guarantors, hereby agree as follows:

      1.     <u>Guaranty</u>. Guarantors absolutely, unconditionally and irrevocably guarantee, jointly and severally, as primary obligors and not merely as sureties, the full and punctual payment and performance of all present and future obligations, liabilities, covenants and agreements required to be observed and performed or paid or reimbursed by Obligor under or relating to the Underlying Agreement, plus all costs, expenses and fees (including the reasonable fees and expenses of Beneficiary's counsel) in any way relating to the enforcement or protection of Beneficiary's rights hereunder or thereunder (collectively, the "**Obligations**").

      2.     <u>Guaranty Absolute and Unconditional</u>. Guarantors agree that their Obligations under this Guaranty are irrevocable, continuing, absolute and unconditional and shall not be discharged or impaired or otherwise affected by, and Guarantors hereby irrevocably waive any defenses to enforcement they may have (now or in the future) by reason of:

          (a)     Any illegality, invalidity or unenforceability of any Obligation or the Underlying Agreement or any related agreement or instrument, or any law, regulation, decree or order of any jurisdiction or any other event affecting any term of the Obligations.

          (b)     Any change in the time, place or manner of payment or performance of, or in any other term of the Obligations, or any rescission, waiver, release, assignment, amendment or other modification of the Underlying Agreement.

          (c)     Any taking, exchange, substitution, release, impairment, amendment, waiver, modification or non-perfection of any collateral or any other guaranty for the Obligations, or any manner of sale, disposition or application of proceeds of any collateral or other assets to all or part of the Obligations.

          (d)     Any default, failure or delay, willful or otherwise, in the performance of the Obligations.

          (e)     Any change, restructuring or termination of the corporate structure, ownership or existence of Guarantors or Obligor or any insolvency, bankruptcy, reorganization or other similar proceeding affecting Obligor or its assets or any resulting restructuring, release or discharge of any Obligations.

(f)     Any failure of Beneficiary to disclose to Guarantors any information relating to the business, condition (financial or otherwise), operations, performance, properties or prospects of Obligor now or hereafter known to Beneficiary, Guarantors waiving any duty of Beneficiary to disclose such information.

(g)     The failure of any other guarantor or third party to execute or deliver this Guaranty or any other guaranty or agreement, or the release or reduction of liability of Guarantors or any other guarantor or surety with respect to the Obligations.

(h)     The failure of Beneficiary to assert any claim or demand or to exercise or enforce any right or remedy under the provisions of any Underlying Agreement or otherwise.

(i)     The existence of any claim, set-off, counterclaim, recoupment or other rights that Guarantors or Obligor may have against Beneficiary (other than a defense of payment or performance).

(j)     Any other circumstance (including, without limitation, any statute of limitations), act, omission or manner of administering the Underlying Agreement or any existence of or reliance on any representation by Beneficiary that might vary the risk of Guarantors or otherwise operate as a defense available to, or a legal or equitable discharge of, Guarantors.

3.     <u>Certain Waivers; Acknowledgments</u>. Guarantors further acknowledge and agree as follows:

(a)     Guarantors hereby unconditionally and irrevocably waive any right to revoke this Guaranty and acknowledges that this Guaranty is continuing in nature and applies to all presently existing and future Obligations, until the complete, irrevocable and indefeasible payment and satisfaction in full of the Obligations.

(b)     This Guaranty is a guaranty of payment and performance and not of collection. Beneficiary shall not be obligated to enforce or exhaust its remedies against Obligor or under the Underlying Agreement before proceeding to enforce this Guaranty.

(c)     This Guaranty is a direct guaranty and independent of the obligations of Obligor under the Underlying Agreement. Beneficiary may resort to Guarantors for payment and performance of the Obligations whether or not Beneficiary shall have resorted to any collateral therefor or shall have proceeded against Obligor or any other guarantors with respect to the Obligations. Beneficiary may, at Beneficiary's option, proceed against Guarantors and Obligor, jointly and severally, or against any or all Guarantors only without having obtained a judgment against Obligor.

(d)     Guarantors hereby unconditionally and irrevocably waive promptness, diligence, notice of acceptance, presentment, demand for performance, notice of non-performance, default, acceleration, protest or dishonor and any other notice with respect to any of the Obligations and this Guaranty and any requirement that Beneficiary protect, secure, perfect or insure any lien or any property subject thereto.

(e)      Notwithstanding anything contained herein to the contrary, the Obligations of Guarantors shall be limited to the maximum amount so as to not constitute a fraudulent transfer or conveyance for purposes of the United States Bankruptcy Code or any applicable state law or otherwise to the extent applicable to this Guaranty and the Obligations of Guarantors hereunder.

(f)      Guarantors agree that their guaranty hereunder shall continue to be effective or be reinstated, as the case may be, if at any time all or part of any payment of any Obligation is voided, rescinded or recovered or must otherwise be returned by Beneficiary upon the insolvency, bankruptcy or reorganization of Obligor.

4.      <u>Subrogation</u>. Guarantors waive and shall not exercise any rights that it may acquire by way of subrogation, contribution, reimbursement or indemnification for payments made under this Guaranty until all Obligations shall have been indefeasibly paid and discharged in full.

5.      <u>Representations and Warranties</u>. To induce Beneficiary to enter into the Underlying Agreement, Guarantors represent and warrant that: (a) each Guarantor is a duly organized and validly existing limited liability company in good standing under the laws of its jurisdiction of formation; (b) this Guaranty and the Pledge (as defined in the Underlying Obligation) and Mortgage (as defined in the Underlying Obligation) constitute Guarantors' valid and legally binding agreements enforceable in accordance with their terms; (c) the execution, delivery and performance of this Guaranty and the Mortgage have been duly authorized by all necessary action and will not violate any order, judgment or decree to which Guarantors or any of their assets may be subject; and (d) Guarantors are currently solvent and will not be rendered insolvent by providing this Guaranty.

6.      <u>Notices</u>. All notices, requests, consents, demands and other communications hereunder shall be in writing.

7.      <u>Assignment</u>. This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that Guarantors may not, without the prior written consent of Beneficiary, assign any of their rights, powers or obligations hereunder. Beneficiary may assign this Guaranty and its rights hereunder without the consent of Guarantors. Any attempted assignment in violation of this section shall be null and void.

8.      <u>Governing Law; Service of Process</u>. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES THEREOF.

9.      <u>Waiver of Jury Trial</u>. EACH PARTY HEREBY IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OF THE OBLIGATIONS HEREUNDER.

10.     <u>Cumulative Rights</u>. Each right, remedy and power hereby granted to Beneficiary or allowed it by applicable law or other agreement shall be cumulative and not exclusive of any other, and may be exercised by Beneficiary at any time or from time to time.

11.     <u>Severability</u>. If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction to be unenforceable, the remainder of this Guaranty shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the fullest extent permitted by law.

12.     <u>Entire Agreement; Amendments; Headings; Effectiveness</u>. This Guaranty constitutes the sole and entire agreement of Guarantors and Beneficiary with respect to the subject matter hereof and supersedes all previous agreements or understandings, oral or written, with respect to such subject matter. No amendment or waiver of any provision of this Guaranty shall be valid and binding unless it is in writing and signed, in the case of an amendment, by both parties, or in the case of a waiver, by the party against which the waiver is to be effective. Section headings are for convenience of reference only and shall not define, modify, expand or limit any of the terms of this Guaranty. Delivery of this Guaranty by facsimile or in electronic (i.e., pdf or tif) format shall be effective as delivery of a manually executed original of this Guaranty.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the day and year first above written.

GUARANTORS:

VENICE BEACH WALK, LLC

By: The Carolyn A Rafaelian Trust – 2004, as amended, its sole member

By: _____

Name: Carolyn Rafaelian

Title: Trustee

ALEX AND ANI PLEDGE CO.

By: _____

Name: Carolyn Rafaelian

Title: President

BENEFICIARY:

LC A&A HOLDINGS, INC.

By: _____

Name:   Sherif Guirgis
Title:    President

*[Signature Page to Venice Guaranty]*