*Case No.: 1:20-CV-00247-MSM-PAS*

## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CAROLYN RAFAELIAN, an individual, ALEX AND ANI PLEDGE CO., a Rhode Island Corporation and VENICE BEACH WALK, LLC, a California Limited Liability Company,<br><br>Plaintiffs,<br>v.<br><br>LC A&A HOLDINGS, INC., a Delaware Corporation, LC A&A INTERMEDIATE INVESTORS, LLC, a Delaware limited liability Company, LYNDON LEA, an individual, A and A SHAREHOLDING CO., LLC, a Delaware limited liability company and ROBERT TRABUCCO, an individual,<br><br>Defendants. | **Case No.: 1:20-CV-00247-MSM-PAS** |

## DECLARATION OF KURT T. KALBERER II, ESQ. IN SUPPORT OF PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Pursuant to 28 U.S.C. § 1746, Kurt T. Kalberer II, Esq. declares the following:

1.      I am an attorney at the law firm of Kalberer LLP, counsel for all three Plaintiffs in this action: Carolyn Rafaelian, Alex and Ani Pledge Co. and Venice Beach Walk, LLC. I am admitted to practice law in the State of Rhode Island.

2.      I respectfully submit this Declaration in support of the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint, based on my personal knowledge.

*Case No.: 1:20-CV-00247-MSM-PAS*

3.      On June 17, 2020, LC A&A Holdings, Inc. initiated an action against Carolyn Rafaelian, Alex and Ani Pledge Co., and Venice Beach Walk, LLC (the "New York Action").

4.      On September 29, 2020, Plaintiffs filed their Memorandum of Law in Support of Defendants' Cross-Motion to Dismiss or Stay the Proceeding and in Opposition to Plaintiff's Motion for Summary Judgement in Lieu of Complaint (the "Motion").

5.      Attached hereto as **Exhibit A** is a true and correct copy of the Motion filed in the New York Action.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 13th , 2020 at Newport County, Rhode Island

*/s/ Kurt T. Kalberer II*
KURT T. KALBERER II, ESQ.

# EXHIBIT A

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 4 of 32 PageID #: 606

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LC A&A HOLDINGS, INC.,

                                                    Plaintiff,

                    - against -

                                                                        Index No.: 652546/2020

CAROLYN RAFAELIAN,
ALEX AND ANI PLEDGE CO.,
and VENICE BEACH WALK, LLC,

                                                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS-MOTION TO
DISMISS OR STAY THE PROCEEDING AND IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT</u>**

4824-6691-8860.6

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

    A.   Background ......................................................................................................... 3

    B.   2019 Restructuring of the Company ................................................................ 3

    C.   Credit Agreement ............................................................................................. 4

    D.   Secured Promissory Note ................................................................................ 5

    E.   Investor Matters Agreement ............................................................................ 5

    F.   Ms. Rafaelian Is Immediately Denied Funding after Closing  ..................... 6

    G.   Procedural Posture .......................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.     This Action Should Be Dismissed as against the Guarantors Because the Court Lacks
      Personal Jurisdiction Over Them ......................................................................... 7

II.    The Dismissal or Stay of this Action in Favor of the District Court Action Is
      Appropriate Due to the Earlier-Commenced District Court Action ..................... 9

III.   Plaintiff's Motion for Summary Judgment in Lieu of Complaint Must Be Denied ........... 15

       A.   The Note and Guaranty Are Intertwined with the Restructuring Agreements,
            Making their Disposition Inappropriate under CPLR 3213 ........................................ 15

       B.   The Note and Guaranty Are Unenforceable due to Failure of Consideration ............. 16

       C.   The Evidence of Fraud in the Inducement with Respect to the Note and Guaranty
            Requires Denial of Plaintiff's Motion under CPLR 3213 ........................................... 18

       D.   The Guaranty Is Not an Instrument for the Payment of Money Only ........................ 19

       CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A+ Assocs. v. Naughter*,
236 A.D.2d 655 (3d Dep't 1997) ............................................................17

*AIG Fin. Prods. Corp. v. Penncara Energy, LLC*,
83 A.D.3d 495 (1st Dep't 2011) ............................................................12

*Almeida v. Radovsky*,
506 A.2d 1373 (R.I. 1986) ............................................................14

*Associated Capital Servs. of N.J. v. Lichtenstein*,
94 A.D.2d 736 (2d Dep't 1983) ............................................................21

*Barringer v. Zgoda*,
91 A.D.2d 811 (3d Dep't 1982) ............................................................10

*Coast to Coast Energy, Inc. v. Gasarch*,
149 A.D.3d 485 (1st Dep't 2017) ............................................................8

*Country Bank v. East Harlem Estates LLC*,
No. 654305/2019, 2020 WL 3451877 (Sup. Ct. N.Y. Cnty. June 24, 2020)...........................19

*Delmastro v. Rescue Carting Corp.*,
No. 41653-2010, 2011 WL 1212735 (Sup. Ct. N.Y. Cnty. Mar. 22, 2011) ............................15

*Dresdner Bank AG. v. Morse/Diesel, Inc.*,
115 A.D.2d 64 (1st Dep't 1986) ............................................................20

*El Greco Inc. v. Cohn*,
139 A.D.2d 615 (2d Dep't 1988) ............................................................11

*Epstein v. Epstein*,
211 A.D.2d 968 (3d Dep't 1995) ............................................................10

*Eurotech Dev. v. Adirondack Pennysaver*,
224 A.D.2d 738 (3d Dep't 1996) ............................................................17

*Hobart v. Schuler*,
55 N.Y.2d 1023 (1982) ............................................................18

*JC Mfg., Inc. v. NPI Electric, Inc.*,
178 A.D.2d 505 (2d Dep't 1991) ............................................................10

4824-6691-8860.6

4824-6691-8860.5

*Lorber v. Morovati*,
83 A.D.3d 799 (2d Dep't 2011) ........................................................................15

*LSPA Enter., Inc. v. Jani-King of N.Y., Inc.*,
31 A.D.3d 394 (2d Dep't 2006) ........................................................................13

*MCC Funding, LLC v. Diamond Point Enters, LLC*,
No. 500815/2011, 2012 WL 2537893 (Sup. Ct. Kings Cnty. June 25, 2012) ........................19

*Mfrs. Hanover Trust Co. v. Hixon*,
124 A.D.2d 488 (1st Dep't 1986) ......................................................................20

*Montalvo v. Air Dock Systems*,
37 A.D.3d 567 (2d Dep't 2007) ..........................................................................9

*Paine Webber Jackson & Curtis, Inc. v. Aronson*,
115 A.D.2d 355 (1st Dep't 1985) ......................................................................21

*Paterno v. Laser Spine Institute*,
24 N.Y.3d 370 (2014) ........................................................................................8

*PDL Biopharma, Inc. v. Wohlstadter*,
147 A.D.3d 494 (1st Dep't 2017) ......................................................................21

*Regal Limousine, Inc. v. Allison Limousine Service, Ltd.*,
136 A.D.2d 534 (2d Dep't 1988) ......................................................................18

*Sabo v. Delman*,
3 N.Y.2d 155 (1957) ........................................................................................18

*Simonetti v. Larson*,
44 A.D.3d 1028 (2d Dep't 2007) ........................................................................9

*Slavin v. Victor*,
168 A.D.2d 399 (1st Dep't 1990) ......................................................................15

*Tibball v. Catalanotto*,
269 A.D.2d 386 (2d Dep't 2000) ......................................................................17

*U.S. Mdse., Inc. v. L&R Distribs., Inc.*,
122 A.D.3d 613 (2nd Dep't 2014) ....................................................................13

*Williams v. Beemiller, Inc.*,
33 N.Y.3d 523 (2019) ......................................................................................7, 8

**Statutes**

N.Y. Gen. Oblig. L. § 5-1402(1) .......................................................................12

iii

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 8 of 32 PageID #: 610

**Rules**

CPLR 302(a) ...................................................................................................................7, 8, 9

CPLR 2201................................................................................................................10, 11, 22

CPLR 3211(a)(4) .................................................................................................. *passim*

CPLR 3211(a)(8) .................................................................................................7, 8, 9, 22

CPLR 3213........................................................................................................... *passim*

**Other Authorities**

N.Y. Jur. 2d *Actions* § 29 (2008) ...............................................................................10

iv

4824-6691-8860.6

## PRELIMINARY STATEMENT

Defendants Carolyn Rafaelian, Alex and Ani Pledge Co. ("Pledge Co.") and Venice Beach Walk, LLC ("Venice Beach") (Pledge Co. and Venice Beach collectively the "Guarantors") submit this memorandum of law, together with the Affidavit of Carolyn Rafaelian ("Rafaelian Aff.") and the exhibits annexed thereto, in support of their cross-motion to dismiss or stay the proceeding pursuant to New York Civil Practice Law and Rules ("CPLR") 3211(a)(4), 3211(a)(8), and 2201 and in opposition to the motion for summary judgment in lieu of complaint of Plaintiff, LC A&A Holding, Inc. ("Lion Capital").

Plaintiff seeks summary judgment on two separate instruments which it incorrectly argues are for the payment of money only – the Secured Promissory Note dated September 19, 2013 (the "Note") signed by Ms. Rafaelian and the Guaranty dated as of September 13, 2019 (the "Guaranty") signed by the Guarantors.  Judgment on the Note and Guaranty is entirely inappropriate under the accelerated procedure afforded by CPLR 3213.  Those documents are two smaller, inextricably intertwined components in a much larger and broader shareholder dispute between Lion Capital and Ms. Rafaelian stemming from the restructuring of their company in September of 2019 - a dispute which is presently pending before the United States District Court for the District of Rhode Island.

The genesis of this shareholder dispute is the complete failure of Ms. Rafaelian to receive the consideration she expressly bargained for in the restructuring agreements – consideration which she was to receive "in exchange for" the Defendants undertaking their obligations under the Note and related loan documents.  Plaintiff agreed that she would receive funding for her two (2) new product lines of business in the amount of $1 million per year for two (2) years.  In May of 2020, following the termination of her employment with the Company and false claim of default under the Note by Lion Capital, Ms. Rafaelian commenced the District Court action asserting claims against Lion

1

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 10 of 32 PageID #: 612

Capital, Alex and Ani and other parties for, among other things, fraud and breach of contract, as well as violation of the federal securities laws.

Indeed, the Court need not rule on the instant motion for summary judgment, as this proceeding should be dismissed or stayed in favor of the pending, prior-filed and all-encompassing District Court action under CPLR 3211(a)(4).  This dispute and the parties have no actual contacts with or factual nexus to New York whatsoever.  All of the parties to this action are parties to the prior-filed District Court action, which involves additional issues, parties, claims and contracts in connection with the restructuring beyond the Note and Guaranty, none of which provide for New York law or forum nor remotely involve conduct occurring in New York.  Any attempt by this Court to parse out and rule on the Note and Guaranty from the entirety of the restructuring dispute being litigated in the District Court action risks potentially inconsistent results and judgments and prejudice to all parties.

If, however, this Court does reach the merits of Plaintiff's motion, it must be denied because: (1) the Note and Guaranty are inextricable intertwined with other documents and issues and are plainly not instruments for the payment of money only under CPLR 3213; and (2) numerous issues of material fact exist with respect to Defendants' defenses of fraud in the inducement and breach of contract with respect to the Note and Guaranty.

Finally, this Court has no personal jurisdiction over the Guarantors in connection with Plaintiff's claim under the Guaranty because those parties have no contacts with New York, and there is no forum selection clause in the Guaranty which could otherwise serve as a basis for this Court to exercise jurisdiction over those Defendants.

4824-6691-8860.6

## STATEMENT OF FACTS

**A.      Background**

Founded in 2003, Alex and Ani, LLC (together with A and A Shareholding Co., LLC and its affiliated entities, the "Company") is a Rhode Island-based jewelry brand headquartered in East Greenwich, Rhode Island.  Rafaelian Aff. ¶ 2.  Carolyn Rafaelian is the founder of the Company and, prior to September 2019, was its Chief Executive Officer as well as its majority and controlling equity holder through Pledge Co.  *Id*. ¶ 3.  Lion Capital is an affiliate of Lion Capital LLP, a London, England-based private equity firm (hereinafter, Lion Capital, Lion Capital LLP and LC A&A Intermediate Investors, LLC collectively "Lion Capital" or "Plaintiff").  *Id*. ¶ 5.

**B.      2019 Restructuring of the Company**

In 2019, the Company was disputing an alleged default under a $100 million credit facility with Bank of America.  *Id*. ¶ 8.  Lion Capital, at the time a minority and non-controlling stakeholder, undertook direct negotiation with Bank of America in a purported attempt to resolve the dispute, the result of which was a purported urgent need for a restructuring of the Company to avoid its liquidation. *Id*. ¶¶ 9-10.

That restructuring was undertaken pursuant to the terms outlined in the Equity Restructuring – Binding Term Sheet, entered into between Lion Capital and Ms. Rafaelian on August 14, 2019 (the "Term Sheet").  *Id*. ¶ 11; *see* Ex. A to Rafaelian Aff.  The Term Sheet provides that Ms. Rafaelian was to, among other things, divest Pledge Co.'s controlling equity interest in the Company from 60% to 41.25% and give Lion Capital "control over strategic and operational decisions of the Company."  Rafaelian Aff. ¶ 12; Ex. A to Rafaelian Aff. at p. 2.  It further provides for a $20 million investment in the Company by Lion Capital and Ms. Rafaelian,

3

4824-6691-8860.5

with Ms. Rafaelian contributing $7 million, and with $5 million being paid by Lion Capital in the form of a loan from it to Ms. Rafaelian. Rafaelian Aff. ¶ 12; Ex. A to Rafaelian Aff. at p. 1.

As consideration and a material inducement to enter into the Term Sheet and cede control of the Company to Lion Capital, Mr. Lydon Lea, Lion Capital's managing partner, represented to Ms. Rafaelian, through his agent Sherif Guirgis on August 14, 2019, and as memorialized in the Term Sheet, that the Company could fund her new Current State and Tri-Alchemy lines of business in the amount of $1 million per year for two (2) years. Rafaelian Aff. ¶¶ 6, 13; Ex. A to Rafaelian Aff. at p. 2. On September 13, 2019, per the Term Sheet, the parties executed numerous agreements including, without limitation, the Second Lien Credit Agreement, the Note, the Guaranty, Investor Matters Agreement and Third Amended and Restated Limited Liability Company Agreement of the Company (collectively the "Restructuring"). Rafaelian Aff. ¶ 14; *see* Ex. A to Rafaelian Aff.

## C. Credit Agreement

Specifically, on September 13, 2019, acting under duress, with Lion Capital and the Company threatening imminent liquidation of the Company, Ms. Rafaelian executed, on behalf of Pledge Co., the Second Lien Credit Agreement (the "Credit Agreement"), pursuant to which Pledge Co. immediately loaned $7 million to the Company, payable with interest on or before January 31, 2022. Rafaelian Aff. ¶¶ 8-11, 15; *see* Ex. B to Rafaelian Aff. In purported consideration for making the $7 million loan under the Credit Agreement, Pledge Co. received 8,751,750 Class A Units of the Company. Rafaelian Aff. ¶ 16; *see* Ex. C to Rafaelian Aff. at Schedule 5.20(b); *see also* Ex. A to Rafaelian Aff. at p. 11.

4

4824-6691-8860.6

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 13 of 32 PageID #: 615

## D.    Secured Promissory Note

Contemporaneously with the execution of the Credit Agreement, Ms. Rafaelian executed the Note in favor of Lion Capital under which Ms. Rafaelian promises to pay Lion Capital $5 million within nine (9) months from the date of the Note, with interest accruing and payable in monthly installments at a rate of 3.5% per annum and, in the event of a default, interest shall increase to 15% per annum.  Rafaelian Aff. ¶ 17; Ex. A to Plaintiff's Motion ¶¶ 2-3.  Pursuant to Paragraph 4, the $5 million proceeds of the Note were never actually received by Ms. Rafaelian but instead were used by her immediately upon receipt solely to make a capital contribution to Pledge Co., with Pledge Co. immediately using the proceeds to fund its $7 million loan to the Company under the Credit Agreement.  Rafaelian Aff. ¶¶ 17-18; Ex. A to Plaintiff's Motion ¶ 4.

As security for the Note, Ms. Rafaelian was required to execute the Pledge Agreement (the "Pledge Agreement") on behalf of Pledge Co., pledging all of her equity in the Company as collateral for the Note.  Rafaelian Aff. ¶ 19.  Ms. Rafaelian was also required to execute a Guaranty (the "Guaranty") on behalf of Venice Beach Walk, LLC ("Venice Beach") and Pledge Co., as well as the Deed of Trust with Assignment of Rents (the "Mortgage") for certain real property in California held by Venice Beach (the Note, Pledge Agreement, Guaranty and Mortgage collectively the "Loan Agreements").  *Id*. ¶ 20; *see* Ex. B to Plaintiff's Motion.

## E.    Investor Matters Agreement

Pursuant to Paragraph 3(b) of the Investor Matters Agreement dated September 13, 2019 (the "Investor Agreement") (*see* Ex. D to Rafaelian Aff.), executed by Robert Trabucco as Chief Restructuring Officer for the Company, Mr. Trabucco represented to Ms. Rafaelian that the Company would unconditionally fund her new Current State and Tri-Alchemy product lines of

4824-6691-8860.6

business in the amount of $1 million per year for two (2) years (the "New Product Funding") as follows:

> For a period of two (2) years following the Closing, the Company **shall fund** the operations of the Current State and Tri-Alchemy lines of business of Alex and Ani up to a total amount of $1 million per year, such amount to include all research and development costs and operating losses of such lines of business; provided, that the Company's obligations pursuant to this Section 3(b) shall terminate and be of no further force and effect upon the termination of employment of the Founder with the Company for any reason, whether the Founder is removed or resigns voluntarily. (emphasis added).

Rafaelian Aff. ¶¶ 7, 21-23; Ex. D to Rafaelian Aff. ¶ 3(b).

**F.      Ms. Rafaelian Is Immediately Denied Funding after Closing**

Within days after the September 13, 2019 closing, Ms. Rafaelian was advised by Mr. Trabucco at a meeting that the Company could not afford to provide her any New Product Funding – the very funding that had induced her to agree to the Restructuring.  Rafaelian Aff. ¶¶ 21-26. Ms. Rafaelian would never have agreed to the Restructuring, which included her execution of the Note and Guaranty, if she knew the Company would not, or could not, provide her New Product Funding.  *Id*. ¶¶ 26.  Indeed, she executed the Note and made her $7 million investment in the Company specifically to provide the Company with the resources to perform the terms of the Restructuring.  *Id*.  Without the New Product Funding, the business lines for the Current State and Tri-Alchemy tradenames, which Ms. Rafaelian was to retain following the termination of her employment with the Company, remain worthless and non-operational.  *Id*. ¶ 31.

**G.      Procedural Posture**

On June 3, 2020, the Defendants filed the District Court action, Case No. 1:20-cv-00247 (the "District Court Action"), seeking declaratory relief related to Plaintiff's wrongful attempt to hold Ms. Rafaelian in breach of the Note.  *Id*. ¶ 32.  On June 12, 2020, the Defendants filed their First Amended Complaint against Lion Capital, Lyndon Lea, the Company and Robert Trabucco (collectively the

6

4824-6691-8860.6

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 15 of 32 PageID #: 617

"District Court Action Defendants") including claims for, among other things, fraud and breach of contract arising out of the Restructuring and seeking judgment declaring the Note and Guaranty void and unenforceable. *Id.* ¶ 33; *see* Ex. E to Rafaelian Aff. ¶¶ 54-97. On August 14, 2020, the District Court Action Defendants filed their Motion to Dismiss First Amended Complaint. Rafaelian Aff. ¶ 34. Defendants' opposition thereto is presently due on October 2, 2020. *Id.*

## **ARGUMENT**

### I.    **This Action Should Be Dismissed as against the Guarantors Because the Court Lacks Personal Jurisdiction Over Them**

As a threshold matter, Lion Capital's claims to enforce the Guaranty should be dismissed as against the Guarantors pursuant to CPLR 3211(a)(8), since the Guarantors are not subject to personal jurisdiction in this Court. "[A] New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process." *Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 528 (2019) (citation omitted). As is relevant here, New York's long-arm statute provides that a court may exercise jurisdiction over a non-domiciliary only if the non-domiciliary: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act without the state causing injury to person or property within the state, provided the non-domiciliary (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international

7

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 16 of 32 PageID #: 618

commerce; or (4) owns, uses or possesses any real property situated within the state.   CPLR

302(a)(1)-(4).   With respect to CPLR 302(a)(1), the question of whether a non-domiciliary is

transacting business:

> Is a fact based determination, and requires a finding that the non-domiciliary's
> activities were purposeful and established a substantial relationship between the
> transaction and the claim asserted…. Purposeful activities are volitional acts by
> which the non-domiciliary avails itself of the privilege of conducting activities
> within the forum State, thus invoking the benefits and protections of its laws….
> More than limited contacts are required for purposeful activities sufficient to
> establish that the non-domiciliary transacted business in New York.  ***  [A]
> non-domiciliary transacts business when on his [or her] own initiative ... [the
> non-domiciliary] project[s] himself [or herself] into this state to engage in a
> sustained and substantial transaction of business….

*Paterno v. Laser Spine Institute*, 24 N.Y.3d 370, 376-77 (2014) (citations and internal quotations

omitted) (affirming dismissal for lack of personal jurisdiction, where defendants' contacts with

New York insufficient to confer jurisdiction under CPLR 302(a)(1)).

      Due process, in turn, requires both that a non-domiciliary have "certain minimum contacts"

with the forum and "that the maintenance of the suit does not offend traditional notions of fair play

and substantial justice."   *Williams*, 33 N.Y.3d at 528 (quoting *International Shoe Co. v.

Washington*, 326 U.S. 310, 316 (1945)).   If either the statutory or constitutional prerequisite is

lacking, the court is without personal jurisdiction over the non-domiciliary, and the action may not

proceed. *Id*.  What's more, "[o]n a motion to dismiss pursuant to CPLR 3211(a)(8), *the plaintiff

has the burden of presenting sufficient evidence, through affidavits and relevant documents, to

demonstrate jurisdiction*." *Coast to Coast Energy, Inc. v. Gasarch*, 149 A.D.3d 485, 486 (1st Dep't

2017) (emphasis added) (granting motion to dismiss, where plaintiff failed to carry burden of

pleading purposeful activities in New York sufficient to establish jurisdiction under CPLR

302(a)(1)).

8

Here, Plaintiff fails to make *even a single conclusory allegation* in support of its motion suggesting personal jurisdiction over the Guarantors under any of the aforementioned long-arm provisions of CPLR 302(a), let alone to establish as a matter of law that the Court has jurisdiction over the Guarantors. In addition, it is not alleged that the Guarantors have any connection to or contacts with New York, whatsoever, *see Paterno*, 24 N.Y.3d at 376-77; *Williams*, 33 N.Y.3d at 528, and, indeed, they do not. Venice Beach is a California limited liability company located in California, which owns real estate in California, and Pledge Co. is a Rhode Island corporation located in Rhode Island, which holds a membership interest in the Company. Rafaelian Aff. ¶¶ 3-4. Notably, the Guaranty, while governed by New York law, does not contain any forum selection clause nor does it otherwise provide for jurisdiction in New York for claims arising thereunder. *See* Ex. B to Plaintiff's Motion.

Quite simply, Plaintiff has failed to carry its burden of demonstrating a statutory basis for personal jurisdiction over the Guarantors, under CPLR 302(a), and a constitutional basis for such jurisdiction, grounded in sufficient minimum contacts of the Guarantors with the forum and consistent with traditional notions of fair play and substantial justice. As a result, Plaintiff's claims as against the Guarantors must be dismissed pursuant to CPLR 3211(a)(8).

## II.     The Dismissal or Stay of this Action in Favor of the District Court Action Is Appropriate Due to the Earlier-Commenced District Court Action

Pursuant to CPLR 3211(a)(4), this Court may dismiss or stay an action where "[t]here is another action pending between the same parties with the same cause of action in a court of any state or the United States; the court need not dismiss upon this ground but may make such order as justice requires…." Dismissal of an action under CPLR 3211(a)(4) is within the discretion of the trial court. *Simonetti v. Larson*, 44 A.D.3d 1028, 1028 (2d Dep't 2007) ("[a] court has broad discretion as to the disposition of an action when another action is pending and may

9

dismiss one of the actions where there is a substantial identity of the parties and causes of action.").  Dismissal is warranted "where there is a substantial identity of the parties for the same cause of action, … the two actions must be 'sufficiently similar' and the relief sought must be 'the same or substantially the same'." *Montalvo v. Air Dock Systems*, 37 A.D.3d 567, 567 (2d Dep't 2007).

This Court should dismiss the present action because of the pendency of the District Court Action under CPLR 3211(a)(4).  The District Court Action involves all parties to this action and contains claims that will necessarily resolve the sole cause of action asserted in this action.  *See* Ex. E to Rafaelian Aff.; *see also* Rafaelian Aff. ¶¶ 32-34.  The District Court Action is the more complete action, with all affected parties participating and their respective claims, rights and obligations being resolved or capable of being resolved therein (*see id.*), which further supports the propriety of dismissal.  *See Barringer v. Zgoda*, 91 A.D.2d 811, 811 (3d Dep't 1982) ("[T]he fact that there are some additional parties in the District Court action, thus possibly permitting broader relief there than in the instant action, makes the dismissal of the counterclaim herein particularly appropriate"); *see also JC Mfg., Inc. v. NPI Electric, Inc.*, 178 A.D.2d 505, 505 (2d Dep't 1991) (holding existence of pending contract action between the parties warranted dismissal of claims raised in counterclaim and third-party cause of action; pleadings in both actions were based on same contractual agreements and arose out of same actionable wrongs, and there was substantial identity of the parties).

Dismissing this action would advance the public policy considerations behind CPLR 3211(a)(4) by avoiding piecemeal, duplicative litigation between the parties and eliminating the possibility of inconsistent results, and by not burdening this Court with adjudicating one small piece of a much larger and more complex corporate restructuring that involves citizens of other

10

4824-6691-8860.6

states over which this Court in some instances lack jurisdiction, and transactions and occurrences that occurred solely in other states having no connection to this forum. *See, e.g.,* Rafaelian Aff. ¶¶ 2-34.

In the alternative, if this Court determines dismissal is inappropriate based on the existence of the District Court Action, it should nonetheless exercise its discretion to stay these proceedings during the pendency of the District Court Action pursuant to CPLR 3211(a)(4), as well as pursuant to CPLR 2201. *See* N.Y. Jur. 2d *Actions* § 29 (2008); *Epstein v. Epstein*, 211 A.D.2d 968, 969 (3d Dep't 1995) (Family Court's issuance of stay pursuant to CPLR 2201 pending final determination of Florida divorce/arrearages proceedings was "well within its discretion … since the determination of the validity of the 1990 Florida order of arrearages, as well as the parties' rights and obligations under their divorce decree, are best made by the Florida court."). Indeed, CPLR 2201 states, "[e]xcept where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just." CPLR 3211(a)(4), in turn, provides that, although a party may move to dismiss on the ground that there is another action pending between the same parties for the same cause of action in a court of any state or the United States, the court need not dismiss upon this ground but may make "such order as justice requires."

New York courts will appropriately stay actions where, as here, another action between the same parties and revolving around the same issues is pending in another court, since doing so avoids the risk of inconsistent adjudications, duplication of proof and the potential waste of judicial resources. *See El Greco Inc. v. Cohn*, 139 A.D.2d 615, 616 (2d Dep't 1988) (stay of action was not abuse of discretion pending the outcome of prior action brought where parties were virtually identical, "the issues to be resolved overlap, and, moreover, ... a more

complete disposition of the parties' respective contentions can be obtained" in the pending action; "[a]dditionally, imposition of stay avoided risk of inconsistent adjudications, duplications of proof, and potential waste of judicial resources").

As described above, the District Court Action is the more complete action and will resolve *all* outstanding claims, issues, and disputes between Lion Capital, the Company and Ms. Rafaelian related to the Restructuring, including but not limited to those raised herein relating to the Note and Guaranty. (*Supra*). Rhode Island is where the Company is headquartered, the forum where the conduct at issue occurred, as well as where Ms. Rafaelian executed the subject Restructuring agreements, including the Note and Guaranty. *See* Rafaelian Aff. ¶¶ 2, 6-7, 14-15, 17, 19-20, 24-26. Conversely, this action will not resolve nearly all the matters at issue in the District Court Action (*see* Ex. E to Rafaelian Aff. ¶¶ 54-97) and poses the risk of inconsistent judgments, specifically as it relates to the Note and Guaranty. The opportunistic effort by Plaintiff to carve out the Note and Guaranty from the balance of the much broader, inextricably intertwined dispute regarding the entire Restructuring pending in the District Court Action should not be permitted by the Court.

Any assertion by Lion Capital that New York General Obligations Law § 5-1402 directs a different result is misplaced. Indeed, the Defendants are seeking a dismissal and/or stay under CPLR 3211(a)(4) and are not seeking a dismissal or a stay on *forum non conveniens* grounds. *See AIG Fin. Prods. Corp. v. Penncara Energy, LLC*, 83 A.D.3d 495, 497 (1st Dep't 2011) (holding New York General Obligations Law § 5-1402 does not preclude dismissal under CPLR 3211(a)(4) based on a more complete action having been filed in another jurisdiction, as CPLR 3211(a)(4) is not a motion based on lack of jurisdiction or *forum non conveniens*). In addition, the fact that the Guaranty does not contain a forum selection clause designating New York as the forum for a

4824-6691-8860.5

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 21 of 32 PageID #: 623

dispute arising thereunder (*see* Ex. B to Plaintiff's Motion), further bars application of § 5-1402 to

the Guaranty. *See, e.g., AIG Fin. Prods.*, 83 A.D.3d at 496 ("[New York General Obligations Law

§] 5-1402 permits parties to maintain an action in New York state courts pursuant to a contractual

agreement providing for a choice of New York law *and forum* in cases involving $1 million or

more.") (emphasis added); N.Y. Gen. Oblig. L. § 5-1402(1) ("…[A]ny person may maintain an

action or proceeding against a foreign corporation, non-resident, or foreign state where the action

or proceeding arises out of or relates to any contract, agreement or undertaking for which a choice

of New York law has been made in whole or in part … *and (b) which contains a provision or

provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction

of the courts of this state.*") (emphasis added).

       Furthermore, a court may, in its discretion, decline to enforce a forum selection clause

where to do so would be, among other things, unreasonable. *See LSPA Enter., Inc. v. Jani-King

of N.Y., Inc.*, 31 A.D.3d 394, 395 (2d Dep't 2006) ("A contractual forum selection clause is prima

facie valid and enforceable unless it is shown by the challenging party to be *unreasonable*, unjust,

in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in

the selected forum would be so gravely difficult that the challenging party would, for all practical

purposes, be deprived of its day in court.") (emphasis added).

       For the reasons set forth above, it would be entirely unreasonable to enforce the limited

forum selection clause contained in the Note (*see* Ex. A to Plaintiff's Motion ¶ 17), as doing so

would result in the piecemeal litigation of claims all arising from the same transaction or conduct

occurring in Rhode Island, where the Company is headquartered. *See, e.g.,* Rafaelian Aff. ¶¶ 2-

34.  Indeed, none of the operative master Restructuring agreements even provide for New York

law or forum.  Specifically, the Term Sheet, Investor Agreement and LLC Agreement each provide

13

for the application of Delaware law.  *See* Ex. A to Rafaelian Aff. at p. 7; Ex. D to Rafaelian Aff. §

5(d); Ex. B to Rafaelian Aff. ¶ 14.9.  In addition, the Note and Guaranty were executed in Rhode

Island, and the fraudulent conduct alleged in connection with its execution occurred in Rhode

Island (*see* Rafaelian Aff. ¶¶ 14, 17, 19-26).  *See U.S. Mdse., Inc. v. L&R Distribs., Inc.*, 122

A.D.3d 613, 614 (2nd Dep't 2014) (finding a forum selection clause unreasonable and

unenforceable where "neither the parties nor the agreement has any connection to the State of

Delaware: none of the parties is located in Delaware, the nondisclosure agreement was not

executed in Delaware, and performance of the agreement was not to take place in Delaware.")

  Any contention by Lion Capital that it or its related entities or principals, including Lydon

Lea, are not subject to personal jurisdiction in Rhode Island, such that the pendency of the District

Court action should be ignored or minimized by this Court, is entirely without merit.  Lion Capital

purposely availed itself of the privileges of doing business in Rhode Island when its principals,

including Mr. Lea and Mr. Guirgis, traveled routinely to Rhode Island specifically to conduct

meetings at the Company headquarters in connection with Lion Capital's management and

restructuring of the Company.  Rafaelian Aff. ¶¶ 6-7, 13, 22-25.  Indeed, pursuant to the Term

Sheet, Lion Capital has taken "control over strategic and operational decisions of the Company,"

a company headquartered in East Greenwich, Rhode Island to which its principals routinely travel

to attend meetings.  Ex A. to Rafaelian Aff. at p. 2; Rafaelian Aff. ¶¶ 2, 6-7, 13, 22-25.  Rhode

Island's long-arm statute, R.I.G.L. § 9-5-33, provides for the exercise of jurisdiction over

nonresident individuals and corporations to the greatest extent allowed by constitutional due

process limits. *Almeida v. Radovsky*, 506 A.2d 1373, 1374 (R.I. 1986).  Thus, while the District

Court will determine these jurisdictional issues based on the motions before it now, it is

14

4824-6691-8860.6

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 23 of 32 PageID #: 625

indisputable that Lion Capital and its principals are subject to personal jurisdiction in the District Court Action.

Accordingly, in the event the Court elects not to dismiss or stay this action, there will be duplicative litigation, the parties will be unfairly forced to participate in two actions, judicial resources will be wasted, and there will be a risk of inconsistent results.

### III. Plaintiff's Motion for Summary Judgment in Lieu of Complaint Must Be Denied

#### A. The Note and Guaranty Are Intertwined with the Restructuring Agreements, Making their Disposition Inappropriate under CPLR 3213

It is well-settled that a motion for summary judgment in lieu of complaint must be denied where the promissory note being sued upon is intertwined with a business transaction governed by a separate agreement. *Lorber v. Morovati*, 83 A.D.3d 799, 800 (2d Dep't 2011) ("As the defendants' [separate] action to recover damages for breach of contract and fraud relating to the purchase agreement is sufficiently intertwined with the plaintiffs' action to recover on the promissory note, summary judgment [pursuant to CPLR 3213] should have been denied"); *Delmastro v. Rescue Carting Corp.*, No. 41653-2010, 2011 WL 1212735, at *1 (Sup. Ct. N.Y. Cnty. Mar. 22, 2011)("Where a promissory note, or guaranty, is intertwined as in this case, with a purchase agreement and issues concerning the agreement are raised, the use of CPLR § 3213 is simply inappropriate."); *see Slavin v. Victor*, 168 A.D.2d 399, 399 (1st Dep't 1990) ("Promissory notes given in exchange for purchase of a business cannot be viewed in a vacuum where genuine issues of fact exist as to whether the transaction was induced by misrepresentation . . . , even where the obligation is termed unconditional.").

15

INDEX NO. 652546/2020
RECEIVED NYSCEF: 09/29/2020

Here, the Note and Guaranty were unequivocally given and executed in connection with, and as a mere component part of, the Restructuring of the Company. Specifically, the Note, Guaranty, Investor Agreement, Second Lien Term Loan and LLC Agreement were each executed contemporaneously on September 13, 2019, pursuant to the Term Sheet for the Restructuring of the Company and as set forth in the Investor Agreement. Rafaelian Aff. ¶ 14; *see* Exs. A-B to Plaintiff's Motion; Exs. A-D to Rafaelian Aff. The Guaranty is Exhibit C to the Note (*see* Ex. A to Plaintiff's Motion at pp. 28-34), which together with the Investor Agreement, LLC Agreement, and Second Lien Term Loan form the Restructuring Agreements, as specifically set forth in the Investor Agreement. *See* Ex. D to Rafaelian Aff. at p. 1. Section 5(b) of the Investor Agreement provides "[t]his Agreement, together with the other Transaction Agreements, represents the entire understanding and agreement between the Parties with respect to the subject matter hereof …." *Id*. § 5(b). This further reinforces the unavoidable conclusion that the Note and Guaranty are merely two documents that are part of a much broader, complex Restructuring and, therefore, that the parties' rights and obligations under the Note and Guaranty cannot be litigated piecemeal and out of context in this action.

### B. The Note and Guaranty Are Unenforceable due to Failure of Consideration

Summary judgment on Plaintiff's claims under the Note and Guaranty pursuant to CPLR 3213 is not only inappropriate because they are inextricably intertwined with the Restructuring Agreements, but also because the Note and Guaranty are entirely unenforceable for lack of consideration. Indeed, the Investor Agreement specifically provides that the performance of the New Product Funding under Paragraph 3(b) thereof is consideration for, among other things, the obligations under the Note and Guaranty. Specifically, Page 1 of the Investor Agreement provides: "in exchange and consideration for the Parties entering into the Transaction Agreements and Lion

16

4824-6691-8860.5

making the loan to the Founder pursuant to the Lion-Founder Note, the Parties have agreed to enter

into this Agreement." Ex. D to Rafaelian Aff. at p. 1.  In addition, page 1 of the Guaranty provides

"[i]n consideration of the substantial direct and indirect benefits derived by Guarantors from the

transactions under the Underlying Agreement...Guarantors, hereby agree as follows."  Ex. B to

Plaintiff's Motion at p. 1.

The New Product Funding was essentially the only consideration Ms. Rafaelian received

under the Restructuring Agreements – a transaction whereby her equity interest was reduced from

60% to 41% for no compensation, she ceded operational control to Lion Capital and she invested

$2 million of her own funds and executed a $5 million promissory note in favor of Lion Capital.

Rafaelian Aff. ¶¶ 11-26; Ex. A to Rafaelian Aff. at pp. 1-2; *see* Ex. D to Rafaelian Aff. ¶ 3(b).

Courts have routinely held that summary judgment under CPLR 3213 is improper when there is a

claim for lack of consideration under a purchase or similar business agreement intertwined with a

promissory note.  *See A+ Assocs. v. Naughter*, 236 A.D.2d 655, 656 (3d Dep't 1997) ("[w]e agree

with defendants that a significant portion of the consideration that Naughter was to receive in

exchange for the purchase price was plaintiff's covenant not to compete.  As such, the promissory

note was inextricably intertwined with the obligations contained in the purchase agreement  and,

therefore, summary judgment was inappropriately granted."); *Tibball v. Catalanotto*, 269 A.D.2d

386, 387 (2d Dep't 2000) ("[w]e agree with the Supreme Court that the promissory note and the

purchase agreement are sufficiently intertwined to render summary judgment on the note

premature."); *Eurotech Dev. v. Adirondack Pennysaver*, 224 A.D.2d 738, 739 (3d Dep't 1996)

("[i]n this matter, the purchase agreement and promissory note are sufficiently 'intertwined' to

render the grant of summary judgment on the note premature.  It appears that defendants may be

17

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 26 of 32 PageID #: 628

entitled to rescission of the purchase agreement if their allegations of fraud in the inducement or

failure of consideration can be proven.").

       Here, Ms. Rafaelian was terminated from the Company in May of 2020 without any New

Product Funding having been provided.  Rafaelian Aff. ¶ 31. Ms. Rafaelian would never have

agreed to the Restructuring, which included her execution of the Note and Guaranty, if she knew

the Company would not, or could not, provide her New Product Funding.  *Id*. ¶ 26.

### C.    The Evidence of Fraud in the Inducement with Respect to the Note and Guaranty Requires Denial of Plaintiff's Motion under CPLR 3213

       In addition to lack of consideration, each of Defendants have claims for fraud against Lion

Capital, as the Note and Guaranty were entered into by Defendants based upon Lion Capital's

representation and/or failure to disclose that the Company would not be able to provide the New

Product Funding.  Ms. Rafaelian executed the Note and Guaranty and invested an additional $2

million in the Company specifically so that the Company would be able to perform its obligations

under the Restructuring agreements, which included the New Product Funding.  Rafaelian Aff. ¶¶

21-26.  "A contractual promise made with the undisclosed intention not to perform it constitutes

fraud and, despite the so-called merger clause, the plaintiff is free to prove that he was induced by

false and fraudulent misrepresentations to assign his patents and execute the agreements."  *Sabo

v. Delman*, 3 N.Y.2d 155, 162 (1957).

       Indeed, the New Product Funding was critical for Ms. Rafaelian, which she reasonably

relied upon and without which she would never would have agreed to the Restructuring nor signed

any of the related documents, including the Note.  Rafaelian Aff. ¶¶ 11-26. *See Regal Limousine,

Inc. v. Allison Limousine Service, Ltd.*, 136 A.D.2d 534, 535 (2d Dep't 1988) ("[t]he customer list

referred to in the parties' agreement for the sale of Allison's limousine business formed an integral

part of the proffered consideration, and, as such, allegations of  fraudulent misrepresentations

18

4824-6691-8860.6

regarding its nature preclude summary judgment, despite the presence of disclaimers and merger clauses within the agreement").

In addition, there is no disclaimer or waiver provision which bars Defendants' assertion of defenses of lack of consideration or fraud.  Specifically, the Note does not contain any waiver of defenses or other disclaimer whatsoever (*see* Ex. A to Plaintiff's Motion), and, thus, the sworn averments of fraud and breach in the Rafaelian Affidavit are sufficient to defeat summary judgment.  *Hobart v. Schuler*, 55 N.Y.2d 1023, 1024 (1982); (affirming order denying summary judgment on a promissory note on the grounds that "the only inference to be drawn from a fair reading of defendant's affidavit is that defendant has asserted that plaintiffs knew the statements to be false when made.").  The waiver language contained in the Guaranty (*see* Ex. B to Plaintiff's Motion §§ 2-3) is wholly inapplicable to the defenses alleged by the Defendants because the defenses stem from lack of consideration and fraud contained in the Transactions Agreements themselves.  *See MCC Funding, LLC v. Diamond Point Enters, LLC*, No. 500815/2011, 2012 WL 2537893, at *6 (Sup. Ct. Kings Cnty. June 25, 2012) (refusing to enforce waiver provision in loan agreement barring counterclaim for fraud where borrower alleged undisclosed intention of lender not to provide funding as represented in the loan agreement).

### D.    The Guaranty Is Not an Instrument for the Payment of Money Only

The Guaranty cannot be enforced through the CPLR 3213 procedure. "A guaranty of both payment and non-monetary performance, merged in a single document, cannot be enforced through  the CPLR  3213 procedure."   *Country  Bank  v.  East  Harlem  Estates  LLC*, No. 654305/2019, 2020 WL 3451877, at *3 (Sup. Ct. N.Y. Cnty. June 24, 2020).  Indeed, the accelerated relief afforded under CPLR 3213 is proper only where the action is based upon "an instrument for the payment of money only."  CPLR 3213.

4824-6691-8860.5

Case 1:20-cv-00247-MSM-PAS   Document 33   Filed 10/13/20   Page 28 of 32 PageID #: 630

Here, the Guaranty on its face purports to backstop the performance of conditions and obligations in addition to the payment of money:

> Guarantors absolutely, unconditionally and irrevocably guarantee, jointly and severally, as primary obligors and not merely as sureties, the full and punctual **payment and performance** of all present and future **obligations, liabilities, covenants and agreements** required to be observed and performed or paid or reimbursed by Obligor **under or relating to the Underlying Agreement**, plus all costs, expenses and fees (including the reasonable fees and expenses of the Beneficiaries's counsel) in any was relating to the enforcement or protections of Beneficiary's rights hereunder or thereunder (collectively, the "Obligations").  (emphases added).

Ex. B to Plaintiff's Motion § 1.  Accordingly, the Guaranty purports to backstop "payment and performance" of all obligations and agreements under or *relating to* the Note (the Note is defined as the Underlying Agreement in the Guaranty (*see id*. at p. 1)).  Such an undertaking clearly takes the Guaranty beyond the parameters of CPLR 3213, as it provides for payment and non-monetary performance merged in a single document.

First, is it impossible to ascertain what the Guarantors purportedly guaranteed from the face of the Gauranty.  In order to know what obligations are provided for in Section 4 of the Note, one must refer to the Second Lien Debt Facility, as defined in the LLC Agreement.  Specifically, Section 4 of the Note obligates the borrower to ambiguously "make a capital contribution to PledgeCo." for an unspecified amount. Ex. A to Plaintiff's Motion § 4.  Section 4 further provides, "[t]he proceeds of the Loan shall be used by the Borrower immediately upon receipt solely to make a capital contribution to PledgeCo, with PledgeCo immediately using such capital contribution to fund a portion of a second lien term loan to Alex and Ani, LLC (the "Second Lien Term Loan")."  *Id*.  However, it is impossible to ascertain the amount of the capital contribution required to be made, or the amount needed for Pledge Co. to fund a portion of the Second Lien Term Loan pursuant to the Second Lien Debt Facility.  A review of the Term Sheet provides the amount of

20

the funding required for Ms. Rafaelian to contribute is $7 million and not the $5 million proceeds amount set forth in the Note. Ex. A to Rafaelian Aff. at p. 1. This evident need to refer to another document or agreement to determine the nature and extent of the Guarantors' obligations under the Guaranty demonstrates that judgment cannot be rendered here on Plaintiff's claims arising under the Guaranty. *See Mfrs. Hanover Trust Co. v. Hixon*, 124 A.D.2d 488, 489 (1st Dep't 1986) (reversing granting of CPLR 3213 motion where note sued upon required reference to mortgage for certain terms, such as the definition of "default").

A guarantee requiring both payment and performance is not a proper predicate instrument for a streamlined motion. *See, e.g., Dresdner Bank AG. v. Morse/Diesel, Inc.*, 115 A.D.2d 64, 68 (1st Dep't 1986) (where the guarantee contained obligations beyond the payment of money, it did not qualify for disposition under CPLR 3213); *Paine Webber Jackson & Curtis, Inc. v. Aronson*, 115 A.D.2d 355, 356 (1st Dep't 1985) ("[w]here the action is founded on a document which, although calling for the payment of money, also requires performance of some other condition, summary judgment pursuant to . . . CPLR 3213 is inappropriate") (citation omitted); *Associated Capital Servs. of N.J. v. Lichtenstein*, 94 A.D.2d 736, 736 (2d Dep't 1983) (CPLR 3213 motion denied when the instrument "goes beyond merely guaranteeing the payment of money").

Second, the obligations and agreements "relating to" the Note are expansive and encompass the collective transaction documents which govern the Restructuring of the Company. Specifically, the Guaranty, as Exhibit C to the Note, is part of the Transaction Agreements, as defined in the Investor Agreement, for the Restructuring of the Company and entered into "in exchange and consideration for" the parties' covenants set forth in the Investor Agreement. Ex. D to Rafaelian Aff. at p. 1. The Investor Agreement provides for a litany of non-monetary performance, including purported obligations with respect to Ms. Rafaelian's employment under

21

4824-6691-8860.6

Section 3 to enter into subsequent agreements for the transfer of intellectual property and to execute agreements for the release of claims and restrictive covenants. *Id.* § 3.

Third, the Note itself provides for a litany of non-monetary performance set forth in Section 9 thereof (Affirmative Covenants), including an obligation to "[k]eep and maintain the Real Property in good condition, repair and working order." Ex. A to Plaintiff's Motion § 9. The Note further requires documentation from the Guarantors affirming that the Transactions (defined as the restructuring of the Company) have been "or will be substantially contemporaneously consummated." *Id.* § 7(e). As such, the use of the summary procedure set forth in CPLR 3213 is inappropriate, and Plaintiff's motion must therefore be denied. *See PDL Biopharma, Inc. v. Wohlstadter*, 147 A.D.3d 494, 494-95 (1st Dep't 2017) (holding guaranty was not instrument for payment of money only under CPLR 3213 where guaranty also guaranteed performance of obligations which required resort to extrinsic documents to define).

## CONCLUSION

As a result of the foregoing, Defendants' cross-motion under CPLR 3211(a)(4), 3211(a)(8), and 2201 seeking dismissal or a stay of this action should be granted in favor of the pending District Court Action and, in the event such relief is not granted and this action is permitted to proceed on the merits, Plaintiff's motion for summary judgment under CPLR 3213 should be denied.

Dated: September 29, 2020

**KALBERER LLP**

By: */s/ Kurt T. Kalberer II*
    Kurt T. Kalberer II
7 World Trade Center
250 Greenwich Street, 46th Floor
New York, New York 10004
(212) 266-0044
kkalberer@kalbererlaw.com
*Co-Counsel for Defendants*

22

**NIXON PEABODY LLP**


By:   */s/ Christopher J. Porzio*
       Christopher J. Porzio
       Matthew Forzano
50 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 832-7500
cporzio@nixonpeabody.com
mforzano@nixonpeabody.com
*Co-Counsel for Defendants*

23

4824-6691-8860.6

INDEX NO. 652546/2020
RECEIVED NYSCEF: 09/29/2020

## RULE 17 CERTIFICATION

   I hereby certify, pursuant to Rule 17 of the Rules of the Commercial Division, that the foregoing Memorandum of Law in Support of Defendants' Cross-Motion to Dismiss or Stay the Proceeding and in Opposition to Plaintiff's Motion for Summary Judgment in Lieu of Complaint was prepared on a computer using Microsoft Word. The total of number of words in this document inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, and signature block is 6,978 words.

                 */s/ Christopher J. Porzio*
                  Christopher J. Porzio, Esq.

24

4824-6691-8860.6