## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CAROLYN RAFAELIAN, an individual, ALEX AND ANI PLEDGE CO., a Rhode Island Corporation, and VENICE BEACH WALK, LLC, a California Limited Liability Company,<br><br>                    Plaintiffs,<br><br>          - v -<br><br>LC A&A HOLDINGS, INC., a Delaware Corporation, LC A&A INTERMEDIATE INVESTORS, LLC, a Delaware Limited Liability Company, LYNDON LEA, an individual, A AND A SHAREHOLDING CO., LLC, a Delaware Limited Liability Company, and ROBERT TRABUCCO, an individual,<br><br>                    Defendants. | 1:20-CV-00247-MSM-PAS |

## REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.    The Complaint Fails to State a Claim for Securities Fraud. ................................ 2

II.   The Complaint Fails to State a Claim for Control Person Liability. ................... 8

III.  The Complaint Fails to State a Claim for Common-Law Fraud........................ 9

IV.   Even If the Complaint Stated a Securities or Common-Law Fraud Claim,
      Plaintiffs Released Those Claims in the IMA........................................................ 11

V.    The Complaint Fails to State a Claim for Breach of Contract............................ 12

VI.   The Declaratory Judgment and Injunctive Relief Claims Are Not Properly Before
      This Court and Have Already Been Adjudicated Elsewhere.............................. 15

VII.  This Court Lacks Personal Jurisdiction over the Lion Defendants.................... 16

CONCLUSION.................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACA Fin. Guar. Corp.* v. *Advest, Inc.*,
    512 F.3d 46 (1st Cir. 2008).................................................................................................8

*Alki Partners, L.P.* v. *Vatas Holding GmbH*,
    769 F. Supp. 2d 478 (S.D.N.Y. 2011).............................................................................5

*BNSF Ry. Co.* v. *Tyrrell*,
    137 S. Ct. 1549 (2017)...................................................................................................16

*Calderon Serra* v. *Banco Santander P.R.*,
    747 F.3d 1 (1st Cir. 2014)...........................................................................................3, 4

*Camilo* v. *Nieves*,
    No. CV 10-2150 (DRD), 2012 WL 12995632 (D.P.R. Mar. 31, 2012) ...................7

*In re Combustion Eng'g, Inc.*,
    366 F. Supp. 2d 224 (D. Del. 2005)..............................................................................13

*Daniels Agrosciences, LLC* v. *Ball DPF, LLC*,
    No. CA 13-268 ML, 2013 WL 5310208 (D.R.I. Sept. 20, 2013)............................16

*Feinman* v. *Schulman Berlin & Davis*,
    677 F. Supp. 168 (S.D.N.Y. 1988) ..............................................................................5

*Greebel* v. *FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999)..........................................................................................8

*Grella* v. *Salem Five Cent Sav. Bank*,
    42 F.3d 26 (1st Cir. 1994)...........................................................................................15

*H-M Wexford LLC* v. *Encorp, Inc.*,
    832 A.2d 129 (Del. Ch. 2003).....................................................................................10

*Hiller & Arban, LLC* v. *Reserves Mgmt., LLC*,
    No. CV N15C-02-161 WCC, 2016 WL 3678544 (Del. Super. Ct. July 1,
    2016) ...............................................................................................................................9

*Kader* v. *Sarepta Therapeutics, Inc.*,
    887 F.3d 48 (1st Cir. 2018).............................................................................................5

*Kelly* v. *Riverside Partners, LLC*,
    397 F. Supp. 3d 75 (D. Mass. 2019), *aff'd*, 964 F.3d 107 (1st Cir. 2020)...............11

ii

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Keystone Assocs. LLC* v. *Barclays Bank PLC*,
   No. CV 19-796 (MN), 2020 WL 109008 (D. Del. Jan. 9, 2020)...........................................10

*Kosovich* v. *Metro Homes, LLC*,
   No. 09 CIV. 6992 (JSR), 2009 WL 5171737 (S.D.N.Y. Dec. 30, 2009), *aff'd*,
   405 F. App'x 540 (2d Cir. 2010) ...........................................................................................5

*Luce* v. *Edelstein*,
   802 F.2d 49 (2d Cir.1986)........................................................................................................2

*Mehta* v. *Ocular Therapeutix, Inc.*,
   955 F.3d 194 (1st Cir. 2020)....................................................................................................8

*MicroStrategy Inc.* v. *Acacia Research Corp.*,
   No. CIV.A. 5735-VCP, 2010 WL 5550455 (Del. Ch. Dec. 30, 2010) ....................................9

*Miller* v. *New Am. High Income Fund*,
   755 F. Supp. 1099 (D. Mass. 1991), *aff'd sub nom. Lucia* v. *Prospect St. High
   Income Portfolio, Inc.*, 36 F.3d 170 (1st Cir. 1994)..................................................................7

*Negron- Torres* v. *Verizon Commc'ns, Inc.*,
   478 F.3d 19 (1st Cir. 2007)....................................................................................................16

*O'Brien* v. *Progressive Northern Ins. Co.*,
   785 A.2d 281 (Del. 2001) ......................................................................................................12

*In re Phillips Petroleum Secs. Litig.*,
   881 F.2d 1236 (3d Cir. 1989).............................................................................................2, 3

*Progressive Int'l Corp.* v. *E.I. Du Pont de Nemours & Co.*,
   No. C.A. 19209, 2002 WL 1558382 (Del. Ch. July 9, 2002) ................................................11

*Ret. Sys.* v. *Talbots, Inc.*,
   No. CIV.A. 11-10186-NMG, 2013 WL 5348569 (D. Mass. Sept. 23, 2013) .........................7

*Sanchez-Cardona* v. *Corp. Planners, Inc.*,
   895 F. Supp. 26 (D.P.R. 1995)............................................................................................3, 4

*Scritchfield* v. *Paolo*,
   274 F. Supp. 2d 163 (D.R.I. 2003)..........................................................................................5

*Texaco Puerto Rico, Inc.* v. *Medina*,
   834 F.2d 242 (1st Cir. 1987)..................................................................................................15

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Textron, Inc.*,
   811 F. Supp. 2d 564 (D.R.I. 2011)..............................................................................................8

*United Int'l Holdings, Inc.* v. *Wharf (Holdings) Ltd.*,
   210 F.3d 1207 (10th Cir. 2000) ..................................................................................................2

*Wortley* v. *Camplin*,
   333 F.3d 284 (1st Cir. 2003)..................................................................................................2, 4

**STATUTES**

Securities Exchange Act Section 10(b)...............................................................................2, 3, 6, 8

## PRELIMINARY STATEMENT

Three simple and undisputed facts are central to this case.  First, Plaintiff Carolyn Rafaelian and the two Plaintiff entities she controls (the "Guarantors") willingly and unconditionally obligated themselves to repay a $5 million secured promissory note (the "Note") in favor of Defendant LC A&A Holdings, Inc. (the "Lender").  Second, the Note has matured, and neither Rafaelian nor the Guarantors have paid a penny of what they owe.  And finally, the Lender has, just days ago, secured summary judgment against Plaintiffs on the debt in a New York court, the exclusive forum for claims related to the Note.[1]

Rather than face these facts and repay their debt, Plaintiffs filed their Complaint in an attempt to distract, confuse, and muddy the issues, hoping to delay the inevitable consequences of their default on the Note.  But Plaintiffs' core allegations fall far short of establishing claims for securities fraud, common-law fraud, or breach of contract.  Plaintiffs' opposition papers largely ignore the arguments laid out in Defendants' brief, instead relying on the same conclusory allegations recited in their Complaint that are entirely insufficient to state claims for relief.

Plaintiffs' attempt to use this lawsuit as a shield against fulfilling their legal obligations under the Note should not be countenanced.  The Court should dismiss Plaintiffs' claims with prejudice.

---

[1]     The order of the Supreme Court of the State of New York, New York County, Commercial Division, granting LC A&A Holdings, Inc.'s motion for summary judgment in lieu of complaint against Plaintiffs here and denying their cross-motion to dismiss or stay the action is appended as an exhibit to this memorandum of law and is referred to here as "Ex. 5."

## ARGUMENT

## I.   THE COMPLAINT FAILS TO STATE A CLAIM FOR SECURITIES FRAUD.

### A.   Plaintiffs Allege No Material Misrepresentation or Omission.

Plaintiffs do not, and cannot, dispute that a "mere breach of a promise" is not actionable under section 10(b) of the Securities Exchange Act, unless the defendant "makes a specific promise, as part of the consideration for the transfer of securities, to perform an act, while intending not to perform the act." *Wortley* v. *Camplin*, 333 F.3d 284, 294–95 (1st Cir. 2003) (citing *United Int'l Holdings, Inc.* v. *Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1221 (10th Cir. 2000); *see also Luce* v. *Edelstein*, 802 F.2d 49, 55 (2d Cir.1986)).  Here, Plaintiffs have not alleged any such "specific promise" coupled with a concealed present intention not to perform.

The Complaint alleges only that (1) A&A Shareholding agreed in the Investor Matters Agreement (the "IMA") to fund the cost of operations for two new business lines up to a cap of $1 million per year and for a maximum of two years (unless Rafaelian's employment with the Company ended for any reason, in which case the funding obligation ceased), and (2) Trabucco told Rafaelian a few days later that the Company, having just completed a restructuring to avoid liquidation, "lacked the resources" at that particular moment to provide funding.  (Am. Compl. ¶ 36.)  These allegations are not sufficient to plead a material misrepresentation or omission.

Unlike in the cases Plaintiffs cite in support of their claims (Opp. at 12), Plaintiffs have not pleaded factual allegations showing that Defendants had a "secret reservation not to fully perform" when entering into the IMA, *United Int'l Holdings*, 210 F.3d at 1221, or that "[D]efendants made specific promises to induce a securities transaction while secretly intending not to carry them out or knowing they could not be carried out, and that they were not carried out," *Luce*, 802 F.2d at 56.  *In re Phillips Petroleum Secs. Litig.*, cited by Plaintiffs (Opp. at 12), makes clear that "a statement of intent need only be true when made; a subsequent change of intention

2

will not, by itself, give rise to a cause of action under Section 10(b) or Rule 10b-5."  881 F.2d 1236, 1245 (3d Cir. 1989).  Plaintiffs do not plead any facts showing that Defendants never intended to fulfill their promise at the time it was made.  Indeed, even if the Company lacked the financial wherewithal to fund the *maximum amount* immediately after the restructuring, Plaintiffs allege no facts suggesting that the Company did not intend to fulfill its promise in the IMA as soon as it had the financial resources to do so, assuming there were actual operational costs to fund.

B.    **Plaintiffs Allege No Fraud in Connection with the Purchase or Sale of a Security.**

Plaintiffs' securities fraud claim also fails because they do not allege a sufficient connection between the alleged fraud and the purchase or sale of a security.  "The 'in connection with' requirement mandates that the alleged fraud concern the fundamental nature of the [security]: namely, the ***characteristics and attributes*** that would induce an investor to buy or sell the particular [security]."  *Sanchez-Cardona* v. *Corp. Planners, Inc.*, 895 F. Supp. 26, 30 (D.P.R. 1995) (quoting *Kearney* v. *Prudential–Bache Secs., Inc.,* 701 F. Supp. 416, 424 (S.D.N.Y. 1988)) (emphasis added).  While Plaintiffs assert that "[t]he Complaint draws a tight connection between the alleged fraud and the purchase of securities" (Opp. at 13), the Complaint in fact does not make *any* allegation that Defendants lied about the "characteristics and attributes" of the Credit Agreement or the Class A Units Rafaelian received in the restructuring, which are the only "securities" Plaintiffs identify in the Complaint.  (Am. Compl. ¶ 27.)

Citing *Sulkow* v. *Crosstown Apparel, Inc.*, 807 F.2d 33 (2d Cir. 1986), and *Calderon Serra* v. *Banco Santander P.R*., 747 F.3d 1 (1st Cir. 2014), Plaintiffs claim that it is sufficient to meet the nexus requirement that the IMA "is part and part [sic] of a contemporaneous securities transaction which Plaintiff relied upon in entering into the securities transaction."  (Opp. at 13.)  But *Sulkow* and *Serra* stand for no such proposition.  In *Sulkow*, the alleged

3

misrepresentations were *in the agreement that purported to convey the securities*.  807 F.2d at 36–37.  And in *Serra*, the complaint drew "a tight connection between the alleged fraud and the purchase of securities" in alleging that a bank lied about the loans that it used to purchase securities.  747 F.3d at 5.  Here, by contrast, Plaintiffs' alleged misrepresentation is contained in an entirely separate agreement that did not convey the Class A Units or the Credit Agreement and did not make any representations at all about those purported "securities."  (Am. Compl. ¶ 27.)

Plaintiffs allege in a conclusory fashion that "the IMA Agreement expressly obligates the parties to enter into the Credit Agreement, LLC Agreement and Subscription Agreement for the issuance of Class A Units."  (Opp. at 13.)  The IMA on its face does no such thing; it refers to those other agreements in the recitals, but does not create any obligations respecting them.  Even if it did, however, Plaintiffs do not, and cannot, explain how a purported misrepresentation in one agreement that "expressly obligat[ed]" entry into a separate set of agreements, one of which issued securities, constitutes a lie about the "characteristics and attributes" of the securities themselves.  *Sanchez-Cardona*, 895 F. Supp. at 30.

### C.    Plaintiffs Fail to Allege the Requisite Scienter.

The Complaint also fails to allege the scienter required to survive a motion to dismiss.  As Plaintiffs acknowledge (Opp. at 12), a breach of a promise is not actionable as securities fraud unless the promisor made it with a fraudulent intent not to keep the promise.  *Wortley*, 333 F.3d at 294–95.

Plaintiffs point to "an explicit statement from the Company immediately after execution of the restructuring agreements declaring such an inability to perform"; "no performance *whatsoever* during the eight (8) months of Ms. Rafaelian's subsequent employment with the Company"; and "a clear motive not to perform—as Ms. Rafaelian was the intended beneficiary of the New Product Funding if and when her employment with the Company terminated, the

4

Company was sold or in two (2) years following the restructuring."  (Opp. at 15 (citing IMA, ¶ 3(c).)  These allegations are insufficient to plead scienter.

In *Alki Partners, L.P.* v. *Vatas Holding GmbH*, the court held that allegations that a corporation was "undercapitalized" and that its managing director "therefore never intended to perform or was unable to perform as promised" to purchase stock for resale—allegations similar to Plaintiffs' here—were "conclusory" and insufficient to allege the corporation's managing director's scienter.  769 F. Supp. 2d 478, 495 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P.* v. *Windhorst*, 472 F. App'x 7 (2d Cir. 2012).  And "catch-all allegations that defendants stood to benefit from wrongdoing" are insufficient to establish the motive necessary to infer scienter. *Kader* v. *Sarepta Therapeutics, Inc.*, 887 F.3d 48, 60 (1st Cir. 2018) (internal citation and quotations omitted).

*Scritchfield* v. *Paolo*, upon which Plaintiffs rely (Opp. at 15), is inapposite.  In that case, the defendants were alleged to have engaged in an extensive scheme of misrepresentations and falsehoods, several of which they explicitly *conceded* prior to the court's ruling.  The court concluded that the "willful recklessness" of the combined allegations constituted a "sufficiently powerful indicium of scienter to survive dismissal."  274 F. Supp. 2d 163, 189 (D.R.I. 2003) (emphasis omitted).  Plaintiffs' vague allegations here come nowhere close to such willful recklessness.

### D.      Plaintiffs Fail to Allege Justifiable Reliance.

Plaintiffs also fail to allege plausibly that their reliance was justifiable.  Contrary to Plaintiffs' contention (Opp. at 16), justifiable reliance is properly decided on a motion to dismiss where, as here, "any reliance on the [alleged] misstatement[] was unreasonable as a matter of law." *Kosovich* v. *Metro Homes, LLC*, No. 09 CIV. 6992 (JSR), 2009 WL 5171737, at *3-4 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 405 F. App'x 540 (2d Cir. 2010); *see, e.g.*, *Feinman* v. *Schulman Berlin &*

*Davis*, 677 F. Supp. 168, 170–71 (S.D.N.Y. 1988) (dismissing section 10(b) claim under Fed. R. Civ. P. 12(b)(6) because plaintiffs' reliance was "wholly unreasonable").

Rafaelian fails to explain why she was entitled to rely on others to understand the financial condition of the Company she founded and of which she was the CEO and majority shareholder at the time.  She plainly had both the means and, as CEO, the responsibility to conduct her own inquiry and form her own conclusions.  Plaintiffs disingenuously argue that "this is not a case about disclosure of financial information about the Company—the Complaint alleges fraud in connection with an inability to perform an affirmative contract obligation."  (Opp. at 16.)  But the "affirmative contract obligation" alleged is the Company's obligation to *make payments*, and the basis alleged for the purported fraud is that Defendants knew (but failed to disclose) that *the financial condition of the Company* would prevent it from meeting its obligation.  (*See*, *e.g.*, Am. Compl. ¶ 36 ("At the time Mr. Trabucco made this representation, he knew it was false and misleading because the Company lacked the resources to provide the New Product Funding.").)  As the CEO and controlling shareholder of the Company, Rafaelian was ideally situated to assess the Company's finances for herself, and she cannot now blame others for her own failure to do so.

Unable to explain how a CEO entering into a series of restructuring transactions on behalf of her Company could have been justified in remaining ignorant of the Company's financial condition, Plaintiffs claim that their reliance was "reasonable" because it was "expressly bargained. . . for":  Plaintiffs "made the $7 million investment in the Company, in part, specifically to give the Company the ability to provide the New Product Funding."  (Opp. at 16.)  But, putting aside the implausibility of the suggestion that one would invest $7 million in reliance on a conditional right to receive no more than $2 million, the IMA does not condition Plaintiffs'

investment on their receipt of the New Product Funding, and the Complaint does not allege any such condition in any of the restructuring-related agreements.

###   E.   Plaintiffs Fail to Allege Economic Loss or Loss Causation.

Plaintiffs' securities fraud claim also fails to plead loss and loss causation.  Contrary to Plaintiffs' contention (Opp. at 16), loss causation is indeed an element of Plaintiffs' claim, and failure to plead that element is a proper ground for dismissal on a motion to dismiss.  *See., e.g.*, *Miller* v. *New Am. High Income Fund*, 755 F. Supp. 1099, 1107–08 (D. Mass. 1991), *aff'd sub nom. Lucia* v. *Prospect St. High Income Portfolio, Inc.*, 36 F.3d 170 (1st Cir. 1994); *Washtenaw Cnty. Emps.' Ret. Sys.* v. *Talbots, Inc.*, No. CIV.A. 11-10186-NMG, 2013 WL 5348569, at *27 (D. Mass. Sept. 23, 2013).

Plaintiffs allege without any support that "it is not necessary in the context of privately held companies to alleged [sic] the stock price or value of the security itself declined in value."  (Opp. at 17.)  Not so.  To state a claim, Plaintiffs must plead that the alleged misrepresentations proximately caused "their investment" in a privately held company to "decline[] in value."  *Camilo* v. *Nieves*, No. CV 10-2150 (DRD), 2012 WL 12995632, at *14 (D.P.R. Mar. 31, 2012).  Plaintiffs fail to allege any decline in value of the Credit Agreement or the Class A Units proximately caused by the alleged failure to provide the promised New Product Funding.  Nor would any such allegation be plausible where Plaintiffs allege that the New Product Funding was intended to confer a benefit on Rafaelian personally, not on the Company, and there is no conceivable scenario in which the failure to provide that funding would cause a decline in value of any debt or equity interest in the Company.  As Plaintiffs admit, the New Product Funding was intended "to provide Ms. Rafaelian with a viable platform to launch a new business should Lion Capital remove Ms. Rafaelian from her continued employment with the Company after the restructuring" (Opp. at 5), not to benefit the Company.

For all these reasons, the securities fraud claim should be dismissed.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR CONTROL PERSON LIABILITY.

Plaintiffs also fail to state a claim for control person liability.  Contrary to Plaintiffs'
contention (Opp. at 17), courts properly dismiss claims of control person liability on a motion to
dismiss where, as here, the securities fraud claims underlying the claim for control person liability
are meritless.  *See, e.g.*, *ACA Fin. Guar. Corp.* v. *Advest, Inc.*, 512 F.3d 46, 67–68 (1st Cir. 2008)
(affirming dismissal of control person liability claim where there was no underlying 10b-5
violation, because "[t]he plain terms of section 20(a) indicate that it only creates liability derivative
of an underlying securities violation"); *Mehta* v. *Ocular Therapeutix, Inc.*, 955 F.3d 194, 211 (1st
Cir. 2020) ("[B]ecause the complaint does not state a securities fraud claim under Section 10(b)
and Rule 10b-5, plaintiffs' derivative claim under Section 20(a) too must fail"); *Greebel* v. *FTP
Software, Inc.*, 194 F.3d 185, 207 (1st Cir. 1999) ("Because plaintiffs' complaint does not
adequately allege an underlying violation of the securities laws, the district court was correct to
dismiss the Section 20(a) claim.").

Even if Plaintiffs' securities fraud claims were sufficiently pled, Plaintiffs have not
adequately alleged control.  Plaintiffs' allegations that Lea was the principal and managing partner
of Lion Capital, which owned a minority stake in the Company (Am. Compl. ¶¶ 16, 17), are
insufficient to show that Lea was a control person of the Company.  *See In re Textron, Inc.*, 811
F. Supp. 2d 564, 575 (D.R.I. 2011) (granting motion to dismiss control person liability claim on
basis that "[a]n allegation that a defendant is a member of a corporation's board of directors,
however, is insufficient by itself to establish that the director was a control person.")  Likewise,
Plaintiffs' allegations that Trabucco acted at the direction of Lion Capital (Am. Compl. ¶ 18) are
insufficient; Trabucco cannot have been a control person by virtue of being Lion Capital's agent

when Lion Capital itself was only a minority shareholder.  Indeed, the only "control person" identified in the Complaint was *Rafaelian*—as the Complaint expressly pleads, she, not Lea or Trabucco, or Lion Capital, was the Company's "*majority and controlling equity holder*" and its CEO at the time of the alleged securities fraud.  (Am. Compl. ¶ 14 (emphasis added).)

For these reasons, the control person liability claim should be dismissed.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM FOR COMMON-LAW FRAUD.

### A.   Plaintiffs' Fraud Claim Fails Because It Alleges a Mere Breach of Promise.

Plaintiffs' allegation that Defendants "did not intend to uphold [their] contractual obligation" is insufficient to state a claim for fraud.  *Hiller & Arban, LLC* v. *Reserves Mgmt., LLC*, No. CV N15C-02-161 WCC, 2016 WL 3678544, at *4 (Del. Super. Ct. July 1, 2016).  Plaintiffs do not contest that a fraud claim based on the promise of a future act may proceed "only where the Complaint alleges *particularized* facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it."  *MicroStrategy Inc.* v. *Acacia Research Corp.*, No. CIV.A. 5735-VCP, 2010 WL 5550455, at *15 (Del. Ch. Dec. 30, 2010) (emphasis added).  No such facts are alleged here.

As with Plaintiffs' securities fraud claim, Plaintiffs' allegations of "an explicit statement from the Company immediately after execution of the restructuring agreements declaring such an inability to perform," "no performance whatsoever during the eight (8) months of Ms. Rafaelian's subsequent employment with the Company," and "a clear motive not to perform—as Ms. Rafaelian was the intended beneficiary of the New Product Funding if and when her employment with the Company terminated" (Opp. at 19) fail to state a claim for common-law fraud.  The Complaint alleges no facts showing that the Company *never* intended to keep its promise; it alleges merely that one time, "within days" of a restructuring, Trabucco told Rafaelian that the Company could not at that moment afford to fund the new product lines.  (Am. Compl.

9

¶ 36.) And, as explained more fully in Part V *infra*, Plaintiffs do not allege facts establishing that the Company failed to perform its actual funding obligation for eight months. Section 3(b) of the IMA ties the **maximum** funding obligation of $1 million per year to the cost of funding ***the operations*** of the Current State and Tri-Alchemy business lines. (Ex. 4 § 3(b).) Under the express terms of the IMA, the Company had no obligation to provide ***any*** funding during this eight-month period if Plaintiffs incurred no operating expenses for the new product lines during that period, and the Complaint alleges no such operating expenses—to the contrary, it describes Current State and Tri-Alchemy as "non-operational." (Am. Compl. ¶ 47.) Finally, allegations that Defendants had a motive to benefit the Company are insufficient to show that the Company had a concealed intent not to perform under the IMA at the time of signing. *Keystone Assocs. LLC* v. *Barclays Bank PLC*, No. CV 19-796 (MN), 2020 WL 109008, at *4 (D. Del. Jan. 9, 2020) ("[M]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud" (internal quotations omitted)).

Plaintiffs further argue, citing *Swipe Acquisition Corp.* v. *Krauss*, No. CV 2019-0509-PAF, 2020 WL 5015863, at *11 (Del. Ch. Aug. 25, 2020), that they have properly alleged fraud because "the fraud claim seeks damages entirely separate from the breach of contract claim," and damages need not be pled with particularity. (Opp. at 19–20.) That assertion is a *non sequitur*. To begin with, the Complaint's prayer for relief does not in fact distinguish between the damages sought by these two claims. And more importantly, Plaintiffs' damages theory is irrelevant if they have not alleged the other elements of a fraud claim, and they have not.

**B.      Plaintiffs Fail to Allege Reasonable Reliance.**

Contrary to Plaintiffs' contentions, it is perfectly appropriate to grant a motion to dismiss based on a plaintiff's failure to allege reasonable reliance. *See, e.g.*, *H-M Wexford LLC* v.

*Encorp, Inc.*, 832 A.2d 129, 142 (Del. Ch. 2003) (dismissing fraud and misrepresentation claims based on document that contained an explicit disclaimer, on grounds that plaintiff could not claim reasonable reliance); *Progressive Int'l Corp.* v. *E.I. Du Pont de Nemours & Co.*, No. C.A. 19209, 2002 WL 1558382, at *7 (Del. Ch. July 9, 2002) (granting motion to dismiss because "[a] failure of justifiable reliance is fatal to Progressive's fraud, misrepresentation, mutual mistake, and equitable estoppel claims").  Here, Plaintiffs' failure to allege reasonable reliance necessitates dismissal.

Plaintiffs do not deny that Rafaelian, as CEO and majority shareholder of A&A Shareholding, had a duty of care to understand the financial condition of the Company and its ability to provide the New Product Funding.  Plaintiffs have not alleged that anything prevented her from doing so.  For the same reasons that Plaintiffs fail to allege justifiable reliance in the securities context, they also fail to allege reasonable reliance as an element of their common-law fraud claim.

For these reasons, the common-law fraud claim should be dismissed.

## IV.   EVEN IF THE COMPLAINT STATED A SECURITIES OR COMMON-LAW FRAUD CLAIM, PLAINTIFFS RELEASED THOSE CLAIMS IN THE IMA.

Plaintiffs argue that their fraud claims are not released because of the limitation in the release that "the foregoing shall not release the Parties from their respective obligations under the Transaction Agreements."  (Opp. at 21).  But it is a matter of black-letter law that fraud claims do not arise under an agreement; Plaintiffs can only allege fraud outside the four corners of a contract.  *See, e.g.*, *Kelly* v. *Riverside Partners, LLC*, 397 F. Supp. 3d 75, 92 (D. Mass. 2019), *aff'd*, 964 F.3d 107 (1st Cir. 2020).  By definition, Plaintiffs' claims that Rafaelian was fraudulently induced to enter into the Transaction Agreements relate to conduct independent from, and antecedent to, the parties' obligations under the agreements themselves.

And while Plaintiffs point out that the language of section 2 of the IMA, addressing Rafaelian's exculpation of Lion Capital, specifically carves out claims for intentional fraud (Opp. at 22), Rafaelian's general release in section 1, in which she released "any and all Claims" based on facts pre-dating the closing, includes no such carve-out.  (Ex. 4 § 1(a).)

Finally, while Plaintiffs contend that they were fraudulently induced to enter into the IMA (Opp. at 22), the Complaint makes no claim, nor could it, that the release itself was procured by fraud.  The release is fully enforceable, and it bars Plaintiffs' fraud claims.

## V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

In attempting to salvage her breach of contract claim, Rafaelian accuses Defendants of re-writing her Complaint and the IMA—when, in fact, that is precisely what she has done in her opposition brief.

Rafaelian now contends that she "seeks $1 million in damages, a foreseeable amount of New Product Funding *that should have been invested* by the Company to develop the Current State and Tri-Alchemy business lines *in reasonable allotments* during the eight (8) months" of her "post-restructuring employment with the Company."  (Opp. at 24) (emphases added).  But the IMA does not call for an "investment" of $1 million—and, contrary to Rafaelian's claim, the IMA does not simply "provide[] the Company *shall* provide funding."  (*Id.* (emphasis in original).)  Instead, the IMA ties the *maximum* annual funding obligation of $1 million to the cost of funding "*the operations* of the Current State and Tri-Alchemy lines of business."  (Ex. 4 § 3(b) (emphases added).)

Rafaelian's preferred interpretation reads out the language capping the annual funding at $1 million and tying it to the businesses' "operations" and thus violates the principle that "[c]ontracts are to be interpreted in a way that does not render any provisions illusory or meaningless."  *O'Brien* v. *Progressive Northern Ins. Co.*, 785 A.2d 281, 287 (Del. 2001) (citation

omitted).  The plain terms of the IMA do not state that Rafaelian, simply by virtue of working for eight months following the restructuring, was somehow entitled to the maximum $1 million with which A&A Shareholding agreed to annually fund the operations of the Current State and Tri-Alchemy business lines, regardless of their actual cost of operations (if any).  Nor can Rafaelian point to any language in the IMA—let alone any allegation in her Complaint—that required A&A Shareholding to fund the $1 million "in reasonable allotments" over those eight months.  (Opp. at 24).  There is no basis for the Court to read into the IMA this provision suddenly devised by Rafaelian out of whole cloth.

Under Rafaelian's reading of the IMA, it did not matter whether or when she resigned or was terminated after the parties executed the IMA, or whether the new product lines actually incurred any operating costs during that period.  Whether she was employed for several days or several months, whether operating costs incurred were a few hundred dollars or a few hundred thousand—in Rafaelian's telling, she would be entitled to $1 million in all events.  But if that were the case, there would be no need for section 3(b) of the IMA to tie the funding to "*the operations*" of the new business lines or to use the phrase "***up to a total amount*** of $1 million per year."  (Ex. 4  § 3(b)  (emphases added).)  In other words, those terms would become "superfluous"—which is precisely the outcome courts should avoid when interpreting contractual language.  *In re Combustion Eng'g, Inc.*, 366 F. Supp. 2d 224, 231 (D. Del. 2005).  If the parties had intended to give Rafaelian a contractual right to $1 million per year in "reasonable allotments," no matter what, the IMA could have so provided, but it did not.

In the end, Rafaelian cannot point to a single allegation in her Complaint stating that Current State or Tri-Alchemy incurred a single dollar of unfunded operational costs or losses during her post-restructuring tenure.  (*Cf.* Am. Compl. ¶ 47 (alleging that the businesses "remain . .

. non-operational").)  Instead, Rafaelian contends that "such a condition precedent . . . would be waived by the Complaint's allegation that Mr. Trabucco advised Ms. Rafaelian the Company could not afford any New Product Funding."  (Opp. at 25.)  But even accepting her allegation about Mr. Trabucco as true, the Company had a year to meet its obligation to provide the first year of New Product Funding; a statement that the Company "could not afford" funding ***at that particular moment***, at the very beginning of the year, cannot "waive" the condition precedent that the new business lines would incur operating costs in the first instance.  In any case, Rafaelian does not— and cannot—cite any legal support for this "waiver" theory, nor does any language in the IMA support such an interpretation.

Rafaelian also argues that Defendants misconstrue what she alleges to be the breach of section 3(b).  According to Rafaelian, the breach is actually the fact that "the Company was unable to provide *any* amount of funding whatsoever."  (Opp. at 23 (emphasis in original).)  But Rafaelian cannot point to any allegations to support this theory, except for Trabucco purportedly telling her "within days of the September 13, 2019 closing" that "the Company could not afford to provide her any new Product Funding."  (Am. Compl. ¶ 36.)  Nor can she point to any other allegation in the Complaint that she made any further requests for funding during the next eight months of her employment (*see id.* ¶ 46), or that Trabucco rebuffed any such requests after the alleged meeting in mid-September 2019.  And while Rafaelian alleges that Defendants misinterpret Paragraph 36 to mean she was immediately requesting funding "after closing of the transaction" (Opp. at 23), that is exactly what the Complaint itself says in the heading directly preceding Paragraph 36:  "Ms. Rafaelian is Immediately Denied Funding after Closing."  (Am. Compl. at p.8 (emphasis omitted).)

For these reasons, the breach of contract claim should be dismissed.

**VI.    THE DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF CLAIMS ARE NOT PROPERLY BEFORE THIS COURT AND HAVE ALREADY BEEN ADJUDICATED ELSEWHERE.**

Plaintiffs do not and cannot dispute that, as the New York court presiding over the Lender's action on the Note properly held, the Note and the Pledge provide for mandatory, exclusive jurisdiction in the New York courts, and claims related to the parties' obligations under the Note should be—and in fact have been—addressed there.  (Ex. 5 at 1 ("Where, as here, the note has a mandatory New York forum selection clause, the dispute must be resolved in New York[.]"); Ex. 3 § 17(a); Ex. B § 24.)  Instead, Plaintiffs argue, with no explanation or supporting allegations in the Complaint, that the forum selection clause to which they agreed is "entirely unreasonable."  (Opp. at 26.)  But the New York court rejected this argument, and this Court is bound to reject it as well.[2]  Rafaelian is a sophisticated businesswoman, and the other Plaintiffs are entities she controls.  Having agreed to litigate claims relating to the Note in New York, they are bound by their agreement.  (*See* Ex. 5 at 1–2.)

Furthermore, Plaintiffs do not and cannot dispute that declaratory judgments and injunctive relief are remedies, not causes of action.  Plaintiffs allege no cause of action entitling them to declaratory or injunctive relief arising from the Note or any other agreement, and in granting summary judgment for the Lender, the New York court rejected any such claim.[3]

---

[2]    Although a final judgment has not yet been entered in the New York action, once judgment is entered, Plaintiffs will be collaterally estopped from relitigating this issue, which was decided by the New York court and essential to its judgment.  *Texaco Puerto Rico, Inc.* v. *Medina*, 834 F.2d 242 (1st Cir. 1987); *Grella* v. *Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st Cir. 1994).

[3]    Plaintiffs have stipulated to the dismissal without prejudice of the claims for conversion and replevin.  (ECF No. 35.)  Accordingly, Defendants do not address those claims here.

## VII.   THIS   COURT   LACKS   PERSONAL   JURISDICTION   OVER   THE   LION DEFENDANTS.

Plaintiffs did not allege general jurisdiction over the Lender, LC A&A Intermediate Investors, LLC, and Lyndon Lea (collectively, the "Lion Defendants") in the Complaint.  (Am. Compl. ¶ 10.)  Now, however, they argue that Rhode Island courts can exercise either general or specific jurisdiction over the Lion Defendants.  (Opp. at 26.)

There is clearly no basis for general jurisdiction over the Lion Defendants in Rhode Island.  The Complaint alleges—correctly—that they reside or are headquartered in London.  (Am. Compl. ¶¶ 4–6.)  They are not alleged to be based in Rhode Island, to maintain a principal place of business here, or to be "essentially at home" here, as Supreme Court precedent requires for the exercise of general jurisdiction.  *BNSF Ry. Co.* v. *Tyrrell*, 137 S. Ct. 1549, 1559 (2017).  Plaintiffs' allegations that "Lion Capital and its principal and managing partner, Lyndon Lea were active stakeholders and owners of the Company" and "engaged in the weekly management of the Company," which is "a Rhode Island-based jewelry brand headquartered in East Greenwich, Rhode Island" (*see* Opp. at 27–28), even if accepted as true, do not change the fact that the Lion Defendants at "essentially at home" on the other side of the Atlantic, not here.

As for specific jurisdiction, Plaintiffs do not allege that their causes of action "arise out of" the Lion Defendants' limited contacts with the forum state.  *Daniels Agrosciences, LLC* v. *Ball DPF, LLC*, No. CA 13-268 ML, 2013 WL 5310208, at *10 (D.R.I. Sept. 20, 2013) (finding no specific personal jurisdiction where "the causal nexus between the out-of-state conduct and the in-forum injury is too attenuated").  Plaintiffs have not identified a single act of the Lion Defendants in Rhode Island that "form[s] an important, or [at least] material, element of proof" in their case.  *Negron- Torres* v. *Verizon Commc'ns, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007) (quotations omitted)).

The claims against the Lion Defendants should be dismissed for the additional reason that the Court does not have personal jurisdiction over them.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice for failure to state a claim upon which relief can be granted.  In the alternative, the claims against the Lion Defendants should be dismissed for lack of personal jurisdiction.

Dated:  November 6, 2020                    Respectfully submitted,


  _/s/ Matthew T. Oliverio_         
Matthew T. Oliverio, Esq. (#3372)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
Tel.:  (401) 861-2900
Fax:  (401) 861-2922
mto@om-rilaw.com

Elizabeth M. Sacksteder, Esq. (*Admitted pro hac vice*)
Michelle K. Parikh, Esq. (*Admitted pro hac vice*)
Alyson A. Cohen, Esq. (*Admitted pro hac vice*)
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel.:  (212) 373-3000
Fax:  (212) 492-0020

*Counsel for Defendants LC A&A Holdings, Inc.,*
*LC A&A Intermediate Investors, LLC, and Lyndon Lea*


David I. Horowitz, Esq. (*Admitted pro hac vice*)
KIRKLAND & ELLIS, LLP
555 South Flower Street, 37th Floor
Los Angeles, CA 90071
Tel.:  (213) 680-8374
Fax:  (213) 808-8074


Andre S. Digou, Esq. (#8711)
CHACE, RUTTENBERG & FREEDMAN, LLP
One Park Row, Suite 300
Providence, RI 02903
Tel.:  (401) 453-6400
Fax:  (401) 453-6411

*Counsel for Defendants A & A Shareholding Co., LLC*
*and Robert Trabucco*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_/s/ Matthew T. Oliverio_

19